1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  KRISTEN A. JENSEN, State Bar #130196
   THOMAS S. LAKRITZ, State Bar #161234
3  CHRISTINE VAN AKEN, State Bar #241755
   Deputy City Attorneys
4  City Hall, Room 234
   1 Dr. Carlton B. Goodlett Place
5  San Francisco, California 94102
   Telephone:    (415) 554-4615
6  Facsimile:    (415) 554-4757
   E-Mail:    kristen.jensen@sfgov.org
7

8  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO
9  (Including SAN FRANCISCO DEPARTMENT OF BUILDING
   INSPECTION, SAN FRANCISCO BUILDING
10 INSPECTION COMMISSION, and
   SAN FRANCISCO PLANNING DEPARTMENT)
11

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                   OAKLAND DIVISION

15 | REGAN CARROLL TRUST, Regan | Case No. C-07-2577 SBA
   | Carroll, Trustee,
16 |                           | **MEMORANDUM OF POINTS AND**
   |                           | **AUTHORITIES IN SUPPORT OF**
17 |         Plaintiff,        | **MOTION TO DISMISS FOR LACK OF**
   |                           | **JURISDICTION AND FAILURE TO**
18 |         vs.               | **STATE A CLAIM OR IN THE**
   |                           | **ALTERNATIVE, FOR SUMMARY**
19 | CITY AND COUNTY OF SAN    | **JUDGMENT**
   | FRANCISCO, SAN FRANCISCO  | **[FRCP 12(B)(1); 12(B)(6); 56]**
20 | DEPARTMENT OF BUILDING
   | INSPECTION, SAN FRANCISCO  | Hearing Date:    December 11, 2007
21 | BUILDING INSPECTION        | Time:    1:00 p.m.
   | COMMISSION, and SAN FRANCISCO | Place:    Courtroom 3, 3rd Floor
22 | PLANNING DEPARTMENT,
   |                           | Trial Date:    TBA
23 |         Defendants.

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

RELIEF SOUGHT ........................................................................................................... 1

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................................................... 4

    I.    THE PROPOSED PROJECT ................................................................................ 4

    II.   AMENDMENT OF THE PLANNING CODE APPLICABLE TO NEW
         CONSTRUCTION IN THE DOGPATCH HISTORIC DISTRICT ...................... 4

    III.  CITY REVIEW OF THE APPLICATION FOR CONSISTENCY WITH
         APPENDIX L. ................................................................................................ 5

    IV.  ADMINISTRATIVE APPEALS OF THE CITY'S ACTIONS ............................. 6

         A.    APPEAL OF THE REASSERTION OF PLANNING DEPARTMENT
                JURISDICTION TO THE BUILDING INSPECTION COMMISSION .... 6

         B.    APPEAL OF THE ZA DETERMINATION TO THE BOARD OF
                APPEALS ......................................................................................... 6

         C.    PROCEEDINGS IN STATE COURT ............................................... 7

STANDARD OF REVIEW ............................................................................................... 7

    I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER 42
         U.S.C. §1983 ................................................................................................. 8

         A.    THE COMPLAINT FAILS TO STATE A CLAIM OF UNLAWFUL
                DELEGATION UNDER *SCHULZ V. MILNE* ............................... 10

         B.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DENIAL OF
                EQUAL PROTECTION ................................................................. 12

              1.    Plaintiff Fails To Allege Facts Supporting a Claim For "Class of
                    One" Discrimination ................................................................. 12

              2.    The City Had a Rational Basis For Refusing to Issue Plaintiff a
                    Building Permit. ...................................................................... 13

         C.    PLAINTIFF'S §1983 CLAIMS ARE BARRED BY THE STATUTE
                OF LIMITATIONS. ..................................................................... 15

    II.   RES JUDICATA AND COLLATERAL ESTOPPEL BAR PLAINTIFF'S
         CLAIMS. ...................................................................................................... 16

             1.    Plaintiff Failed to Exhaust State Judicial Remedies. ................. 18

             2.    The Statute of Limitations Set Forth in Government Code §
                65009 Bars Plaintiff's Claims. ................................................. 18

    III.  ANY CLAIMS BASED ON THE CITY'S REFUSAL TO ISSUE A PERMIT
         ARE UNRIPE FOR ADJUDICATION. ......................................................... 20

CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

**Federal Cases**

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967).................................................................................................21

*Armendariz v. Penman,*
    75 F.3d 131111 (9th Cir. 1996) ..............................................................................13

*Cardenas v. Anzai,*
    311 F.3d 929 (9th Cir. 2002) ....................................................................................8

*Chiplin Enterprises, Inc. v. City of Lebanon,*
    712 F.2d 1524 (1st Cir. 1983)....................................................................................9

*Chongris v. Board of Appeals of Town of Andover,*
    811 F.2d 36 (1st Cir.), *cert. denied,* 483 U.S. 1021 (1987) .......................................9

*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.,*
    35 Cal.4th 1072 (2005) ............................................................................................16

*Conley v. Gibson,*
    355 U.S. 41 (1957).....................................................................................................7

*Couf v. DeBlaker,*
    652 F.2d 585 (5th Cir. 1981), *cert. denied,* 455 U.S. 921 (1982)..............................9

*Creative Environments v. Estabrook,*
    680 F.2d 822 (1st Cir.), *cert. denied* 459 U.S. 989 (1982) .......................................9

*Everest and Jennings, Inc. v. American Motorists Ins. Co.,*
    23 F.3d 226 (9th Cir. 1994) ......................................................................................7

*Hoehne v. County of San Benito,*
    870 F.2d 529 (9th Cir. 1989) ...............................................................................8, 20

*Jenkins v. McKeithen,*
    395 U.S. 411 (1969)...................................................................................................7

*Jones v. Blanas*
    393 F.3d 918 (9th Cir. 2004) ..................................................................................16

*Kay v. Placer* County,
    219 Fed.Appx. 679 (9th Cir. 2007)....................................................................11, 13

*Landgraf v. USI Film Products,*
    511 U.S. 244 (1994).................................................................................................16

*Manufactured Home Communities Inc. v. City of San Jose,*
    420 F.3d 1022 (9th Cir. 2005) ......................................................................7, 11, 12

MPA ISO MOTION TO DISMISS
CASE NO. C-07-2577 SBA
      ii
n:\land\li2007\080285\00442192.doc

*McMillan v. Goleta Water District,*
    792 F.2d 1453 (9th Cir. 1986) ..................................................................................20

*Norco Constr. Co. v King County,*
    801 F.2d 1143 (9th Cir. 1986) ..................................................................................20

*PFZ Properties, Inc., v. Rodriguez,*
    928 F.2d 28 (1st Cir. 1991), *cert. granted* 502 U.S. 956, *cert. denied as improvidently granted,* 503
    U.S. 257 (1992) ........................................................................................................9

*Rancho Palos Verdes Corp. v. City of Laguna Beach,*
    547 F.2d 1092 (9th Cir. 1976) ...................................................................................8

*Raskiewicz v. Town of New Boston,*
    754 F.2d 38 (1st Cir.), *cert. denied,* 474 U.S. 845 (1985) ..........................................9

*San Remo Hotel v. City and County of San Francisco,*
    145 F.3d 1095 (9th Cir. 1998) ...................................................................................8

*Schulz v. Milne,*
    849 F.Supp. 708 (N.D. Cal. 1994) .......................................................................10, 16

*Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n,*
    42 F.3d 1278 (9th Cir. 1994) .....................................................................................8

*Smith v. McCullough,*
    270 U.S. 456 (1926) ...................................................................................................8

*Squaw Valley Dev. Co. v. Goldberg,*
    375 F.3d 936 (9th Cir. 2004) ....................................................................................13

*Sucesion Suarez v. Gelabert,*
    701 F.2d 231 (1st Cir. 1983) ......................................................................................9

*Thornton v. City of St. Helens,*
    425 F.3d 1158 (9th Cir. 2005) ...................................................................................8

*Tosco Corp. v. Communities for a Better Env't,*
    236 F.3d 495 (9th Cir. 2001) .....................................................................................7

*University of Tennessee v. Elliot,*
    478 U.S. 788 (1986) .................................................................................................18

*Village of Willowbrook v. Olech,*
    528 U.S. 562 (2000) (per curiam) .............................................................................12

*Western Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981) ...........................................................................7, 11, 12

*Wilson v. Garcia,*
  471 U.S. 261, (1985)................................................................16

**Federal Statutes**

42 U.S.C.
  § 1983 ...................................................2, 3, 8, 9, 15, 17, 18

Federal Rule of Civil Procedure
  § 12(b)(1) ..........................................................................1, 7

Federal Rules of Civil Procedure
  § 12(b)(6) ..........................................................................1, 7

**State Cases**

*Abelleira v. District Court of Appeal*
  17 Cal.2d 280 (1941) ........................................................16

*Briggs v. City of Rolling Hills Estates,* ...................................17
  40 Cal.App.4th 637 (1995)

*City and County of San Francisco v. Ang,*
  97 Cal.App.3d 673 (1979) ..................................................17

*Hensler v. City of Glendale,*
  8 Cal.4th 1 (1994) ............................................................19

*Hunt v. County of Shasta,*
  225 Cal.App.3d 432 (1990) ................................................20

*Johnson v. City of Loma Linda,*
  24 Cal.4th 61 (2000) ........................................................17

*Knickerbocker v. City of Stockton*
  199 Cal.App.3d 235 (1988) ................................................17

*Krusesky v. Baugh,*
  138 Cal.App.3d 562 (1982) ................................................16

*Land Waste Management v. Contra Costa Board of Supervisors*
  222 Cal.App.3d 950 (1990) ...........................................2, 14, 15

*Landi v. County of Monterey,*
  139 Cal.App.3d 934 (1983) ................................................14

*Maginn v. City of Glendale,*
  72 Cal.App.4th 1102 (1999) ...............................................19

*Orinda Assn. v. Board of Supervisors*
  182 Cal.App.3d 1145 (1986) ..............................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Russian Hill Imp. Ass'n v. Board of Permit Appeals of City and County of San Francisco*
66 Cal.2d 34 (1967) ..................................................................................2, 13, 14

*Selby Realty Co. v. City of San Buenaventura,*
10 Cal.3d 110 (1973) .......................................................................................13, 14

*Travis v. County of Santa Cruz,*
33 Cal.4th 757 (2004) ............................................................................................19

*Wagner v. City of South Pasadena,*
78 Cal.App.4th 943 (2000) ...................................................................................19

*Wells Fargo Bank v. Town of Woodside,*
33 Cal.3d 379 (1983) .......................................................................................13, 14

*West Coast Advertising v. City and County of San Francisco,*
256 Cal.App.2d 357 (1967) ..................................................................................14

**State Statutes & Codes**

Code Civil Procedure
§ 335.1 ....................................................................................................................16

Code of Civil Procedue
§ 340 .......................................................................................................................16

Code of Civil Procedure
§ 1094.5 .............................................................................................................16, 17

Code of Civil Procedure
§ 1094.6 ...............................................................................................................7, 17

Government Code
§65009 ................................................................................................................3, 18

Government Code
§ 65009 (a)(3) .........................................................................................................19

Government Code
§ 65009(c) .................................................................................................................3

Government Code
§ 65009(c)(1) .....................................................................................................18, 19

Government Code
§ 65009(e) ...............................................................................................................19

Government Code
§ 65901 ...................................................................................................................19

Government Code
  §65903 ...........................................................................................................19

Government Code
  § 66499.37 ................................................................................................19, 20

**San Francisco Statutes, Codes & Ordinances**

San Francisco Building Code
  § 106.4.3 ..........................................................................................2, 6, 14, 15

San Francisco Charter
  § 3.100 ...............................................................................................................7

San Francisco Planning Code
  §1005, sub. (a) ..................................................................................................5

San Francisco Planning Code
  §1005, sub. (c) ..................................................................................................5

San Francisco Planning Code
  §1005, sub. (e) ..................................................................................................5

San Francisco Planning Code
  Article 10 ................................................................................................4, 5, 14

San Francisco Planning Code,
  Article 10, Appendix L ................................................................................4, 5

San Francisco Planning Code, Article 10
  § 1006.2 .............................................................................................................5

San Francsico Planning Code,
  Section 1006 ...........................................................................................4, 5, 13

**Other Court Rules**

Federal Rule of App. Proc.
  § 32.1 ..............................................................................................................11

Ninth Circuit
  Rule 36-3............................................................................................................11

1    Defendant City and County of San Francisco (sued herein as the City and County of San

2    Francisco, San Francisco Department of Building Inspection, San Francisco Building Inspection

3    Commission, and San Francisco Planning Department; collectively "City") submits this memorandum

4    of points and authorities in support of its Motion to Dismiss For Lack of Jurisdiction And Failure to

5    State a Claim or, in The Alternative, For Summary Judgment ("Motion") with respect to the

6    Complaint for Injunctive Relief and Damages for Violation of Civil Rights filed herein on May 15,

7    2007 ("Complaint") on the grounds that this Court lacks jurisdiction, and the Complaint fails to state

8    a claim.

9                                       **RELIEF SOUGHT**

10    By this motion, the City requests dismissal, with prejudice, of each claim for relief set forth in

11    the Complaint filed herein.  This relief is sought on the basis of this Court's lack of jurisdiction over

12    one or more of Plaintiffs claims for relief (FRCP 12(b)(1)) and Plaintiffs failure to state claims upon

13    which relief can be granted (FRCP 12(b)(6)).  In the alternative, the City requests summary judgment

14    under Rule 56 for the reasons set forth below.

15

16                                       **INTRODUCTION**

17    In this action—the *fifth* filed by Plaintiffs to challenge the City's conduct in connection with a

18    single building permit application and the first to be filed in Federal Court—Plaintiff again seeks a

19    court order compelling the City to issue a building permit for its proposed project.  Plaintiff's property

20    is located in the  Dogpatch Historic District of San Francisco.  The building permit application for the

21    Project, initially filed in 1999, was then pursued sporadically by Plaintiff over the next several years

22    as his personal circumstances permitted.  Plaintiff admits that the Planning Code was amended during

23    the protracted pendency of the Application, designating the neighborhood as an historic district; the

24    amended Code requires that all projects proposed for the Dogpatch Historic District be reviewed for

25    consistency with applicable Planning Code provisions prior to issuance of the permit.  Such review,

26    which takes the form of a Certificate of Appropriateness, was never sought or received by Plaintiff.

27    In fact, the Complaint suggests that the Project should not be required to comply with otherwise

28

MPA ISO MOTION TO DISMISS                          1                          n:\land\li2007\080285\00442192.doc
CASE NO. C-07-2577 SBA

1    applicable changes in the Planning Code that were enacted subsequent to the filing of its Application,

2    but prior to final issuance of the building permit.  Plaintiff's arguments are contrary to well-

3    established law and, as a result, the Complaint should be dismissed without leave to amend.

4         "Under established law local government agencies are powerless to issue land-use permits

5    which are inconsistent with governing legislation."  *Land Waste Management v. Contra Costa Board*

6    *of Supervisors*  222 Cal.App.3d 950, 959 (1990) (italics in original).  This includes permits that

7    violate planning and zoning ordinances.  *Id.*  Similarly, San Francisco Building Code § 106.4.3

8    prohibits issuance of building permits that are not in conformity with the Planning Code and all other

9    applicable law.  Any permit issued in violation of the Planning Code is legally invalid and may be set

10   aside as *ultra vires*.  *Id* at 958.  As a result, it is a well-settled principle of administrative law that,

11   until a permit is finally granted, the Building and Planning Departments, and all administrative

12   agencies and courts considering a permit application, must apply the Planning Code in effect at the

13   time of review.  Applying this principal, the California Supreme Court has long held that "one who is

14   not yet armed with a presently effective municipal license to proceed with construction must assume

15   the risk that, 'before final action [has] been taken on [his] application' [citation omitted], the law

16   might be changed so as to require that his application be denied."  *Russian Hill Imp. Ass'n v. Board of*

17   *Permit Appeals of City and County of San Francisco*  66 Cal.2d 34 (1967), 40.

18        Plaintiff challenged the very same decisions of the City in state court, but dismissed its

19   complaint when faced with a demurrer setting forth the controlling law.  Attempting to avoid the

20   obvious legal defects of its challenge to the City's conduct, Plaintiff now attempts to recast its claims

21   as violations of federal law under 42 U.S.C. § 1983 ("§ 1983").  Specifically, plaintiff asserts that the

22   City's conduct amounts to an unlawful delegation of authority [Complaint at ¶¶ 16-19], and that such

23   delegation violated Plaintiff's constitutional right to equal protection.  [*Id.* at ¶¶ 20-23.]  Plaintiff has

24   failed to state claims cognizable under §1983.

25        This case presents a local land use dispute which revolves around the questions of state law

26   described above.  Plaintiff cannot plead facts establishing that the City delegated any land use

27   regulatory authority to a private entity, and this Court is not required to accept as true the unfounded

28   legal conclusions and sheer speculation offered in support of Plaintiff's legal theory.  Moreover, the

1    Court must apply the highly deferential rational basis standard in reviewing the equal protection

2    claim. Based on the undisputed line of cases prohibiting the issuance of a building permit in violation

3    of existing planning and building code requirements, the City simply had no choice but to refuse

4    issuance of a permit once it was determined that the Application had not been subjected to the

5    required review for consistency with the revised Planning Code. Thus, state and local law compelled

6    the City to act as it did. This is more than enough to satisfy the rationality test.

7        Plaintiff's claims are also barred by the doctrines of *res judicata* and collateral estoppel.

8    Plaintiff fails to allege that it has exhausted available administrative remedies in connection the City's

9    actions as provided under the San Francisco Charter and Municipal Codes, or sought to be

10   compensated through resort to the state courts. In fact, as established below, although Plaintiff filed

11   administrative claims challenging the City's conduct, Plaintiff has not exhausted its state court

12   judicial remedies as required prior to commencing an action pursuant to §1983 in this Court. Nor can

13   it remedy this failure. Under California law, challenges to local planning decisions, to the

14   reasonableness or legality of conditions imposed on any permit, and to determinations by the Zoning

15   Administrator are all governed by the 90-day statute of limitations set forth in Government Code §

16   65009(c). Here, the City administrative bodies with jurisdiction over Plaintiff's permit appeals made

17   final determinations on May 8, 2006, and June 14, 2006. Plaintiff filed the instant action

18   approximately one year later, well beyond the 90-day period mandated by §65009.

19       Similarly, Plaintiff's theory that the City unlawfully delegated authority to a neighborhood

20   group is time-barred. The statute of limitations defense is apparent from the face of the Complaint,

21   which alleges that "Planning refused to determine whether the Application was complete unless the

22   [Dogpatch Neighborhood Association] approved it. [] The Application was finally determined to be

23   complete by Planning in June 2001." Thus, the alleged delegation occurred prior to June 2001—

24   nearly six years before the Complaint was filed. By June 2002, the limitations period for Plaintiff's

25   §1983 claims had run.

26       For the reasons set forth herein, the Complaint should be dismissed in its entirety and without

27   leave to amend.

28

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.   THE PROPOSED PROJECT

The site of the proposed Project in this case is 1179-89 Tennessee Street (the "Property") [Complaint at ¶3], located in the Dogpatch Historic District of the City.  [*Id*. at ¶¶1, 5.]  Plaintiff's predecessor in interest filed an application to construct a four-story residential and commercial project ("Project") on the Property in 1999.  [Complaint at ¶ 5.]  After succeeding to the permit application ("Application"), Plaintiff pursued the Application sporadically, as his personal circumstances (including the death of a family member) permitted, over the course of the next five years.  [*Id*. at 2 and Request for Judicial Notice ("RJN") at Exh. 4 (Exh. B).]  During that time, the Planning Department reviewed and approved various aspects of the Project, including addenda drawings.  [Complaint at ¶¶7, 8.]  The Planning Department review of and revisions to the addenda drawings continued through November, 2005.  [*Id*. at ¶8.]

### II.   AMENDMENT OF THE PLANNING CODE APPLICABLE TO NEW CONSTRUCTION IN THE DOGPATCH HISTORIC DISTRICT

In 2003, while the Application was pending, the San Francisco Board of Supervisors adopted legislation designating the Dogpatch Historic District and requiring review of all projects proposed in the district for consistency with Appendix L (Dogpatch Historic District) to Article 10 (Preservation of Historical Architectural and Aesthetic Landmarks) of the Planning Code ("Appendix L").  [RJN  at 3.]  Article 10 requires, among other things, that

> (a) No person shall carry out or cause to be carried out … in a designated historic district any construction … for which a City Permit is required, except in conformity with the provisions of this Article 10.  In addition, no such work shall take place unless all other applicable laws and regulations have been complied with, and any required permit has been issued for said work.
>
> ….
>
> (c) The Central Permit Bureau shall not issue, and no other City department or agency shall issue, any permit for construction … in an Historic District, except in conformity with the provisions of this Article 10.  In addition, no such permit shall be issued unless all other applicable laws and regulations have been complied with.
>
> ….
>
> (e) After receiving a permit application from the Central Permit Bureau in accordance with the preceding subsection, the [Planning] Department shall ascertain whether Section 1006 requires a Certificate of Appropriateness for the work proposed in such permit application.  … If such Certificate is required

and has not been issued, or if in the sole judgment of the Department the permit application does not conform, the permit application shall be disapproved or held by the Department until such time as conformity does exit; the decision and action of the Department shall be final.

(Planning Code §1005, subs. (a), (c), and (e) (emphasis added).)[RJN at Exh. 3.] Section 1006 of the Planning Code, in turn, requires a Certificate of Appropriateness in the case of "[a]ny construction … for which a City permit is required … in a historic district." (Planning Code §1006.)[*Id.*] Section 1006.2 provides that the Planning Commission shall hold a public hearing on all applications for a Certificate of Appropriateness. [*Id.*]   Appendix L became effective as of April 18, 2003.  The Complaint characterizes these amendments to the Planning Code as "non-substantive changes" and, rather than acknowledge that issuance of the permit was withheld as a result of the fact that the Application did not comply with the law in existence as of December 2005, suggests that Plaintiff was "singled out …for special handling by order of DNA…." [Complaint at ¶15.]

## III.    CITY REVIEW OF THE APPLICATION FOR CONSISTENCY WITH APPENDIX L

Plaintiff's reason for bringing the present action, as it has been with each of the four actions previously filed in the Superior Court [*See* RJN at Exhs. 4-7] is to avoid what Plaintiff views as the inequitable requirement that the Project obtain review and approvals based on Planning Code provisions adopted during the pendency of the Application.  [*Id.*]  The simple truth is that the Project has not been reviewed for compliance with Article 10 of the Planning Code because Plaintiff has not applied for or received the required Certificate of Appropriateness for the Project.  Once the Planning Department discovered that the mandatory review had not been conducted, City staff notified Plaintiff that it had not completed review of the Project for consistency with the standards set forth in Appendix L, and reasserted jurisdiction over the permit application.  [*Id.* at Exh. 4 (Exhs. A, C).] Plaintiff was notified of this determination by City personnel on December 2, 2005, and again on January 5, 2006.  [*Id.*]  On March 6, 2006, the Zoning Administrator (ZA) formally requested that DBI "route any and all building permit applications, renewals, extensions addendums, or revisions for the subject property to the Planning Department for review"  [*id.* (at Exh. C)] ("ZA Determination"), explaining that the "Planning Department will review [the Application] for consistency with the

1   Planning Code . . . including the adequacy of past environmental reviews . . . and regulations of the

2   Dogpatch Historical District within Article 10 of the code." [*Id.*]

3
4   **IV.    ADMINISTRATIVE APPEALS OF THE CITY'S ACTIONS**

       **A.    APPEAL OF THE REASSERTION OF PLANNING DEPARTMENT**
5           **JURISDICTION TO THE BUILDING INSPECTION COMMISSION**

6            In January 2006, Plaintiff filed an appeal with the BIC challenging the Planning Department's

7   reassertion of jurisdiction over the Application. [*Id.* at Exh. 4 (*see* Exh. B).] After a full hearing, the

8   BIC denied the appeal. [*Id.*] Plaintiff made a request for rehearing by the Building Inspection

9   Commission ("BIC"), which was also denied. [*Id.*] The BIC adopted its findings supporting the

10  decision and upholding the actions by Planning and DBI staff on May 1, 2006, specifically finding as

11  follows:

12           The Planning Department acted properly in reasserting its jurisdiction over the
             permit because, under San Francisco Building Code Section 106.4.3, a building
13           permit issued in violation of the Planning Code – or any City Ordinance –
             would not be valid. The Planning Department is the City agency charged with
14           determining whether building permits comply with the Planning Code.

15           ….

16           …DBI's Central Permit Bureau never issued the site permit for the Project. No
             permit was delivered to the Appellant Carroll or his agent. Sign-offs by
17           various City Departments on Appellant's final plans and other structural details
             that are needed before a permit can issue are not "issuance" of a permit.

18           ….

19           Because DBI's Central Permit Bureau did not yet issue a permit to Appellant
             Carroll, Appellant has no vested right to undertake the Project and DBI has no
20           further jurisdiction pending Planning Department action on the matter.

21  [*Id.* (Exh. B, p. 2 at 6, p. 2-1 at 1-3).] The BIC served its written findings on Plaintiff by mail on May

22  8, 2006. [*Id.* (Exh. B at 9).]

23           **B.    APPEAL OF THE ZA DETERMINATION TO THE BOARD OF APPEALS**

24           Plaintiff appealed the ZA Determination to the Board of Appeals ("BOA") on March 21,

25  2006. [*Id.* at Exh. 4 (Exh. D).] After a hearing on May 17, 2006, the BOA denied the appeal and

26  upheld the ZA Determination. [*Id.*] Plaintiff's subsequent request for rehearing was heard and denied

27  on June 14, 2006, and the BOA mailed its Notice of Decision and Order on June 16, 2006. [*Id.*] The

28  Notice of Decision and Order included written notice to Plaintiff that any court challenges to the

BOA's determination would be governed by the statute of limitations set forth in Code of Civil Procedure §1094.6. [*Id.*]

### C.    PROCEEDINGS IN STATE COURT

Plaintiff filed an amended petition challenging the City's refusal to issue a permit on September 12, 2006. [RJN at Exh. 4.] Summons was issued, and the Complaint served on the City as required by San Francisco Charter § 3.100, on September 27, 2006. [*Id.*] The City filed a demurrer on June 22, 2007 [*Id.* at Exh. 8], and replied to Plaintiff's opposition on July 3, 2007. [*Id.* at Exh. 9.] Two days later—before the court had issued its tentative ruling on the demurrer—Plaintiff filed a request for dismissal of the state court action. [*Id.* at Exh. 10.] Plaintiff also filed three other actions in state court challenging subsequent actions by the City. [RJN at Exhs. 5-7.]

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). Although the facts alleged by Plaintiff are assumed true under a motion to dismiss, the Court is not required to accept as true unwarranted deductions or unreasonable inferences, or conclusory legal allegations cast in the form of factual allegations. *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). " 'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the

1  defect called to its attention or on discovering the same, must dismiss the case, unless the defect be

2  corrected by amendment.' " *Id.* (*quoting Smith v. McCullough*, 270 U.S. 456, 459 (1926)).  Subject

3  matter jurisdiction does not exist over claims which are not ripe for adjudication. *Cardenas v. Anzai*,

4  311 F.3d 929, 933 (9th Cir. 2002).

## ARGUMENT

5

6  **I.**    **THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER 42 U.S.C.**

7      **§1983.**

8          To prevail on its claims under §1983, Plaintiff must show that "(1) acts by the defendants (2)

9  under color of state law (3) depriv[ed][it] of federal rights, privileges or immunities [and] (4)

10 caus[ed][it] damage." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005)(*citing*

11 *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).

12 Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for

13 vindicating federal rights elsewhere conferred.'" *Id.*  Accordingly, Plaintiff must establish that the

14 City's alleged actions deprived it of some right, privilege or immunity protected by the Constitution

15 or laws of the United States.  Plaintiff has failed to allege such a deprivation, and the §1983 claims

16 must therefore fail.

17         The federal courts have repeatedly recognized that a local agency's compliance with its own

18 land use regulations does not present an interest protected under § 1983.  These cases take the view

19 that local zoning and land use disputes represent an area "upon which the federal courts ought not to

20 enter unless no alternative to its adjudication is open." *Rancho Palos Verdes Corp. v. City of Laguna*

21 *Beach*, 547 F.2d 1092, 1094 (9th Cir. 1976).  *Cf, San Remo Hotel v. City and County of San*

22 *Francisco*, 145 F.3d 1095, 1105 (9th Cir. 1998)(9th Circuit has "consistently held that land use

23 planning is a sensitive area of social policy that meets the first requirement for Pullman abstention"

24 (citations omitted).)

25         Federal courts were not created to be "the Grand Mufti of local zoning boards," *Hoehne v.*

26 *County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989), nor do they "sit as [ ] super zoning board[s]

27 or [ ] zoning board[s] of appeals." *Raskiewicz v. Town of New Boston*, 754 U.S. 38, 44 (1st Cir.), *cert.*

28 *denied*, 474 U.S. 845 (1985).  "While the Supreme Court has yet to provide precise analysis

1    concerning claims of this sort, we feel confident that where, as here, the state offers a panoply of

2    administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local

3    zoning and planning disputes by means of 42 U.S.C. §1983." *Id.* Resort to §1983 to resolve such

4    inherently local disputes is, therefore, disfavored, and the courts have specifically rejected attempts

5    like the one at bar to create a constitutional question out of a local agency's decision on a

6    development application. *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir.

7    1983) (where planning board, after granting preliminary approval to a development project, denied a

8    building permit for the project, court found that "[a] mere bad faith refusal to follow state law in such

9    local administrative matters simply does not amount to a deprivation of due process where the state

10   courts are available to the correct error"); *Chongris v. Board of Appeals of Town of Andover*, 811

11   F.2d 36, 42-43 (1st Cir.), *cert. denied*, 483 U.S. 1021 (1987); *Sucesion Suarez v. Gelabert*, 701 F.2d

12   231, 233 (1st Cir. 1983); *Creative Environments v. Estabrook*, 680 F.2d 822, 829-30, 832 n. 9 (1st

13   Cir.), *cert. denied*, 459 U.S. 989 (1982)("[P]roperty is not denied without due process simply because

14   a local planning board rejects a proposed development for erroneous reasons or makes demands

15   which arguably exceed its authority under the relevant state statutes."); *Couf v. DeBlaker*, 652 F.2d

16   585, 590 n. 11 (5th Cir. 1981), *cert. denied*, 455 U.S. 921 (1982).  In these cases, "[e]ven where state

17   officials have allegedly violated state law or administrative procedures, such violations do not

18   ordinarily rise to the level of a constitutional deprivation." *PFZ Properties, Inc., v. Rodriguez*, 928

19   F.2d 28, 31, (1st Cir. 1991), *cert. granted* 502 U.S. 956, *cert. denied as improvidently granted*, 503

20   U.S. 257 (1992).

21        Denial of building permits, regardless of the motivations behind such denial, and even where

22   the issuing agency's actions violate state law, represent "a matter of local concern, properly and fully

23   reviewable in the state courts." *Chiplin, supra*, 712 F.2d at 1527.  For the reasons set forth in these

24   cases, and for additional reasons argued below, Plaintiff has failed to state a cognizable claim under

25   §1983.

26

27

28

MPA ISO MOTION TO DISMISS                          9                    n:\land\li2007\080285\00442192.doc
CASE NO.  C-07-2577 SBA

## A.   THE COMPLAINT FAILS TO STATE A CLAIM OF UNLAWFUL DELEGATION UNDER *SCHULZ V. MILNE.*

Plaintiff relies on the case of *Schulz v. Milne*, 849 F.Supp. 708 (N.D. Cal. 1994) for the proposition that conduct of the Planning Department constituted an unlawful delegation of power to a private body. [Complaint at ¶ 5.] The analogy, however, is unpersuasive.

In the *Schulz* case, the plaintiffs alleged that the City had delegated authority to review project plans and approve permit applications to a neighborhood review board. *Id*. at 710, 712-13. The Schulz's alleged that the authority of the board was *created pursuant to a resolution of the City Planning Commission*, that the city repeatedly required them to submit plans to the board and informed them that they would have to "satisfy" the board before the city would take any action on the permit application. *Id*. at 712. The court concluded that, for purposes of a motion to dismiss, the Schulz's had alleged enough facts to create an inference that the city had unlawfully delegated its decision-making authority to the board. *Id*. at 713. The allegations of the *Schulz* case are not analogous to those presented here.

In this case, Plaintiff does not allege that the Planning Commission or any other City body had formally delegated authority over projects in the Dogpatch Neighborhood to any individual or entity through ordinance or resolution. Plaintiff does not allege that the City required it to submit plans for approval to the Dogpatch Neighborhood Association, but only suggests that the City had directed a previous owner to "review the project" with the association. [Complaint at ¶ 5.] The Complaint alleges that "Planning refused to determine whether the Application was complete unless DNA approved it." Plaintiff does not allege when it submitted materials constituting the Application to the City, but alleges that the Planning Department determined the Application to be complete in 2001. [Complaint at ¶¶ 6, 7.] The Application was then apparently processed with no further input from the association for the next four years, during which the City reviewed and approved various aspects of the Application, the project was revised, and a number of approvals were given by the City. [*Id*. at ¶ 8.] During that same period, the Planning Code was revised to designate the Dogpatch Neighborhood as an historic district, and to require that all construction projects in that neighborhood be submitted to review by the Planning Department for consistency with the provisions of the code applicable to

such districts. The Complaint concedes that the neighborhood was designated as an historic district [Complaint at ¶ 11], but characterizes the City's application of the Planning Code provisions in effect in 2005 as "unreasonable, arbitrary, and capricious conduct, without any rational basis" [*id.* at ¶ 15], inferring that the City enforced the law in existence at that time "by order of [the association]." These allegations are insufficient to establish even an inference that the City merely "rubber-stamped" the decisions of the neighborhood association. Rather, the allegations make plain that the neighborhood association did not interfere in any way with the City's determination of the merits of Plaintiff's Application, and in fact did not express any views as to the Application at all after June of 2001.[1]

As in the case of *Kay v. Placer* County, 219 Fed.Appx. 679 (9th Cir. 2007)[2], Plaintiff has failed to convert this local land use dispute into a federal claim by alleging unlawful delegation. As the court held in that case "[t]he extent to which state actors may delegate government functions is, in the first instance, a question of state law. Even if federal law is implicated, the complaint does no more than state the legal conclusion that an unlawful delegation occurred. That conclusion is contradicted by the facts alleged in the complaint," which indicate that the City did not delegate its decision-making authority to the Dogpatch Neighborhood Association. *Id.* at 681. Rather, the Complaint confirms that the City, and not the neighborhood association, reviewed and approved various aspects of Plaintiff's Application over the period from 1999-2005. [Complaint at ¶¶ 7-8.] Whether a member of the neighborhood association or some other member of the public may have notified Planning staff that the Application did not comply with the Planning Code as of December 2005 is immaterial, and does not create an inference that the City has "rubber stamped" the decisions of a nongovernmental body.

---

[1] The Court is not required to accept as true the Complaint's unsupported speculation concerning the reasons for the Planning Department's reassertion of jurisdiction. [*See* Complaint at ¶ 10 ("Plaintiff was not told the circumstances of or the authority under which Corrette alleged removed the drawings, but believes it to be under mysterious and aberrant circumstances[.] Corrette ...ostensibly removed the drawings ... after being contacted by a member of [the association]").] *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

[2] Pursuant to Federal Rule of App. Proc. 32.1 and Ninth Circuit Rule 36-3, a copy of that decision is attached hereto.

**B.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DENIAL OF EQUAL PROTECTION**

Plaintiff's equal protection claim also fails as a matter of law.  The U.S. Supreme Court formally recognized class-of-one equal protection causes of action in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) (per curiam).  In *Olech*, a city conditioned water service for a property on the owner's granting a 33-foot easement, even though the city required only a 15-foot easement from every other property owner.  *Id*. at p. 563.  The Supreme Court allowed the case to proceed on the class-of-one theory, recognizing claims where a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Id*. at p. 564 [emphasis added].[3]  Therefore, in order to establish a class-of-one equal protection violation based upon the alleged discriminatory application of a facially nondiscriminatory law, in a case that does not involve a suspect class or a fundamental right, a plaintiff must prove that (1) it was treated differently from persons or entities similarly situated; (2) the unequal treatment was intentional; and (3) the unequal treatment was not rationally related to a legitimate government purpose.  *Ibid*.  The complaint does not satisfy these requirements.

**1.    Plaintiff Fails To Allege Facts Supporting a Claim For "Class of One" Discrimination**

The Complaint contains no allegations to support an argument that Plaintiff is a "class of one" that has been subjected to disparate treatment.  In fact, the only allegations on the subject are unfounded inferences and conclusory statements alleged as fact.  [Complaint at ¶15 (the City "singled Plaintiff out for special handling by order of DNA....").]  No facts are alleged to support the conclusory allegations, and the Court is not bound to accept such allegations as true.  *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Plaintiff has not alleged that it was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th

---

[3] Plaintiff has not alleged that it belongs to a suspect class or that entitlement to a building permit that violates local law is a fundamental right.

Cir. 2004) (internal quotation marks omitted).  Unsupported legal conclusions are insufficient to support Plaintiff's equal protection claim.

Nor can Plaintiff amend to correct this defect, since the City's refusal to issue a permit in 2005 was based on Planning Code requirements that are facially nondiscriminatory, and apply to all projects constructed in the Dogpatch Historic District after the effective date of the code section. Planning Code §§1005, 1006.  The actual bases for the City's decisions at issue in this case are reflected in the determinations of the BIC and BOA that the Planning Department acted properly when it reasserted jurisdiction over the Application for purposes of bringing the Application into compliance with the Planning Code.  [RJN at Exh. 4 (Exhs. A-D).]   Plaintiffs simply cannot allege that the City has treated it unfairly by requiring that its Application comply with the law in existence at the time before it issued a building permit.

### 2.    The City Had a Rational Basis For Refusing to Issue Plaintiff a Building Permit.

In evaluating Plaintiff's equal protection claim, the Court must apply the highly deferential rationality standard. *See Armendariz v. Penman,* 75 F.3d 1311, 1326 n. 11 (9th Cir. 1996).  Plaintiff's unsupported legal conclusions are insufficient to support this claim. *Kay v. Placer County, supra*, at 681.

In this case, the City had a rational basis for refusing to issue Plaintiff the requested permit in 2005: California law and San Francisco's Municipal Code forbade it.  It is long settled law in this state that building projects must comply with the Planning Code in effect at the time of permit issuance. *Wells Fargo Bank v. Town of Woodside,* 33 Cal.3d 379 (1983); *Selby Realty Co. v. City of San Buenaventura,* 10 Cal.3d 110 (1973); *Russian Hill Improvement Assoc. v. Board of Permit Appeals,* 66 Cal.2d 34 (1967).  This rule extends even to changes in the law adopted after initial administrative decision on a permit.

> [T]he mere application for a building permit or the submission of plans which comply with the law in existence at the time of such submission do not entitle an applicant to the issuance of the permit if, in the interim between administrative denial of the permit and the appeal from that denial, an ordinance has been enacted which would prohibit the project contemplated.

1   *Selby Realty Co.*, 10 Cal.3d at 125.  In fact, "even a permit which [has] achieved administrative

2   finality can be revoked on the basis of a subsequent change in the zoning laws."  *West Coast*

3   *Advertising v. City and County of San Francisco,* 256 Cal.App.2d 357, 360 (1967).  This concept has

4   been specifically applied to the decisions of San Francisco's BOA (formerly known as the Board of

5   Permit Appeals) which, "in its de novo review is bound to apply the zoning ordinances in effect at the

6   time of its final decision, not those in force at the time of preliminary proceedings before any

7   subordinate agency."  *Russian Hill Improvement Assn., supra,* 66 Cal.3d at 46.  As a result, the

8   Planning Department, the BIC and the BOA were each required to apply the existing Planning Code

9   (including Article 10 and Appendix L) to the Project at the time of their respective reviews of the

10  Application.  If the permit had been issued without the required Certificate of Appropriateness and

11  Planning Commission review, the permit would have been invalid as a matter of law.  S.F. Building

12  Code § 106.4.3; *Land Waste Management, supra*, 222 Cal.App. 3d at 958.

13          Similarly, reviewing courts must apply the law in existence at the time of their decision, rather

14  than at the time that a permit is issued or denied.  *Wells Fargo Bank*, 33 Cal.3d at 385; *Selby Realty*

15  *Co.*, 10 Cal.3d at 110.

16          It is the prevailing rule that a reviewing court will apply the law in existence at the
        time of its decision rather than at the time the permit was denied. [cite.]
17          The purpose of this rule is to prevent an appellate court from issuing orders for
        the construction of improvements contrary to presently existing legislative
18          provisions. [Cite.]  Indeed, even after a permit has been issued, it may be
        revoked by an administrative body on the basis of a subsequent change in the
19          zoning laws unless the permitee has made substantial improvements in good
        faith reliance on the permit.

20  *Selby Realty Co.*, 10 Cal.3d at 110.  Where, as here, no permit has issued, there can be no substantial

21  reliance thereon to shield the Plaintiff from the prevailing rule.  *West Coast Advertising,* 256

22  Cal.App.2d at 360.  Nor can Plaintiff satisfy the only recognized exception to the rule, which is

23  limited to cases where a subsequent ordinance is enacted with the specific purpose of frustrating the

24  developer's plan.  *See Selby Realty Co.*, 10 Cal.3d at 126, fn. 11.  As a result, Plaintiff is not entitled

25  to issuance of the permit he seeks as a matter of law.

26          "As stated in [*Landi v. County of Monterey,* 139 Cal.App.3d 934,936-937 (1983)], the grant of

27  a land-use permit or variance is an adjudicatory act, rather than a legislative one. [Citations.]

28

1   Adjudicatory decisions must be consistent with applicable land-use legislation. [Citations.] Thus,

2   local government entities cannot issue land-use permits that are inconsistent with controlling land-use

3   legislation, as embodied in zoning ordinances and general plans." *Land Waste Management, supra*,

4   at 957-58.  Instead, "a land-use permit which is inconsistent with existing zoning ordinances can be

5   issued by a responsible administrative entity only after the applicable ordinances have been amended

6   by the legislative process." *Id.* at 959.  In short, "[u]nder established law, local government agencies

7   are powerless to issue land-use permits which are inconsistent with governing legislation." *Id.* at 959

8   (*citing Orinda Assn. v. Board of Supervisors,* 182 Cal.App.3d 1145 (1986), 1161-1162, 1167-1169).

9        The City thus had a rational basis for refusing to issue a building permit to Plaintiff in

10  December of 2005:  That permit, if issued, would have violated San Francisco's Planning and

11  Building Codes because the proposed project had not been reviewed for consistency with the design

12  guidelines applicable to the Dogpatch Historic District, and had not received the required Certificate

13  of Appropriateness mandated by the Planning Code.  Such a permit would have been unlawful as of

14  the date of issuance, in violation of Building Code § 106.4.3.

15       **C.    PLAINTIFF'S §1983 CLAIMS ARE BARRED BY THE STATUTE OF**
16              **LIMITATIONS.**

17       Both the first and second count of the Complaint rely on the City's alleged "unlawful

18  delegation" of authority to the Dogpatch Neighborhood Association as a basis for relief under §1983.

19  [Complaint at ¶¶ 17-19; 21-23.]  However, the only act of delegation alleged in the Complaint is the

20  Planning Department's alleged refusal to deem Plaintiff's application "complete" until the association

21  had "approved" the project.  [*Id.* at ¶ 6.]  The Complaint does not allege that the City directed Plaintiff

22  to seek approval from the association [*see id.* at ¶ 5].  Rather, the only City conduct alleged in support

23  of the delegation theory is that "Planning refused to determine whether the Application was complete

24  unless DNA approved it."  [*Id.* at ¶ 5.]  However, the Complaint also alleges that "[t]he Application

25  was finally determined to be complete by Planning in June 2001."  [*Id.* at ¶ 7.]  Thus, according to the

26  Complaint, the final act reflecting the alleged delegation occurred in June 2001.  Accordingly, the

27  statute of limitations on these claims ran in June, 2002.

28

1    "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for

2    personal injury actions...." *Wilson v. Garcia*, 471 U.S. 261,271-72, 276, (1985); *Jones v. Blanas* 393

3    F.3d 918, 927 (9th Cir. 2004).  In June of 2002, the statute of limitations for personal injury actions

4    was 1 year. *See* former Code of Civil Proc. §340.  On January 1, 2003, Code of Civil Procedure

5    § 335.1 became law, extending the prior limitations period applicable to personal injury actions (and

6    correspondingly to federal civil rights claims) from one year to two years. *See* Cal. Code Civ.Proc.

7    § 335.1.  Plaintiff does not benefit from this new two-year statute of limitations.  Rather, since its

8    claims herein accrued before January 1, 2003, the one-year statute governs. *See Krusesky v. Baugh*,

9    138 Cal.App.3d 562 (1982) , ("[S]tatute[s] [are] presumed to be prospective only and will not be

10   applied retroactively unless such intention clearly applies in the language of the statute itself."); *see*

11   *also Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994) ("[T]he 'principle that the legal

12   effect of conduct should ordinarily be assessed under the law that existed when the conduct took

13   place has timeless and universal appeal.'").

14       Even if Plaintiff could establish prohibited delegation of authority under *Schulz,* by its own

15   admission, any delay caused by such delegation ended in 2001—nearly six years before Plaintiff filed

16   its Complaint.

17

18   **II.    RES JUDICATA AND COLLATERAL ESTOPPEL BAR PLAINTIFF'S CLAIMS.**

19       In order to challenge the decision of an administrative agency, a plaintiff must demonstrate

20   that he has exhausted all available administrative procedures – including all available administrative

21   appeals. *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment*

22   *Relations Bd.,* 35 Cal.4th 1072, 1080 (2005).  "In brief, the rule is that where an administrative

23   remedy is provided by statute, relief must be sought from the administrative body and this remedy

24   exhausted before the courts will act." *Abelleira v. District Court of Appeal,* 17 Cal.2d 280, 292

25   (1941).  In addition to exhausting administrative remedies, a plaintiff must also exhaust judicial

26   remedies.  "[J]udicial review of any decision of a local agency . . . may be had pursuant to Code of

27   Civil Procedure section 1094.5, only if the petition for writ of mandate pursuant to such section is

28   filed . . . not later than the 90th day following the date on which the decision becomes final." Code

1    Civ. Proc. § 1094.6, subd. (b). The California Supreme Court has held that "unless a party to a quasi-

2    judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a

3    mandate action in superior court, those findings are binding in later civil actions." *Johnson v. City of*

4    *Loma Linda*, 24 Cal.4th 61 , 69-70 (2000). "Exhaustion of judicial remedies . . .is necessary to avoid

5    giving binding effect to the administrative agency's decision, because the decision has achieved

6    finality due to the aggrieved party's failure to pursue the exclusive remedy for reviewing

7    administrative action." *Ibid.; see also City and County of San Francisco v. Ang*, 97 Cal.App.3d 673 ,

8    677 – 679 (1979).

9        In *Briggs v. City of Rolling Hills Estates, supra*, 40 Cal.App.4th 637 (1995), a homeowner

10   sued after the issuance of a building permit was conditioned on the removal of an existing deck. *Id*.

11   at p. 640. The trial court granted summary judgment in favor of the city finding the homeowner's §

12   1983 cause of action was precluded by the failure to challenge the city's action directly by

13   administrative mandamus." *Ibid*. After analyzing and discussing state and federal law, the Court of

14   Appeals affirmed. The court observed that the homeowner

15              never sought to set aside the city's decision by petitioning for a writ of
             administrative mandamus pursuant to Code of Civil Procedure section 1094.5.
16              Plaintiffs could and should have sought judicial review of the city's decision by
             administrative mandamus; if the condition to which plaintiffs objected was
17              improperly imposed, it could have been vacated pursuant to section 1094.5.
             Plaintiffs completely bypassed the proper procedure and instead sought
18              damages and injunctive relief by this independent action.

19   *Id*. at p. 645. The court went on to state that the failure to pursue administrative and judicial relief

20   estopped the homeowner from relitigating the same issues, even in a § 1983 cause of action. *Id*. at

21   pp. 645 - 648. Citing *Knickerbocker v. City of Stockton,* 199 Cal.App.3d 235 (1988), it explained the

22   rule:

23              [T]his rule is not the doctrine of "failure to exhaust administrative remedies."
             Rather it is a form of res judicata, of giving collateral estoppel effect to the
24              administrative agency's decision, because that decision has achieved finality
             due to the aggrieved party's failure to pursue the exclusive judicial remedy for
25              reviewing administrative action.

26   *Id*. at pp. 645 - 646. This rule is recognized by the federal courts as well. In fact, "the highest court

27   in the land has held the principles of res judicata and collateral estoppel apply to federal civil rights

28

statutes." *Id.* at p. 646 [quoting *University of Tennessee v. Elliot,* 478 U.S. 788 (1986)]. The United States Supreme Court has held

> that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts in actions under the reconstruction civil rights statutes (42 U.S.C. § 1983 et seq.) must give the agency's factfinding the same preclusive effect it would be entitled to in the state courts.

*Univ. of Tenn. v. Elliot,* 478 U.S. at 789.

### 1.    Plaintiff Failed to Exhaust State Judicial Remedies.

Here, Plaintiff challenged the very same actions of the City—refusal to issue a building permit—before two of the city's administrative agencies: the BIC and the BOA. [RJN at Exh. 4 (and exhibits thereto).] In both instances, Plaintiff's claims were defeated. [*Id.*] Plaintiff challenged those losses by writ petition to the Superior Court. [*Id.* at Exh. 4.] However, Plaintiff did not secure a judgment on the merits from that court. Rather, after the City filed and fully briefed its demurrer to the petition, but before the court could rule on the demurrer, Plaintiff filed a request for dismissal of that action. [*Id.* at Exh. 10.] Plaintiff has thus failed to exhaust state court remedies for the conduct complained of in this action. Moreover, for the reasons set forth below, Plaintiff cannot cure this defect by filing a new action in the Superior Court.

### 2.    The Statute of Limitations Set Forth in Government Code § 65009 Bars Plaintiff's Claims.

Plaintiff seeks to challenge the City's refusal to issue a building permit that does not comply with the Planning Code in effect at the time of issuance. That decision by the City, in turn, is embodied in two determinations by City administrative appeals bodies, the BOA and the BIC. [RJN at Exh. 4 (Exhs. B, D).] The statute of limitations applicable to claims challenging these administrative determinations is set forth in Government Code § 65009, which applies a 90-day limitations period to all claims challenging local planning decisions, Zoning Administrator determinations, and all decisions of the BIC. Thus, under Government Code § 65009(c)(1), Plaintiff had 90 days following each of the two challenged decisions to file and serve a petition attacking that decision. Plaintiff failed to timely file a writ petition before the Superior Court, then dismissed the

MPA ISO MOTION TO DISMISS                                    18                        n:\land\li2007\080285\00442192.doc
CASE NO. C-07-2577 SBA

late-filed petition after the City filed its demurrer, but before the Superior Court had ruled on the demurrer. [RJN at Exhs. 4, 8-10.] Plaintiff has not obtained a final ruling on the merits from the Superior Court on its challenge to the City's determinations, and thus has yet to exhaust state judicial remedies. It is now too late for Plaintiff to do so.

Government Code Section 65009, subdivision (c)(1)(E), provides that the 90-day statute of limitations applies to actions seeking "[t]o attack, review, set aside, void or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."[4] Subdivision (c)(1)(F) similarly imposes a 90-day limitations period on "any of the proceedings, acts, or determinations taken, done, or made prior to any of the decisions listed in [subparagraph (E).] " Section 65901, in turn, applies to determinations by the City's Zoning Administrator (Gov't Code § 65901), and §65903 applies to determinations by the City's Board of Appeals. Gov't Code §65903. After the expiration of this time period, "all persons are barred from any further action or proceeding." Gov't Code § 65009(e); *Travis v. County of Santa Cruz,* 33 Cal.4th 757, 765 (2004).

This 90-day statue of limitations applies to both Plaintiff's damage claims and their claims for declaratory or similar relief. In a parallel context, the California Supreme Court has determined that the 90-day period of limitation set forth in Government Code section 66499.37, which contains language analogous to that contained in Government Code section 65009, barred all actions arising out of the Subdivision Map Act filed after the 90-day statute of limitations. *Hensler v. City of Glendale*, 8 Cal.4th 1 (1994). In that case, the Supreme Court stated that:

> As the Court of Appeal recognized here and in Hunt, section 66499.37 applies by its terms to any action involving a controversy over or arising out of the Subdivision Map Act. Therefore, if this is a claim arising out of application of a land-use regulation authorized by that act, section 66499.37 applies. Plaintiff seeks to avoid application of section 66499.37 by arguing he does not challenge the validity of the Glendale ordinance. He seeks only compensation

---

[4] By enacting this short limitations period, the Legislature intended "to provide certainty for property owners and local governments regarding [local zoning and planning decisions]." Gov't Code § 65009 (a)(3.) In light of these policies, courts have held that the time limits of § 65009 are to be strictly construed. *Wagner v. City of South Pasadena*, 78 Cal.App.4th 943 (2000), 950 [emphasis added] [*quoting Maginn v. City of Glendale*, 72 Cal.App.4th 1102 , 1109 (1999). Thus, "[T]he courts have consistently enforced the 90-day limit." *Ching, supra*, 60 Cal.App.4th at 893.

1

> for the taking he alleges was effected by the ordinance. He contends on that
> basis that the statutes of limitation found in the Code of Civil Procedure govern
> this action. We disagree.

2

3

*Id.* at p. 23 (*citing Hunt v. County of Shasta*, 225 Cal.App.3d 432 (1990))(emphasis in original).) The

4

Supreme Court concluded that:

5

> This section is not, as plaintiff argues, limited to actions for specific relief. It
> includes actions for compensation for a regulatory taking because the validity
> of the ordinance or its application to the plaintiff's property, if uncompensated,
> must be determined in the action—i.e., the court must determine if there has
> been a taking. Before he or she is entitled to any relief, either compensation or
> exemption of the property from development restriction, the plaintiff must
> establish that the ordinance, regulation, or administrative action is not lawful or
> constitutionally valid if no compensation is paid. The action therefore comes
> within the broad language of section 66499.37.

6

7

8

9

*Id.* at 25. The same reasoning applies to the instant case, and bars Plaintiff from challenging the

10

City's administrative determinations regarding his Application under any legal theory.

11

As a consequence, the determinations of the BIC and the BOA are *res judicata*, and preclude

12

the Plaintiff from challenging the City's refusal to issue a building permit in this action.

13

14

**III.     ANY CLAIMS BASED ON THE CITY'S REFUSAL TO ISSUE A PERMIT ARE
         UNRIPE FOR ADJUDICATION.**

15

16

Alternatively, to the extent that any of Plaintiff's claims are deemed to challenge the City's

17

refusal to issue a building permit (rather than the alleged unlawful delegation to a neighborhood

18

association), such claims are unripe for adjudication. Suits for equal protection are subject to the

19

requirement that the decision be ripe for review. In the context of equal protection claims stemming

20

from the regulation of land use, this requirement includes a *final decision* by the relevant government

21

authority. *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989).

22

> In suits for wrongful deprivation of property under 42 U.S.C. § 1983, the same
> considerations that render a claim premature prevent accrual of a claim for
> limitations purposes, and the claim does not accrue until the relevant
> governmental authorities have made a final decision on the fate of the property.

23

24

*Norco Constr. Co. v King County*, 801 F.2d 1143, 1145 (9th Cir. 1986); *McMillan v. Goleta Water*

25

*District*, 792 F.2d 1453 (9th Cir. 1986). The "basic rationale" of the ripeness requirement "is to

26

prevent the courts, through avoidance of premature adjudication, from entangling themselves in

27

abstract disagreements over administrative policies, and also to protect the agencies from judicial

28

interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-149 (1967).  The Ninth Circuit has emphasized the heavy burden placed on plaintiffs seeking to establish constitutional violations in the context of land use decisions.

> The Supreme Court has recognized that land-use planning is not an all-or-nothing proposition. A government entity is not required to permit a landowner to develop property to the full extent it may desire. Denial of the intensive development desired by a landowner does not preclude less intensive, but still valuable development. *MacDonald*, 477 U.S. at 353, 106 S.Ct. at 2569. "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." *Id.* at 350, 106 S.Ct. at 2567. *The property owner, therefore, has a high burden of proving that a final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds.*

*Hoehne, supra*, 870 F.2d at 532-33 (emphasis added).

In this case, the City has not issued a final decision denying Plaintiff a building permit.  In fact, such a decision was continued—at Plaintiff's request—until August 2008.  [RJN at Exh. 12.] Since the City has not rendered a final decision as to the Application at issue in this case, any claims based on the City's conduct with respect to such Application are not ripe for review under §1983.

## CONCLUSION

For the foregoing reasons, the allegations of the Complaint and those facts of which this Court may take judicial notice demonstrate that the claims for relief set forth in the Complaint fail to state facts sufficient to constitute a cause of action, that the Court lacks jurisdiction over such claims and that the claims are untimely as a matter of law.  On these bases, the City respectfully submits that its motion to dismiss or, in the alternative, for summary judgment, should be granted without leave to amend as to all claims for relief set forth in the Complaint.

Dated:  October 9, 2007

1

2                                        DENNIS J. HERRERA
                                         City Attorney
3                                        KRISTEN A. JENSEN
                                         THOMAS S. LAKRITZ
4                                        CHRISTINE VAN AKEN
                                         Deputy City Attorneys
5

6                                   By: _____
                                         KRISTEN A. JENSEN
7

8                                        Attorneys for Defendant
                                         CITY AND COUNTY OF SAN FRANCISCO
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

219 Fed.Appx. 679                                                    Page 1

219 Fed.Appx. 679, 2007 WL 187889 (C.A.9 (Cal.))
**(Cite as: 219 Fed.Appx. 679)**

Kay v. Placer County
C.A.9 (Cal.),2007.
This case was not selected for publication in the
Federal Reporter.Not for Publication in West's
Federal Reporter See Fed. Rule of Appellate
Procedure 32.1 generally governing citation of
judicial decisions issued on or after Jan. 1, 2007.
See also Ninth Circuit Rule 36-3. (Find CTA9 Rule
36-3)
    United States Court of Appeals,Ninth Circuit.
    Robin KAY; Philip Kay, Plaintiffs-Appellants,
                    v.
    PLACER COUNTY; Placer County Board of
Supervisors; Placer County Planning Department;
Placer County Parcel Review Committee; Fred
Yeager; George Rosasco; Roy Kirkorian; Gayle
    Kirkorian, Defendants-Appellees.
           **No. 05-15191.**

    Argued and Submitted Jan. 11, 2007.
        Filed Jan. 23, 2007.

**Background:** Property owners brought action
against their neighbors, county, county's board of
supervisors, planning department, and parcel review
committee, and certain county officials, alleging
that defendants violated their rights to due process
and equal protection by subdividing neighbors'
property under the guise of a Minor Boundary Line
Adjustment (MBLA). The United States District
Court for the Eastern District of California,
Lawrence K. Karlton, Senior Judge, dismissed the
complaint, and property owners appealed.

**Holdings:** The Court of Appeals held that:

(1) property owners did not have a right protected
by either California law or the Due Process Clause
to receive notice or an opportunity to be heard when
their neighbors first sought a MBLA;

(2) second MBLA of neighbors' property did not

deprive property owners of a property interest
protected under the Due Process Clause;

(3) county did not delegate its decisionmaking
authority to neighbors; and

(4) county did not violate property owners' equal
protection rights.

Affirmed.
West Headnotes
**[1] Constitutional Law 92 &copy;=4096**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(G)    Particular    Issues    and
Applications
        92XXVII(G)3 Property in General
          92k4091 Zoning and Land Use
            92k4096   k.   Proceedings    and
Review. Most Cited Cases
    (Formerly 92k278(1.3))

**Zoning and Planning 414 &copy;=134.1**

414 Zoning and Planning
    414II Validity of Zoning Regulations
        414II(C) Procedural Requirements
          414k134 Notice and Hearing
            414k134.1 k. In General. Most Cited
Cases
Property owners did not have a right protected by
either California law or the Due Process Clause to
receive notice or an opportunity to be heard when
their neighbors first sought a Minor Boundary Line
Adjustment (MBLA), where they did not own the
property at that time, and decision to grant or deny
an MBLA was nondiscretionary. U.S.C.A.
Const.Amend. 14; West's Ann.Cal.Gov.Code §
66412(d).

**[2] Constitutional Law 92 &copy;=4096**

&copy; 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

219 Fed.Appx. 679                                                                  Page 2

219 Fed.Appx. 679, 2007 WL 187889 (C.A.9 (Cal.))
**(Cite as: 219 Fed.Appx. 679)**

92 Constitutional Law
   92XXVII Due Process
     92XXVII(G) Particular Issues and
Applications
       92XXVII(G)3 Property in General
        92k4091 Zoning and Land Use
         92k4096 k. Proceedings and
Review. Most Cited Cases
   (Formerly 92k278(1.3))

**Zoning and Planning 414 ⟬⟭32**

414 Zoning and Planning
   414II Validity of Zoning Regulations
     414II(A) In General
       414k32 k. Boundary Lines. Most Cited
Cases

**Zoning and Planning 414 ⟬⟭134.1**

414 Zoning and Planning
   414II Validity of Zoning Regulations
     414II(C) Procedural Requirements
       414k134 Notice and Hearing
        414k134.1 k. In General. Most Cited
Cases
Second Minor Boundary Line Adjustment (MBLA)
of neighbors' property did not deprive owners of
adjoining property of a property interest protected
under the Due Process Clause, where it merely
addressed a setback violation, and property owners
received notice and a hearing before county granted
the MBLA. U.S.C.A. Const.Amend. 14.

**[3] Constitutional Law 92 ⟬⟭4093**

92 Constitutional Law
   92XXVII Due Process
     92XXVII(G) Particular Issues and
Applications
       92XXVII(G)3 Property in General
        92k4091 Zoning and Land Use
         92k4093 k. Particular Issues and
Applications. Most Cited Cases
   (Formerly 92k278.2(2))

**Zoning and Planning 414 ⟬⟭32**

414 Zoning and Planning

414II Validity of Zoning Regulations
   414II(A) In General
     414k32 k. Boundary Lines. Most Cited
Cases
County did not delegate its decisionmaking
authority to neighbors of owners of adjoining
property, by subdividing neighbors' property under
the guise of a Minor Boundary Line Adjustment
(MBLA), and, thus, county did not violate property
owners' right to due process. U.S.C.A.
Const.Amend. 14.

**[4] Constitutional Law 92 ⟬⟭3516**

92 Constitutional Law
   92XXVI Equal Protection
     92XXVI(E) Particular Issues and
Applications
       92XXVI(E)3 Property in General
        92k3511 Zoning and Land Use
         92k3516 k. Selective Enforcement.
Most Cited Cases

**Zoning and Planning 414 ⟬⟭32**

414 Zoning and Planning
   414II Validity of Zoning Regulations
     414II(A) In General
       414k32 k. Boundary Lines. Most Cited
Cases
County did not violate property owners' equal
protection rights by subdividing neighbors' property
under the guise of a Minor Boundary Line
Adjustment (MBLA), where county did not single
property owners out for unfavorable treatment.
U.S.C.A. Const.Amend. 14.

**\*680** Thomas N. Lippe, Esq., Law Office of
Thomas N. Lippe, San Francisco, CA, for
Plaintiffs-Appellants.
David K. Huskey, Esq., Placer County Counsel,
Auburn, CA, Timothy C. McNeill, Esq., Bailey &
Brown, Tom H. Bailey, Esq., Brendan J. Begley,
Esq., Porter Scott Weiberg & Delehant, Chad S.
Tapp, Esq., Sacramento, CA, James Ernest Simon,
Porter Simon, Truckee, CA, for
Defendants-Appellees.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

219 Fed.Appx. 679, 2007 WL 187889 (C.A.9 (Cal.))
**(Cite as: 219 Fed.Appx. 679)**

Appeal from the United States District Court for the Eastern District of California, Lawrence K. Karlton, Senior Judge, Presiding. D.C. No. CV-04-00719-LKK.

Before: GOODWIN and W. FLETCHER, Circuit Judges, and HOLLAND FN*, District Judge.

> FN* The Honorable H. Russel Holland, Senior United States District Judge for the District of Alaska, sitting by designation.

MEMORANDUM

> FN** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**1 Plaintiff-Appellants Philip and Robin Kay ("the Kays") appeal the district court's decision to dismiss their suit for failure to state a claim. The Kays allege that Placer County and related parties ("the County"), together with Roy and Gayle Kirkorian (" the Kirkorians"), violated their rights to due process and equal protection by subdividing the Kirkorians' property under the guise of a Minor Boundary Line Adjustment ("MBLA"). After reviewing the district court's decision de novo, accepting all facts alleged in the complaint as true and construing them in the light most favorable to the nonmoving party, *see, e.g., Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir.2005), we affirm.

The district court held that the Kays did not have standing to challenge the County's first boundary line adjustment. We conclude that the Kays have satisfied the requirements of Article III standing. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). However, we agree with the district court that the Kays' procedural due process claim with respect to the first MBLA nevertheless fails as a matter of law.

[1] The first boundary line adjustment took place before the Kays purchased the property. Any notice, had it been given, therefore would have gone to the previous owners rather than to the Kays. However, neither California law nor the Due Process Clause requires that property owners receive notice or an opportunity to be heard when their neighbors seek MBLAs. This is because the decision to grant or deny an MBLA is nondiscretionary. *See* Cal. Gov.Code § 66412(d); *San Dieguito P'ship, L.P. v. City of San Diego,* 7 Cal.App.4th 748, 760, 9 Cal.Rptr.2d 440 (Cal.Ct.App.1992).

The Kays attempt to get around this difficulty by alleging that the County wrongly concluded that the Kirkorians' property consisted of two separate parcels. Had the County found that the Kirkorians were subdividing a single parcel rather than adjusting the boundary between two existing parcels, the County would have *681 been required to reject the Kirkorians' first MBLA application. Perhaps the County's decision was in error, or perhaps the County did not follow established procedures when it determined that the Kirkorians owned two separate parcels, but, if so, these were not errors of federal law. *See Barclay v. Florida,* 463 U.S. 939, 957-58, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) ("[M]ere errors of state law are not the concern of this Court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution."); *Jammal v. Van de Kamp,* 926 F.2d 918, 919-20 (9th Cir.1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point."); *cf. WMX Techs., Inc. v. Miller,* 80 F.3d 1315, 1319 (9th Cir.1996) ("The Due Process Clause does not, by its own force, extend individuals a right to be free of injury wherever a state is characterized as the tortfeasor. The Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.") (internal quotation marks omitted).

**2 [2] The Kays' procedural due process claim with respect to the second MBLA fails as well. The second MBLA, which merely addressed a setback violation, did not deprive the Kays of a protected property interest. Moreover, the Kays received notice and a hearing before the County

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

219 Fed.Appx. 679                                                                      Page 4

219 Fed.Appx. 679, 2007 WL 187889 (C.A.9 (Cal.))
**(Cite as: 219 Fed.Appx. 679)**

granted the second MBLA.

The Kays also have failed to state a substantive due process claim. When "dealing with abusive executive action ... only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks omitted); *see also Armendariz v. Penman,* 75 F.3d 1311, 1318-19 (9th Cir.1996) (en banc) (noting that "the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited"). The complaint offers only the unsupported legal conclusion that the County granted the Kirkorians' MBLA applications arbitrarily and in bad faith. We need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

[3] The Kays' final due process claim alleges an improper delegation of authority from the County to the Kirkorians. The extent to which state actors may delegate government functions is, in the first instance, a question of state law. Even if federal law is implicated, the complaint does no more than state the legal conclusion that an unlawful delegation occurred. That conclusion is contradicted by the facts alleged in the complaint, which indicate that the County did not delegate its decisionmaking authority to the Kirkorians.

[4] As to the Kays' equal protection claim, the district court correctly found no violation as a matter of law. The Kays have not alleged that they were "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Squaw Valley Dev. Co. v. Goldberg,* 375 F.3d 936, 944 (9th Cir.2004) (internal quotation marks omitted). Given that the Kays did not purchase their property until after the first MBLA was issued, they cannot allege that the County singled them out for unfavorable treatment. *See, e.g., Thornton v. City of St. Helens,* 425 F.3d 1158, 1167 (9th Cir.2005) (noting that courts must be able to identify "the factor motivating the alleged discrimination").

Moreover, we apply the **\*682** same highly deferential rationality standard in both the substantive due process and equal protection contexts. *See Armendariz,* 75 F.3d at 1326 n. 11. The Kays' unsupported legal conclusions are insufficient to support either claim.

Because the Kays have not stated a constitutional claim, their effort to hold the Kirkorians liable pursuant to 42 U.S.C. §§ 1983 and 1985(3) necessarily fails.

The Kays argue that they should be granted leave to amend their complaint. We conclude that amendment would be futile and that the district court's decision to dismiss with prejudice and without leave to amend was appropriate. The Kays have sought to recast what are, at best, state-law claims into federal causes of action. Amendment will not cure this fundamental flaw.

**\*\*3** AFFIRMED.

C.A.9 (Cal.),2007.
Kay v. Placer County
219 Fed.Appx. 679, 2007 WL 187889 (C.A.9 (Cal.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.