DENNIS J. HERRERA, State Bar #139669
City Attorney
KRISTEN A. JENSEN, State Bar #130196
THOMAS S. LAKRITZ, State Bar #161234
CHRISTINE VAN AKEN, State Bar #241755
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102
Telephone:     (415) 554-4615
Facsimile:     (415) 554-4757
E-Mail:        kristen.jensen@sfgov.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO
(Including SAN FRANCISCO DEPARTMENT OF BUILDING
INSPECTION, SAN FRANCISCO BUILDING
INSPECTION COMMISSION, and
SAN FRANCISCO PLANNING DEPARTMENT)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| REGAN CARROLL TRUST, Regan Carroll, Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO DEPARTMENT OF BUILDING INSPECTION, SAN FRANCISCO BUILDING INSPECTION COMMISSION, and SAN FRANCISCO PLANNING DEPARTMENT,<br><br>Defendant. | Case No. C-07-2577 SBA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM, TO STRIKE THIRD COUNT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br>**[FRCP 12(B)(1); 12(B)(6); 12(F), 56]**<br><br>Hearing Date:    February 5, 2008<br>Time:            1:00 p.m.<br>Place:           Courtroom 3, 3rd Floor<br><br>Trial Date:      TBA |

1

### TABLE OF CONTENTS

2    TABLE OF AUTHORITIES ........................................................................................ iii

3    RELIEF SOUGHT ........................................................................................................1

4    INTRODUCTION .........................................................................................................1

  STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................................5

5      I.    THE PROPOSED PROJECT .........................................................................5

6      II.   AMENDMENT OF THE PLANNING CODE APPLICABLE TO NEW

7           CONSTRUCTION IN THE DOGPATCH HISTORIC DISTRICT ...............5

    III.  CITY REVIEW OF THE APPLICATION FOR CONSISTENCY WITH

8           APPENDIX L ..................................................................................................6

9      IV.  ADMINISTRATIVE APPEALS OF THE CITY'S ACTIONS .......................7

10        A.    APPEAL TO THE BUILDING INSPECTION COMMISSION ...............7

11        B.    APPEAL TO THE BOARD OF APPEALS ...........................................7

       C.    PROCEEDINGS IN STATE COURT ...................................................8

12   STANDARD OF REVIEW ...........................................................................................8

13   ARGUMENT ................................................................................................................9

14     I.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. §1983. ....9

15        A.    THE COMPLAINT FAILS TO STATE A CLAIM OF UNLAWFUL

          DELEGATION UNDER *SCHULZ V. MILNE*. ...........................................10

16        B.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DENIAL OF

17           EQUAL PROTECTION. .....................................................................12

18           1.    Plaintiff Fails To Allege Facts Supporting a Claim For "Class of

              One" Discrimination. ..................................................................13

19           2.    The City Has a Rational Basis For Refusing to Issue Plaintiff a

20               Building Permit. ..........................................................................14

       C.    PLAINTIFF'S §1983 CLAIMS ARE BARRED BY THE STATUTE

21           OF LIMITATIONS. ............................................................................16

22     II.   RES JUDICATA AND COLLATERAL ESTOPPEL BAR PLAINTIFF'S

       CLAIMS. ......................................................................................................17

23           1.    Plaintiff Failed to Exhaust State Judicial Remedies. ....................18

24           2.    The Statute of Limitations Set Forth in Government Code

25               § 65009 Bars Plaintiff's Claims. ...............................................19

    III.  ANY CLAIMS BASED ON THE CITY'S REFUSAL TO ISSUE A PERMIT

26        ARE UNRIPE FOR ADJUDICATION. ...........................................................21

27     IV.  THE THIRD COUNT FAILS AS A MATTER OF LAW. ................................22

       A.    PLAINTIFF FAILED TO OBTAIN LEAVE OF COURT TO

28           SUPPLEMENT ITS COMPLAINT. .....................................................22

1

B.    THE ALLEGATIONS OF THE THIRD COUNT ARE INSUFFICIENT TO STATE A CLAIM. ..................................23

CONCLUSION..........................................................................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

**Federal Cases**

*Abbott Laboratories v. Gardner,*
   387 U.S. 136 (1967)........................................................................................21

*Armendariz v. Penman,*
   75 F.3d 1311 (9th Cir. 1996) ........................................................................14

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996) ..........................................................................23

*Cardenas v. Anzai,*
   311 F.3d 929 (9th Cir. 2002) ..........................................................................9

*Chiplin Enterprises, Inc. v. City of Lebanon,*
   712 F.2d 1524 (1st Cir. 1983)........................................................................10

*Chongris v. Board of Appeals of Town of Andover,*
   811 F.2d 36, (1st Cir.) (1987) ......................................................................10

*Conley v. Gibson,*
   355 U.S. 41 (1957) ..........................................................................................8

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.,*
   911 F.2d 242 (9th Cir. 1990) ........................................................................24

*Couf v. DeBlaker,*
   652 F.2d 585 (5th Cir. 1981) (1982)............................................................10

*Creative Environments v. Estabrook,*
   680 F.2d 822 (1st Cir. 1982) ........................................................................10

*Everest and Jennings, Inc. v. American Motorists Ins. Co.,*
   23 F.3d 226 (9th Cir. 1994) ............................................................................8

*Hoehne v. County of San Benito,*
   870 F.2d 529 (9th Cir. 1989) ....................................................................9, 21

*Jenkins v. McKeithen,*
   395 U.S. 411 (1969)..........................................................................................8

*Jones v. Blanas,*
   393 F.3d 918 (9th Cir. 2004) ........................................................................16

*Kay v. Placer County,*
   219 Fed.Appx. 679 (9th Cir. 2007)................................................................12

*Landgraf v. USI Film Products,*
   511 U.S. 244 (1994)........................................................................................17

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Manufactured Home Communities Inc. v. City of San Jose,*
  420 F.3d 1022 (9th Cir. 2005) ..............................................................8, 13

*Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics,*
  2007 WL 127997 (N.D. Cal., 2007) ...............................................22

*McMillan v. Goleta Water District,*
  792 F.2d 1453 (9th Cir. 1986) ......................................................21

*Norco Constr. Co. v King County,*
  801 F.2d 1143 (9th Cir. 1986) ......................................................21

*Pareto v. F.D.I.C.,*
  139 F.3d 696 (9th Cir. 1998) ........................................................23

*PFZ Properties, Inc., v. Rodriguez,*
  928 F.2d 28 (1st Cir. 1991)...........................................................10

*Planned Parenthood of Southern Arizona v. Neely,*
  130 F.3d 400 (9th Cir. 1997) ........................................................22

*Rancho Palos Verdes Corp. v. City of Laguna Beach,*
  547 F.2d 1092 (9th Cir. 1976) .........................................................9

*Raskiewicz v. Town of New Boston,*
  754 F.2d 38,(1st Cir.1985)...............................................................9

*San Remo Hotel v. City and County of San Francisco,*
  145 F.3d 1095 (9th Cir. 1998) .........................................................9

*Schulz v. Milne,*
  849 F.Supp. 708 (N.D. Cal. 1994) .............................................10, 11

*Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n,*
  42 F.3d 1278 (9th Cir. 1994) ...........................................................9

*Smith v. McCullough,*
  270 U.S. 456 (1926).........................................................................8

*Squaw Valley Dev. Co. v. Goldberg,*
  375 F.3d 936 (9th Cir. 2004) ........................................................13

*Sucesion Suarez v. Gelabert,*
  701 F.2d 231 (1st Cir. 1983)..........................................................10

*Thornton v. City of St. Helens,*
  425 F.3d 1158 (9th Cir. 2005) .........................................................9

*Tosco Corp. v. Communities for a Better Env't,*
  236 F.3d 495 (9th Cir. 2001) ...........................................................8

*University of Tennessee v. Elliot,*
   478 U.S. 788 (1986)..........................................................................................18

*Village of Willowbrook v. Olech,*
   528 U.S. 562 (2000) (per curiam)................................................................12

*Western Mining Council v. Watt,*
   643 F.2d 618 (9th Cir. 1981) ................................................................8, 13

*Wilson v. Garcia,*
   471 U.S. 261 (1985)......................................................................................16

**State Cases**

*Abelleira v. District Court of Appeal,*
   17 Cal.2d 280 (1941)....................................................................................17

*Briggs v. City of Rolling Hills Estates,*
   40 Cal.App.4th 637 (1995)..........................................................................18

*City and County of San Francisco v. Ang,*
   97 Cal.App.3d 673  (1979) ..........................................................................18

*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.,*
   35 Cal.4th 1072 (2005).................................................................................17

*Hensler v. City of Glendale,*
   8 Cal.4th 1 (1994)........................................................................................20

*Hunt v. County of Shasta,*
   225 Cal.App.3d 432 (1990)..........................................................................20

*Johnson v. City of Loma Linda,*
   24 Cal.4th 61 (2000) ....................................................................................17

*Knickerbocker v. City of Stockton,*
   199 Cal.App.3d 235 (1988)..........................................................................18

*Krusesky v. Baugh,*
   138 Cal.App.3d 562 (1982)..........................................................................17

*Land Waste Management v. Contra Costa Board of Supervisors,*
   222 Cal.App.3d 950 (1990)......................................................................2, 15

*Landi v. County of Monterey,*
   139 Cal.App.3d 934 (1983)..........................................................................15

*Orinda Assn. v. Board of Supervisors,*
   182 Cal.App.3d 1145 (1986),.......................................................................16

*Russian Hill Imp. Ass'n v. Board of Permit Appeals of City and County of San Francisco,*
    66 Cal.2d 34 (1967) ..................................................................................3, 14

*Selby Realty Co. v. City of San Buenaventura,*
    10 Cal.3d 110 (1973) .................................................................................14, 15

*Travis v. County of Santa Cruz,*
    33 Cal.4th 757 (2004) .......................................................................................20

*Wells Fargo Bank v. Town of Woodside,*
    33 Cal.3d 379 (1983) .................................................................................14, 15

*West Coast Advertising v. City and County of San Francisco,*
    256 Cal.App.2d 357 (1967) ........................................................................14, 15

**Federal Statutes**
42 U.S.C.
    §1983 ...............................................................................3, 9, 16, 17, 18, 22
Federal Rules of Civil Procedure
    § 12(b)(1) ..............................................................................................1, 8
    § 12(b)(6) ..............................................................................................1, 8
    § 12(f) ...................................................................................................1, 24
    § 15(d) ........................................................................................................1

**State Statutes & Codes**
Code of Civil Procedure
    § 335.1 ......................................................................................................16
    § 340 .........................................................................................................16
    § 1094.5 ...............................................................................................17, 18
    §1094.6 ..................................................................................................7, 17
Government Code
    § 65009 ..................................................................................................4, 19
    § 65901 ......................................................................................................19
    § 65903 ......................................................................................................19
    § 66499.37 .................................................................................................20

**San Francisco Statutes, Codes & Ordinances**
San Francisco Building Code
    § 106.4.3 ...................................................................................2, 7, 15, 16
San Francisco Charter
    § 3.100 .........................................................................................................8
San Francisco Planning Code
    Article 10 .....................................................................................................5, 6, 15
    Article 10, Appendix L ..............................................................................5, 6, 15
    §1005 ......................................................................................................6, 13
    § 1006 .....................................................................................................6, 13
    § 1006.2 ........................................................................................................6

Defendant City and County of San Francisco (sued herein as the City and County of San Francisco, San Francisco Department of Building Inspection, San Francisco Building Inspection Commission, and San Francisco Planning Department; collectively "City") submits this memorandum of points and authorities in support of its motion to dismiss the First Amended Complaint for Injunctive Relief and Damages for Violation of Civil Rights filed herein on May 15, 2007 ("Complaint") on the grounds that this Court lacks jurisdiction, the Complaint fails to state a claim, and the Third Count was filed without prior leave of court in violation of the Federal Rules of Civil Procedure.

## RELIEF SOUGHT

By this motion, the City requests dismissal, with prejudice, of each claim for relief set forth in the Complaint filed herein. This relief is sought on the basis of this Court's lack of jurisdiction over one or more of Plaintiff's claims for relief (FRCP 12(b)(1)) and Plaintiff's failure to state claims upon which relief can be granted (FRCP 12(b)(6)). In the alternative, the City requests summary judgment under Rule 56 for the reasons set forth below.

In addition, the City requests that the Court strike the Third Count of the Complaint on the ground that Plaintiff failed to request leave of court prior to filing this supplemental pleading, which sets forth claims premised on conduct alleged to have occurred since the initiation of this action. Such failure violates Rule of Civil Procedure 15(d), and thus renders the Complaint subject to motion to strike pursuant to Rule 12(f).

## INTRODUCTION

This is the City's second motion to dismiss filed in this case. Following filing of the City's earlier motion to dismiss the initial complaint in this action (and in lieu of opposing that motion), Plaintiff filed a first "amendment" to its complaint which adds *no new facts* in support of any of the claims challenged in the original motion to dismiss.[1] In fact, Plaintiff has not amended the Complaint in *any way* intended to address the legal defects identified in the City's first motion to dismiss but

---

[1] Although styled as an "Amended" complaint, the Complaint contains new allegations regarding alleged conduct by the City after the initiation of this case. As a result, and as set forth more fully below, the Complaint is, in reality, a "supplemental" pleading governed by FRCP 15(d).

instead includes a new claim—devoid of any supporting facts—that the City has "retaliated" against Plaintiff in response to the filing of this and four other actions filed by Plaintiff in state court. This new claim, like the others set forth in the Complaint, may be disposed of on the basis of facts alleged in the Complaint or those subject to judicial notice. As a result, the entire action should be dismissed.

In this case, Plaintiff again seeks a court order compelling the City to issue a building permit for a project that does not comply with the law. Plaintiff's property is located in the Dogpatch Historic District of San Francisco. The building permit application for the Project was initially filed in 1999, assigned to Plaintiff in 2000, and then pursued sporadically by Plaintiff over the next several years as his personal circumstances permitted. Plaintiff admits that the Planning Code was amended during the protracted pendency of the Application, designating the neighborhood as an historic district. The amended Code requires that all projects proposed for the Dogpatch Historic District must be reviewed for consistency with applicable Planning Code provisions prior to issuance of the permit. Such review, which takes the form of a Certificate of Appropriateness, was never sought or received by Plaintiff. In fact, the Complaint suggests that the Project should not be required to comply with otherwise applicable changes in the Planning Code that were enacted subsequent to the filing of its Application, but prior to final issuance of the building permit. Plaintiff's arguments are contrary to well-established law and, as a result, the Complaint should be dismissed without leave to amend.

"Under established law local government agencies are *powerless* to issue land-use permits which are inconsistent with governing legislation." *Land Waste Management v. Contra Costa Board of Supervisors,* 222 Cal.App.3d 950, 959 (1990)(italics in original). This includes permits that violate planning and zoning ordinances. *Id.* Similarly, San Francisco Building Code § 106.4.3 prohibits issuance of building permits that are not in conformity with the Planning Code and all other applicable law. Any permit issued in violation of the Planning Code is legally invalid and may be set aside as *ultra vires. Id.* at 958. As a result, it is a well-settled principle of administrative law that, until a permit is finally granted, the Building and Planning Departments, and all administrative agencies and courts considering a permit application, must apply the Planning Code in effect at the time of review. Applying this principal, the California Supreme Court has long held that "one who is

1    not yet armed with a presently effective municipal license to proceed with construction must assume

2    the risk that, 'before final action [has] been taken on [his] application' … the law might be changed so

3    as to require that his application be denied." *Russian Hill Imp. Ass'n v. Board of Permit Appeals of*

4    *City and County of San Francisco,* 66 Cal.2d 34, 40 (1967).

5            Plaintiff challenged these very same decisions of the City in state court, but dismissed its

6    complaint when faced with a demurrer setting forth the controlling law.  Attempting to avoid the

7    obvious legal defects of its challenge to the City's conduct, Plaintiff now attempts to recast its claims

8    as violations of federal law under 42 U.S.C. §1983 ("§1983").  Specifically, plaintiff asserts that the

9    City's conduct amounts to an unlawful delegation of authority [Complaint at ¶¶16-19], and that such

10   delegation violated Plaintiff's constitutional right to equal protection. [*Id.* at  ¶¶20-24.]  Plaintiff has

11   failed to state claims cognizable under §1983.

12           This case presents a local land use dispute revolving around the questions of state law

13   described above.  Plaintiff cannot plead facts establishing that the City delegated any land use

14   regulatory authority to a private entity, and this Court is not required to accept as true the unfounded

15   legal conclusions and sheer speculation offered in support of Plaintiff's legal theory.  Moreover, the

16   Court must apply the highly deferential rational basis standard in reviewing the equal protection

17   claim.  Based on the undisputed line of cases prohibiting issuance of a building permit in violation of

18   existing Planning and Building Code requirements, the City simply had no choice but to refuse

19   issuance of a permit once it was determined that the Application had not been reviewed for

20   consistency with the revised Planning Code.  Thus, state and local law *compelled the City* to act as it

21   did.  This is more than enough to satisfy the rationality test.

22           Plaintiff's claims are also barred by the doctrines of *res judicata* and collateral estoppel.

23   Plaintiff fails to allege that he has exhausted available administrative remedies in connection with the

24   City's actions as provided under the San Francisco Charter and Municipal Codes, or sought to be

25   compensated through resort to the state courts.  Although Plaintiff filed administrative claims

26   challenging the City's conduct, Plaintiff did not exhaust available state judicial remedies as required

27   prior to commencing an action pursuant to §1983 in this Court.  Nor can it remedy this failure.  Under

28   California law, challenges to local planning decisions, to the reasonableness or legality of conditions

imposed on any permit, and to determinations by the City's Zoning Administrator are all governed by the 90-day statute of limitations set forth in Government Code § 65009(c). Here, the City administrative bodies with jurisdiction over Plaintiff's permit appeals made final determinations on May 8, 2006, and June 14, 2006. Plaintiff filed the instant action approximately one year later, well beyond the 90-day period mandated by §65009.

Similarly, Plaintiff's theory that the City unlawfully delegated authority to a neighborhood group is time-barred. The statute of limitations defense is apparent from the face of the Complaint, which alleges that "Planning refused to determine whether the Application was complete unless the [Dogpatch Neighborhood Association] approved it. [] The Application was finally determined to be complete by Planning in June 2001." Thus, the alleged delegation occurred prior to June 2001— nearly six years before the Complaint was filed. By June 2002, the limitations period for Plaintiff's §1983 claims had run.

Perhaps in an attempt to plead around the statute of limitations bar which defeats his other claims for relief, Petitioner now alleges that the City has, since the filing of the initial complaint in this case, delayed "processing of the Application for this Project ...[and] matters related to other real property owned by Plaintiff." This claim for relief also fails. First, these new allegations supplement the original complaint, rather than amending it. Consequently, Plaintiff was required to seek leave of court before filing this new complaint. Since no such leave was sought, the Third Count should be stricken. In addition, the permit application for Plaintiff's property was disapproved—at Plaintiff's request—in December 2006. Since that time, it has been impossible for the City to delay processing the Application, because the Application was no longer pending. Similarly, City records reflect that all permit applications associated with Plaintiff's other property (located at 1169 Tennessee Street) that were pending at any time on or since the date of Plaintiff's first state court petition have been issued by the City. The Court need not accept as true the unsupported conclusions of the Complaint in light of these judicially noticeable facts to the contrary.

For the reasons set forth herein, the Complaint should be dismissed in its entirety and without leave to amend.

# STATEMENT OF FACTS AND PROCEDURAL HISTORY

## I.   THE PROPOSED PROJECT

The site of the proposed Project in this case is 1179-89 Tennessee Street (the "Property") [Complaint at ¶3], located in the Dogpatch Historic District of the City.  [*Id.* at ¶¶1, 5.]  Plaintiff's predecessor in interest filed an application to construct a four-story residential and commercial project ("Project") on the Property in 1999.  [*Id.* at ¶5.]  After succeeding to the permit application ("Application") in 2000, Plaintiff pursued the Application sporadically, as his personal circumstances (including the death of a family member) permitted, over the course of the next five years.  [*Id.* at ¶2 and Request for Judicial Notice ("RJN") at Exh. 4 (Exh. B).]  During that time, the Planning Department reviewed and approved various aspects of the Project, including addenda drawings. [Complaint at ¶¶7, 8.]  The Planning Department review of and revisions to the addenda drawings continued through November, 2005.  [*Id.* at ¶8.]

## II.   AMENDMENT OF THE PLANNING CODE APPLICABLE TO NEW CONSTRUCTION IN THE DOGPATCH HISTORIC DISTRICT

In 2003, while the Application was pending, the San Francisco Board of Supervisors adopted legislation designating the Dogpatch Historic District and requiring review of all projects proposed in the district for consistency with Appendix L (Dogpatch Historic District) to Article 10 (Preservation of Historical Architectural and Aesthetic Landmarks) of the Planning Code ("Appendix L").  [RJN at ¶3.]  Article 10 requires, among other things, that

> (a)  No person shall carry out or cause to be carried out ... in a designated historic district any construction ... for which a City Permit is required, except in conformity with the provisions of this Article 10.  In addition, no such work shall take place unless all other applicable laws and regulations have been complied with, and any required permit has been issued for said work.
>
> ....
>
> (c)  The Central Permit Bureau shall not issue, and no other City department or agency shall issue, any permit for construction ... in an Historic District, except in conformity with the provisions of this Article 10.  In addition, no such permit shall be issued unless all other applicable laws and regulations have been complied with.
>
> ....
>
> (e)  After receiving a permit application from the Central Permit Bureau in accordance with the preceding subsection, the [Planning] Department shall ascertain whether Section 1006 requires a Certificate of Appropriateness for the work proposed in such permit application.  ... If such Certificate is required

1
2

and has not been issued, or if in the sole judgment of the Department the permit application does not conform, the permit application shall be disapproved or held by the Department until such time as conformity does exit; the decision and action of the Department shall be final.

3    Planning Code §1005, subs. (a), (c), and (e) (emphasis added). [RJN at Exh. 3.] Section 1006 of the

4    Planning Code, in turn, requires a Certificate of Appropriateness in the case of "[a]ny construction …

5    for which a City permit is required … in a historic district." Planning Code §1006. *Id.* Section

6    1006.2 provides that the Planning Commission shall hold a public hearing on all applications for a

7    Certificate of Appropriateness. [*Id.*] Appendix L became effective as of April 18, 2003. The

8    Complaint characterizes these amendments to the Planning Code as "non-substantive changes" and,

9    rather than acknowledge that the City denied the permit as a result of the fact that the Application did

10    not comply with the law in existence as of December 2005, Plaintiff offers the speculation that he

11    was "singled out …for special handling by order of DNA…." [Complaint at ¶15.]

12

13    **III.    CITY REVIEW OF THE APPLICATION FOR CONSISTENCY WITH APPENDIX L**

14            Plaintiff's reason for bringing the present action, as it has been with each of the four actions

15    previously filed in the Superior Court [*see* RJN at Exhs. 4-7] is to avoid what Plaintiff views as the

16    inequitable requirement that the Project obtain review and approvals based on Planning Code

17    provisions adopted during the pendency of the Application. [*Id.*] The simple truth is that the Project

18    has not been reviewed for compliance with Article 10 of the Planning Code because Plaintiff has not

19    applied for or received the required Certificate of Appropriateness for the Project. Once Planning

20    staff discovered that the mandatory review had not been conducted, the Department notified Plaintiff

21    that the Project must be reviewed for consistency with the standards set forth in Appendix L, and

22    reasserted jurisdiction over the permit application. [*Id.* at Exh. 4 (Exhs. A, C).] Plaintiff was notified

23    of this determination on December 2, 2005, and again on January 5, 2006. [*Id.*] On March 6, 2006,

24    the Zoning Administrator (ZA) formally requested that DBI "route any and all building permit

25    applications, renewals, extensions addendums, or revisions for the subject property to the Planning

26    Department for review" [*id.* (at Exh. C)] ("ZA Determination"), explaining that the "Planning

27    Department will review [the Application] for consistency with the Planning Code . . . including the

28

1   adequacy of past environmental reviews . . . and regulations of the Dogpatch Historical District

2   within Article 10 of the code." [*Id.*]

3   **IV.   ADMINISTRATIVE APPEALS OF THE CITY'S ACTIONS**

4   **A.      APPEAL TO THE BUILDING INSPECTION COMMISSION**

5              In January 2006, Plaintiff filed an appeal with the Building Inspection Commission

6   ("BIC") challenging the Planning Department's reassertion of jurisdiction over the Application.  [*Id.*

7   at  Exh. 4 (*see* Exh. B).]  After a full hearing, the BIC denied the appeal.  [*Id.*]  Plaintiff then made a

8   request for rehearing, which was also denied.  [*Id.*]  The BIC adopted its findings supporting the

9   decision and upholding the actions by Planning and DBI staff on May 1, 2006, finding as follows:

10               The Planning Department acted properly in reasserting its jurisdiction over the
               permit because, under San Francisco Building Code Section 106.4.3, a building
11               permit issued in violation of the Planning Code – or any City Ordinance –
               would not be valid.  The Planning Department is the City agency charged with
12               determining whether building permits comply with the Planning Code.

13               ....

14               ...DBI's Central Permit Bureau never issued the site permit for the Project.  No
               permit was delivered to the Appellant Carroll or his agent.  Sign-offs by
15               various City Departments on Appellant's final plans and other structural details
               that are needed before a permit can issue are not "issuance" of a permit.
16               ....

17               Because DBI's Central Permit Bureau did not yet issue a permit to Appellant
               Carroll, Appellant has no vested right to undertake the Project and DBI has no
18               further jurisdiction pending Planning Department action on the matter.

19   [*Id.* (Exh. B, p. 2 at 6, p. 2-1 at 1-3).]  The BIC served its written findings on Plaintiff by mail on May

20   8, 2006.  [*Id.* (Exh. B at 9).]

21   **B.      APPEAL TO THE BOARD OF APPEALS**

22              Plaintiff appealed the ZA Determination to the Board of Appeals ("BOA") on March

23   21, 2006.  [*Id.* at Exh. 4 (Exh. D).]  After a hearing on May 17, 2006, the BOA denied the appeal and

24   upheld the ZA Determination.  [*Id.*]  Plaintiff's subsequent request for rehearing was heard and denied

25   on June 14, 2006, and the BOA mailed its Notice of Decision and Order on June 16, 2006.  [*Id.*]  The

26   Notice of Decision and Order included written notice to Plaintiff that any court challenges to the

27   BOA's determination would be governed by the statute of limitations set forth in Code of Civil

28   Procedure §1094.6.  [*Id.*]

## C.   PROCEEDINGS IN STATE COURT

Plaintiff filed an amended petition challenging the City's refusal to issue a permit on September 12, 2006. [RJN at Exh. 4.]  Summons was issued, and the Complaint served on the City as required by San Francisco Charter § 3.100, on September 27, 2006.  [*Id.*]  The City filed a demurrer on June 22, 2007 [*Id.* at Exh. 8], and replied to Plaintiff's opposition on July 3, 2007.  [*Id.* at Exh. 9.]  Two days later—before the court had issued its tentative ruling on the demurrer—Plaintiff filed a request for dismissal of the state court action.  [*Id.* at Exh. 10.]  Plaintiff also filed three other actions in state court challenging subsequent actions by the City.  [RJN at Exhs. 5-7.]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  Although the facts alleged by Plaintiff are assumed true under a motion to dismiss, the Court is not required to accept as true unwarranted deductions or unreasonable inferences, or conclusory legal allegations cast in the form of factual allegations. *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). " 'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.' " *Id.* (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)).  Subject

1    matter jurisdiction does not exist over claims that are not ripe for adjudication. *Cardenas v. Anzai*,

2    311 F.3d 929, 933 (9th Cir. 2002).

3                                   **ARGUMENT**

4    **I.       THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. §1983.**

5            To prevail on its claims under §1983, Plaintiff must show that "(1) acts by the defendants (2)

6    under color of state law (3) depriv[ed][it] of federal rights, privileges or immunities [and] (4)

7    caus[ed][it] damage." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (*citing*

8    *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n,* 42 F.3d 1278, 1284 (9th Cir. 1994)).

9    Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for

10   vindicating federal rights elsewhere conferred.'" *Id.* Accordingly, Plaintiff must establish that the

11   City's alleged actions deprived it of some right, privilege or immunity protected by the Constitution

12   or laws of the United States. Plaintiff has failed to allege such a deprivation, and the §1983 claims

13   must therefore fail.

14           The federal courts have repeatedly recognized that a local agency's compliance with its own

15   land use regulations does not present an interest protected under §1983. These cases take the view

16   that local zoning and land use disputes represent an area "upon which the federal courts ought not to

17   enter unless no alternative to its adjudication is open." *Rancho Palos Verdes Corp. v. City of Laguna*

18   *Beach*, 547 F.2d 1092, 1094 (9th Cir. 1976). *Cf. San Remo Hotel v. City and County of San*

19   *Francisco*, 145 F.3d 1095, 1105 (9th Cir. 1998) (9th Circuit has "consistently held that land use

20   planning is a sensitive area of social policy that meets the first requirement for *Pullman* abstention"

21   (citations omitted)).

22           Federal courts were not created to be "the Grand Mufti of local zoning boards" *Hoehne v.*

23   *County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989), nor do they "sit as [ ] super zoning board[s]

24   or [ ] zoning board[s] of appeals." *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir.), *cert.*

25   *denied*, 474 U.S. 845 (1985). "While the Supreme Court has yet to provide precise analysis

26   concerning claims of this sort, we feel confident that where, as here, the state offers a panoply of

27   administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local

28   zoning and planning disputes by means of 42 U.S.C. §1983." *Id.* Resort to §1983 to resolve such

MPA ISO MOTN TO DISMISS AMENDED COMPL.          9
CASE NO. C-07-2577 SBA                                          n:\land\li2007\080285\00450609.doc

inherently local disputes is, therefore, disfavored, and the courts have specifically rejected attempts like the one at bar to create a constitutional question out of a local agency's decision on a development application. *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir. 1983) (where planning board, after granting preliminary approval to a development project, denied a building permit for the project, court found that "[a] mere bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to the correct error"); *Chongris v. Board of Appeals of Town of Andover*, 811 F.2d 36, 42-43 (1st Cir.), *cert. denied*, 483 U.S. 1021 (1987); *Sucesion Suarez v. Gelabert*, 701 F.2d 231, 233 (1st Cir. 1983); *Creative Environments v. Estabrook*, 680 F.2d 822, 829-30, 832 fn.. 9 (1st Cir.), *cert. denied*, 459 U.S. 989 (1982)("[P]roperty is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes."); *Couf v. DeBlaker*, 652 F.2d 585, 590 n. 11 (5th Cir. 1981), *cert. denied*, 455 U.S. 921 (1982). In these cases, "[e]ven where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." *PFZ Properties, Inc., v. Rodriguez*, 928 F.2d 28, 31, (1st Cir. 1991), *cert. granted* 502 U.S. 956, *cert. denied as improvidently granted*, 503 U.S. 257 (1992).

Denial of building permits, regardless of the motivations behind such denial, and even where the issuing agency's actions violate state law, represent "a matter of local concern, properly and fully reviewable in the state courts." *Chiplin, supra*, 712 F.2d at 1527. For the reasons set forth in these cases, and for additional reasons argued below, Plaintiff fails to state a cognizable claim under §1983.

## A.   THE COMPLAINT FAILS TO STATE A CLAIM OF UNLAWFUL DELEGATION UNDER *SCHULZ V. MILNE*.

Plaintiff relies on the case of *Schulz v. Milne*, 849 F.Supp. 708 (N.D. Cal. 1994) for the proposition that conduct of the Planning Department constituted an unlawful delegation of power to a private body. [Complaint at 5.] The analogy, however, is unpersuasive.[2]

---

[2] The legal deficiency of the first count of the Complaint was set forth in the City's original motion to dismiss. The only additional allegation incorporated into Count One in the Amended (continued on next page)

1    In the *Schulz* case, the plaintiffs alleged that the City had delegated authority to review project

2    plans and approve permit applications to a neighborhood review board. *Id.* at 710, 712-13.  The

3    Schulzes alleged that the neighborhood review board was delegated certain authority over project

4    review and approval pursuant to a resolution of the City Planning Commission, that the city

5    repeatedly required them to submit plans to the board and informed them that they would have to

6    "satisfy" the board before the city would take any action on the permit application. *Id.* at 712.  The

7    court concluded that, for purposes of a motion to dismiss, plaintiffs had alleged enough facts to create

8    an inference that the city had unlawfully delegated its decision-making authority to the board.  *Id.* at

9    713.  The allegations of the *Schulz* case are not analogous to those presented here.

10    Here, Plaintiff does not allege that the Planning Commission or any other City body formally

11    delegated authority over projects in the Dogpatch Neighborhood to any individual or entity through

12    ordinance or resolution.  Plaintiff does not allege that the City required it to submit plans for approval

13    to the Dogpatch Neighborhood Association, but only suggests that the City had directed a previous

14    owner to "review the project" with the association.  [Complaint at ¶5.]  The Complaint then suggests

15    that "Planning refused to determine whether the Application was complete unless DNA approved it."

16    [*Id.* at ¶6.]

17    Plaintiff does not allege when it submitted materials constituting the Application to the City,

18    but asserts that the Planning Department determined the Application to be complete in 2001.  [*Id.* at

19    ¶¶6, 7.]  The Application was then apparently processed with no further input from the association for

20    the next four years, during which the City reviewed and approved various aspects of the Application,

21    the project was revised, and the City approved a number of  addenda.  [*Id.* at  8.]  During that same

22    period, the Planning Code was revised to designate the Dogpatch Neighborhood as an historic

23    district, and to require that all construction projects in that neighborhood be submitted to review by

24    _____

25    (footnote continued from previous page)
     Complaint is the following conclusory statement: "As a result, DNA has acted under the color of state
26    law and there is such a nexus between Defendants and DNA that the action of the DNA can be
     considered and treated as the actions [sic] of Defendants."  [Complaint at ¶ 17.]  This amendment
27    contains no new *facts* in support of the claim and, as a result, does not cure the legal defects set forth
     below.

28

the Planning Department for consistency with the provisions of the code applicable to such districts. The Complaint concedes that the neighborhood was designated as an historic district [*id.* at ¶11], but characterizes the City's application of the Planning Code provisions in effect in 2005 as "unreasonable, arbitrary, and capricious conduct, without any rational basis" [*id.* at ¶15], suggesting that the City enforced the law applicable to the project "by order of [the association]." These allegations are insufficient to establish even an inference that the City merely "rubber-stamped" decisions of the neighborhood association. Rather, the allegations make plain that the neighborhood association *did not interfere in any way* with the City's determination of the merits of Plaintiff's Application, and in fact *did not express any views* as to the Application at all after June of 2001.

As in the case of *Kay v. Placer County*, 219 Fed.Appx. 679 (9th Cir. 2007) , Plaintiff has failed to convert this local land use dispute into a federal claim by alleging unlawful delegation. As the court held in that case "[t]he extent to which state actors may delegate government functions is, in the first instance, a question of state law. Even if federal law is implicated, the complaint does no more than state the legal conclusion that an unlawful delegation occurred. That conclusion is contradicted by the facts alleged in the complaint," which indicate that the City did not delegate its decision-making authority to the Dogpatch Neighborhood Association. *Id.* at 681. Rather, the Complaint confirms that the City, and not the neighborhood association, reviewed and approved various aspects of Plaintiff's Application over the period from 1999-2005. [Complaint at 7-8.] Whether a member of the neighborhood association or some other member of the public may have notified Planning staff that the Application did not comply with the Planning Code as of December 2005 is immaterial, and does not create an inference that the City has "rubber-stamped" the decisions of a nongovernmental body.

## B. THE COMPLAINT FAILS TO STATE A CLAIM FOR DENIAL OF EQUAL PROTECTION.

Plaintiff's equal protection claim also fails as a matter of law. The U.S. Supreme Court formally recognized class-of-one equal protection causes of action in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam).  In *Olech*, a city conditioned water service for a property on the owner's granting a 33-foot easement, even though the city required only a 15-foot easement from

1   every other property owner. *Id.* at p. 563.  The Supreme Court allowed the case to proceed on the

2   class-of-one theory, recognizing claims where a "plaintiff alleges that she has been intentionally

3   treated differently from others similarly situated and there is no rational basis for the difference in

4   treatment." *Id.* at p. 564 [emphasis added].   Therefore, in order to establish a class-of-one equal

5   protection violation based upon the alleged discriminatory application of a facially nondiscriminatory

6   law in a case that does not involve a suspect class or a fundamental right, a plaintiff must prove that

7   (1) it was treated differently from persons or entities similarly situated; (2) the unequal treatment was

8   intentional; and (3) the unequal treatment was not rationally related to a legitimate government

9   purpose. *Ibid.*  The complaint does not satisfy these requirements.

10              **1.      Plaintiff Fails To Allege Facts Supporting a Claim For "Class of One"**
                        **Discrimination.**
11

12          The Complaint contains no allegations to support an argument that Plaintiff is a "class of one"

13   that has been subjected to disparate treatment.  In fact, the only allegations on the subject are

14   unfounded inferences and conclusions. [Complaint at ¶15 (the City "singled Plaintiff out for special

15   handling by order of DNA....")  No facts are alleged to support the conclusory allegations, and the

16   Court is not bound to accept such allegations as true. *See Manufactured Home Communities Inc. v.*

17   *City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005); *Western Mining Council v. Watt*, 643 F.2d

18   618, 624 (9th Cir. 1981).  Plaintiff has not alleged that it was "intentionally treated differently from

19   others similarly situated and that there [was] no rational basis for the difference in treatment." *Squaw*

20   *Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (internal quotation marks omitted).

21   Unsupported legal conclusions are insufficient to support Plaintiff's equal protection claim.

22          Nor can Plaintiff amend to correct this defect, since the City's refusal to issue a permit in 2005

23   was based on Planning Code requirements that are facially nondiscriminatory, and apply to all

24   projects constructed in the Dogpatch Historic District after the effective date of the code section.

25   Planning Code §§1005, 1006.  In fact, Plaintiff has already amended the Complaint once in response

26   to the City's earlier motion to dismiss, but asserted *no new facts* to bolster this claim.  The actual

27   bases for the City's decisions at issue in this case are reflected in the determinations of the BIC and

28   BOA which found that the Planning Department acted properly when it reasserted jurisdiction over

MPA ISO MOTN TO DISMISS AMENDED COMPL.        13                    n:\land\li2007\080285\00450609.doc
CASE NO. C-07-2577 SBA

the Application for purposes of bringing the Application into compliance with the Planning Code. [RJN at Exh. 4 (Exhs. A-D).] Plaintiffs simply cannot allege that the City has treated it unfairly by requiring that Plaintiff comply with the law before he could receive a building permit.

## 2. The City Has a Rational Basis For Refusing to Issue Plaintiff a Building Permit.

In evaluating Plaintiff's equal protection claim, the Court must apply the highly deferential rationality standard. *See Armendariz v. Penman*, 75 F.3d 1311, 1326 n. 11 (9th Cir. 1996). Plaintiff's unsupported legal conclusions are insufficient to support this claim. *Kay v. Placer County, supra*, at 681.

In this case, the City had a rational basis for refusing to issue Plaintiff the requested permit in 2005: California law and San Francisco's Municipal Code *forbade* it. It is long-settled law in this state that building projects must comply with the Planning Code in effect at the time of permit issuance. *Wells Fargo Bank v. Town of Woodside*, 33 Cal.3d 379 (1983); *Selby Realty Co. v. City of San Buenaventura*, 10 Cal.3d 110 (1973); *Russian Hill Improvement Assoc. v. Board of Permit Appeals*, 66 Cal.2d 34 (1967). This rule extends even to changes in the law adopted after initial administrative decision on a permit.

> [T]he mere application for a building permit or the submission of plans which comply with the law in existence at the time of such submission do not entitle an applicant to the issuance of the permit if, in the interim between administrative denial of the permit and the appeal from that denial, an ordinance has been enacted which would prohibit the project contemplated.

*Selby Realty Co.*, 10 Cal.3d at 125. In fact, "even a permit which [has] achieved administrative finality can be revoked on the basis of a subsequent change in the zoning laws." *West Coast Advertising v. City and County of San Francisco*, 256 Cal.App.2d 357, 360 (1967). This concept has been specifically applied to the decisions of San Francisco's BOA (formerly known as the Board of Permit Appeals) which, "in its de novo review is bound to apply the zoning ordinances in effect at the time of its final decision, not those in force at the time of preliminary proceedings before any subordinate agency." *Russian Hill Improvement Assn., supra*, 66 Cal.3d at 46. As a result, the Planning Department, the BIC and the BOA were each required to apply the existing Planning Code (including Article 10 and Appendix L) to the Project at the time of their respective reviews of the

MPA ISO MOTN TO DISMISS AMENDED COMPL.    14    n:\land\li2007\080285\00450609.doc
CASE NO. C-07-2577 SBA

1   Application.  If the City had issued the permit in December of 2005 without the required Certificate

2   of Appropriateness and Planning Commission review, as Plaintiff argues it should have, the permit

3   would have been invalid as a matter of law.  S.F. Building Code § 106.4.3; *Land Waste Management*,

4   *supra*, 222 Cal.App. 3d at 958.

5          Reviewing courts must also apply the law in existence at the time of their decision, rather than

6   at the time that a permit is issued or denied.  *Wells Fargo Bank*, 33 Cal.3d at 385; *Selby Realty Co.*,

7   10 Cal.3d at 110.

8                  It is the prevailing rule that a reviewing court will apply the law in existence at
                   the time of its decision rather than at the time the permit was denied. [cite.]
9                  The purpose of this rule is to prevent an appellate court from issuing orders for
                   the construction of improvements contrary to presently existing legislative
10                 provisions. [Cite.]  Indeed, even after a permit has been issued, it may be
                   revoked by an administrative body on the basis of a subsequent change in the
11                 zoning laws unless the permitee has made substantial improvements in good
                   faith reliance on the permit.

12

13  *Selby Realty Co.*, 10 Cal.3d at 110.  Where, as here, no permit has issued, there can be no substantial

14  reliance thereon to shield the Plaintiff from the prevailing rule.  *West Coast Advertising*, 256

15  Cal.App.2d at 360.  Nor can Plaintiff satisfy the only recognized exception to the rule, which is

16  limited to cases where a subsequent ordinance is enacted with the specific purpose of frustrating the

17  developer's plan.  *See Selby Realty Co.*, 10 Cal.3d at 126, fn. 11.  As a result, Plaintiff is not entitled

18  to issuance of the permit he seeks as a matter of law.

19          "As stated in [*Landi v. County of Monterey*, 139 Cal.App.3d 934,936-937 (1983)], the grant of

20  a land-use permit or variance is an adjudicatory act, rather than a legislative one. [Citations.]

21  Adjudicatory decisions must be consistent with applicable land-use legislation. [Citations.] Thus,

22  local government entities cannot issue land-use permits that are inconsistent with controlling land-use

23  legislation, as embodied in zoning ordinances and general plans."  *Land Waste Management, supra*,

24  at 957-58.  Instead, "a land-use permit which is inconsistent with existing zoning ordinances can be

25  issued by a responsible administrative entity only after the applicable ordinances have been amended

26  by the legislative process."  *Id.* at 959.  In short, "[u]nder established law, local government agencies

27  are powerless to issue land-use permits which are inconsistent with governing legislation." *Id.* at 959

28  (*citing Orinda Assn. v. Board of Supervisors*, 182 Cal.App.3d 1145 (1986), 1161-1162, 1167-1169).

1    The City thus had a rational basis for refusing to issue a building permit to Plaintiff in

2    December of 2005.  The requested permit, if issued, would have violated San Francisco's Planning

3    and Building Codes because the proposed project had not been reviewed for consistency with the

4    design guidelines applicable to the Dogpatch Historic District, and had not received the required

5    Certificate of Appropriateness mandated by the Planning Code.  Such a permit would therefore have

6    been unlawful as of the date of issuance, in violation of Building Code § 106.4.3.

7
8    **C.    PLAINTIFF'S §1983 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

9    Both the First and Second Counts of the Complaint rely on the City's alleged "unlawful

10   delegation" of authority to the Dogpatch Neighborhood Association as a basis for relief under §1983.

11   [Complaint at ¶17-19; 21-24.]  However, the only act of "delegation" alleged in the Complaint is the

12   Planning Department's alleged refusal to deem Plaintiff's application "complete" until the association

13   had "approved" the project.  [*Id.* at ¶6.]  The Complaint does not allege that the City directed Plaintiff

14   to seek approval from the association [*id.* at ¶5], but merely that "Planning refused to determine

15   whether the Application was complete unless DNA approved it." [*Id.* at ¶5.] The Complaint also

16   alleges that "[t]he Application was finally determined to be complete by Planning in June 2001." [*Id.*

17   at ¶7.] Thus, according to the Complaint, the final act reflecting the alleged delegation occurred in

18   June 2001.  The statute of limitations on these claims ran in June, 2002.

19   "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for

20   personal injury actions...." *Wilson v. Garcia*, 471 U.S. 261,271-72, 276, (1985); *Jones v. Blanas* 393

21   F.3d 918, 927 (9th Cir. 2004).  In June of 2002, the statute of limitations for personal injury actions

22   was 1 year. *See* former Code of Civil Proc. §340.  On January 1, 2003, Code of Civil Procedure

23   § 335.1 became law, extending the prior limitations period applicable to personal injury actions (and

24   correspondingly to federal civil rights claims) from one year to two years. *See* Cal. Code Civ.Proc.

25   § 335.1.  Plaintiff does not benefit from this new two-year statute of limitations.  Rather, since the

26   claims herein accrued before January 1, 2003, the one-year statute governs. *See Krusesky v. Baugh*,

27   138 Cal.App.3d 562 (1982) ("[S]tatute[s] [are] presumed to be prospective only and will not be

28   applied retroactively unless such intention clearly applies in the language of the statute itself."); *see*

MPA ISO MOTN TO DISMISS AMENDED COMPL.        16
CASE NO. C-07-2577 SBA

1  *also Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994) ("[T]he 'principle that the legal

2  effect of conduct should ordinarily be assessed under the law that existed when the conduct took

3  place has timeless and universal appeal.'").

4  Even if Plaintiff could establish prohibited delegation of authority under *Schulz*, by its own

5  admission, any delay caused by such delegation ended in 2001—nearly six years before Plaintiff filed

6  his Complaint.  Once again, Plaintiff has not (and cannot) alleged facts to circumvent this legal

7  barrier to his §1983 claims.

8

9  **II.  RES JUDICATA AND COLLATERAL ESTOPPEL BAR PLAINTIFF'S CLAIMS.**

10  In order to challenge the decision of an administrative agency, a plaintiff must demonstrate

11  that he has exhausted all available administrative procedures – including all available administrative

12  appeals.  *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment*

13  *Relations Bd.*, 35 Cal.4th 1072, 1080 (2005).  "In brief, the rule is that where an administrative

14  remedy is provided by statute, relief must be sought from the administrative body and this remedy

15  exhausted before the courts will act."  *Abelleira v. District Court of Appeal*, 17 Cal.2d 280, 292

16  (1941).  In addition to exhausting administrative remedies, a plaintiff must also exhaust judicial

17  remedies.  "[J]udicial review of any decision of a local agency . . . may be had pursuant to Code of

18  Civil Procedure section 1094.5, only if the petition for writ of mandate pursuant to such section is

19  filed . . . not later than the 90th day following the date on which the decision becomes final."  (Code

20  Civ. Proc. § 1094.6, subd. (b).)  The California Supreme Court has held that "unless a party to a

21  quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by

22  means of a mandate action in superior court, those findings are binding in later civil actions."

23  *Johnson v. City of Loma Linda*, 24 Cal.4th 61 , 69-70 (2000).  "Exhaustion of judicial remedies . . .is

24  necessary to avoid giving binding effect to the administrative agency's decision, because the decision

25  has achieved finality due to the aggrieved party's failure to pursue the exclusive remedy for reviewing

26  administrative action."  *Ibid.; see also City and County of San Francisco v. Ang*, 97 Cal.App.3d 673 ,

27  677 – 679 (1979).

28

In *Briggs v. City of Rolling Hills Estates, supra*, 40 Cal.App.4th 637 (1995), a homeowner sued after the issuance of a building permit was conditioned on the removal of an existing deck. *Id.* at 640. The trial court granted summary judgment in favor of the city finding the homeowner's §1983 cause of action was precluded by the failure to challenge the city's action directly by administrative mandamus." *Ibid.* After analyzing and discussing state and federal law, the Court of Appeals affirmed.  The court observed that the homeowner

> never sought to set aside the city's decision by petitioning for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. Plaintiffs could and should have sought judicial review of the city's decision by administrative mandamus; if the condition to which plaintiffs objected was improperly imposed, it could have been vacated pursuant to section 1094.5. Plaintiffs completely bypassed the proper procedure and instead sought damages and injunctive relief by this independent action.

*Id.* at p. 645.  The court went on to state that failure to pursue administrative and judicial relief estopped the homeowner from relitigating the issues, even in a §1983 cause of action.  *Id.* at pp. 645 - 648.  Citing *Knickerbocker v. City of Stockton*, 199 Cal.App.3d 235 (1988), it explained the rule:

> [T]his rule is not the doctrine of "failure to exhaust administrative remedies." Rather it is a form of res judicata, of giving collateral estoppel effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action.

*Id.* at pp. 645 - 646.  This rule is recognized by the federal courts as well.  In fact, "the highest court in the land has held the principles of res judicata and collateral estoppel apply to federal civil rights statutes." *Id.* at p. 646 [*quoting University of Tennessee v. Elliot*, 478 U.S. 788 (1986)].  The United States Supreme Court has held

> that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts in actions under the reconstruction civil rights statutes (42 U.S.C. §1983 *et seq.*) must give the agency's factfinding the same preclusive effect it would be entitled to in the state courts.

*Univ. of Tenn. v. Elliot*, 478 U.S. at  789.

### 1.    Plaintiff Failed to Exhaust State Judicial Remedies.

Here, Plaintiff challenged the very same actions of the City—refusal to issue a building permit—before two of the city's administrative agencies:  the BIC and the BOA.  [RJN at Exh. 4 (and

1    exhibits thereto).] In both instances, Plaintiff's claims were defeated. [*Id.*] Plaintiff challenged those

2    losses by writ petition to the Superior Court [*id.* at Exh. 4], but did not secure a judgment on the

3    merits from that court. Rather, after the City filed and fully briefed its demurrer to the petition, but

4    before the court could rule on the demurrer, Plaintiff filed a request for dismissal of that action. [*Id.*

5    at Exh. 10.] Plaintiff has thus failed to exhaust state court remedies for the conduct complained of in

6    this action. For the reasons set forth below, Plaintiff cannot cure this defect by filing a new action in

7    the Superior Court.

8             **2.      The Statute of Limitations Set Forth in Government Code § 65009 Bars**
                         **Plaintiff's Claims.**
9

10            Plaintiff seeks to challenge the City's refusal to issue a building permit that does not comply

11   with the Planning Code in effect at the time of issuance. That decision by the City is embodied in

12   two determinations by City administrative appeals bodies, the BOA and the BIC. [RJN at Exh. 4

13   (Exhs. B, D).] The statute of limitations applicable to claims challenging these administrative

14   determinations is set forth in Government Code §65009, which applies a 90-day limitations period to

15   all claims challenging local planning decisions, Zoning Administrator determinations, and all

16   decisions of the BIC. Thus, under Government Code §65009(c)(1), Plaintiff had 90 days following

17   each of the two challenged decisions to file and serve a petition attacking that decision. Plaintiff

18   failed to timely file a writ petition before the Superior Court, then dismissed the late-filed petition

19   after the City filed its demurrer, but before the Superior Court had ruled on the demurrer. [RJN at

20   Exhs. 4, 8-10.] Plaintiff has not obtained a final ruling on the merits from the Superior Court on its

21   challenge to the City's determinations, and thus has yet to exhaust state judicial remedies. It is now

22   too late for Plaintiff to do so.

23            Government Code §65009, subdivision (c)(1)(E), provides that the 90-day statute of

24   limitations applies to actions seeking "[t]o attack, review, set aside, void or annul any decision on the

25   matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of

26   any condition attached to a variance, conditional use permit, or any other permit." Subdivision

27   (c)(1)(F) similarly imposes a 90-day limitations period on "any of the proceedings, acts, or

28   determinations taken, done, or made prior to any of the decisions listed in [subparagraph (E).] "

MPA ISO MOTN TO DISMISS AMENDED COMPL.          19                    n:\land\li2007\080285\00450609.doc
CASE NO. C-07-2577 SBA

1   Section 65901, in turn, applies to determinations by the City's Zoning Administrator (Gov't Code

2   §65901), and §65903 applies to determinations by the City's Board of Appeals. Gov't Code §65903.

3   After the expiration of this time period, "all persons are barred from any further action or

4   proceeding." Gov't Code §65009(e); *Travis v. County of Santa Cruz*, 33 Cal.4th 757, 765 (2004).

5          This 90-day statue of limitations applies to both Plaintiff's damage claims and their claims for

6   declaratory or similar relief.  In a parallel context, the California Supreme Court has determined that

7   the 90-day period of limitation set forth in Government Code section 66499.37, which contains

8   language analogous to that contained in Government Code section 65009, barred all actions arising

9   out of the Subdivision Map Act filed after the 90-day statute of limitations. *Hensler v. City of*

10  *Glendale*, 8 Cal.4th 1 (1994).  In that case, the Supreme Court stated that:

11             As the Court of Appeal recognized here and in *Hunt*, section 66499.37 applies
               by its terms to any action involving a controversy over or arising out of the
12             Subdivision Map Act.  Therefore, if this is a claim arising out of application of
               a land-use regulation authorized by that act, section 66499.37 applies.  Plaintiff
13             seeks to avoid application of section 66499.37 by arguing he does not
               challenge the validity of the Glendale ordinance.  He seeks only compensation
14             for the taking he alleges was effected by the ordinance.  He contends on that
               basis that the statutes of limitation found in the Code of Civil Procedure govern
15             this action. We disagree.

16  *Id.* at p. 23 (*citing Hunt v. County of Shasta*, 225 Cal.App.3d 432 (1990))(emphasis in original).)  The

17  Supreme Court concluded that:

18             This section is not, as plaintiff argues, limited to actions for specific relief.  It
               includes actions for compensation for a regulatory taking because the validity
19             of the ordinance or its application to the plaintiff's property, if uncompensated,
               must be determined in the action—i.e., the court must determine if there has
20             been a taking.  Before he or she is entitled to any relief, either compensation or
               exemption of the property from development restriction, the plaintiff must
21             establish that the ordinance, regulation, or administrative action is not lawful or
               constitutionally valid if no compensation is paid.  The action therefore comes
22             within the broad language of section 66499.37.

23  *Id.* at 25.  The same reasoning applies to the instant case, and bars Plaintiff from challenging the

24  City's administrative determinations regarding his Application under any legal theory. As a

25  consequence, the determinations of the BIC and the BOA are res judicata, and preclude the Plaintiff

26  from challenging the City's refusal to issue a building permit in this action.

27

28

**III.    ANY CLAIMS BASED ON THE CITY'S REFUSAL TO ISSUE A PERMIT ARE UNRIPE FOR ADJUDICATION.**

Alternatively, to the extent that any of Plaintiff's claims are deemed to challenge the City's refusal to issue a building permit (rather than the alleged unlawful delegation to a neighborhood association), such claims are unripe for adjudication. Suits for equal protection are subject to the requirement that the decision be ripe for review. In the context of equal protection claims stemming from the regulation of land use, this requirement includes a final decision by the relevant government authority. *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989).

In suits for wrongful deprivation of property under 42 U.S.C. §1983, the same considerations that render a claim premature prevent accrual of a claim for limitations purposes, and the claim does not accrue until the relevant governmental authorities have made a final decision on the fate of the property. *Norco Constr. Co. v King County*, 801 F.2d 1143, 1145 (9th Cir. 1986); *McMillan v. Goleta Water District*, 792 F.2d 1453 (9th Cir. 1986). The "basic rationale" of the ripeness requirement "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967). The Ninth Circuit has emphasized the heavy burden placed on plaintiffs seeking to establish constitutional violations in the context of land use decisions.

> The Supreme Court has recognized that land-use planning is not an all-or-nothing proposition. A government entity is not required to permit a landowner to develop property to the full extent it may desire. Denial of the intensive development desired by a landowner does not preclude less intensive, but still valuable development. *MacDonald*, 477 U.S. at 353, 106 S.Ct. at 2569. "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." *Id*. at 350, 106 S.Ct. at 2567. The property owner, therefore, has a high burden of proving that a final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds.

*Hoehne, supra*, 870 F.2d at 532-33 (emphasis added).

In this case, the City has not issued a final decision denying Plaintiff a building permit. In fact, such a decision was continued—at Plaintiff's request—until August 2008. [RJN at Exh. 12.]

1    Since the City has not rendered a final decision as to the Application at issue in this case, any claims

2    based on the City's conduct with respect to such Application are not ripe for review under §1983.

### IV.   THE THIRD COUNT FAILS AS A MATTER OF LAW.

#### A.   PLAINTIFF FAILED TO OBTAIN LEAVE OF COURT TO SUPPLEMENT THE COMPLAINT.

The Third Count set forth in the Complaint does not amend the original complaint, but rather supplements it by alleging that the City has "retaliated" against Plaintiff *since the filing of the initial complaint.* [Complaint at ¶ 27.] Supplemental pleadings, however, may not be filed as a matter of right. Instead, Plaintiff must seek leave of court to assert conduct of the City since the initiation of this action. FRCP 15(d). "Upon motion of a party, the court may, upon reasonable notice and on such terms that are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Id*. Plaintiff failed to seek leave to supplement its complaint with this new Third Count.

The new allegations also run afoul of the Federal Rules governing supplemental and amended pleadings because they seek to add an entirely new theory of recovery. "While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action." *Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics*, Slip Copy, 2007 WL 127997 (N.D. Cal., 2007); *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). The first two counts of the Complaint allege that the City violated Plaintiff's rights under §1983 by refusing to issue a building permit for the proposed project. The new count, however, asserts that the City has taken actions to retaliate against Plaintiff for his lawful exercise of rights under the First Amendment to the United States Constitution. This new claim does not arise out of the conduct which forms the basis of the first two counts (refusal to issue an illegal building permit in 2005), but instead asserts that the City has taken intentional steps to harm Plaintiff following the filing of this action. A supplemental pleading—particularly one not vetted by a motion for leave to amend—is not the proper vehicle for asserting such a claim. The Third Count should be stricken.

### B.   THE ALLEGATIONS OF THE THIRD COUNT ARE INSUFFICIENT TO STATE A CLAIM.

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).   In this case, the Third Count sets forth only conclusory allegations, without citations to specific supporting facts.  This is because the facts, which are subject to judicial notice by the Court, directly contradict the legal conclusions set forth in the Complaint.

Plaintiff's Third Count asserts that, *after the initial complaint was filed*, the City "retaliated" against it by delaying the processing of its application and applications on its other property (1169 Tennessee Street).  [Complaint at ¶ 27.]  This allegation is demonstrably false.  Public records establish that the City denied the Application in December 2006, nine months before this case was filed.  [RJN at ¶¶ 13, 14, Exhs. 12, 13.]  Similarly, the City's action predates the filing of all but one of Plaintiff's four state court actions.  [*Id.*][3]  In fact, the *Plaintiff requested that the City deny the Application* in order that the Plaintiff could challenge that denial to the City's Board of Appeals.  [*Id.* at Exh. 14.]  The City has taken no further action on the Application, because there is no application pending.  [*Id.* at Exh. 13.]  As to Plaintiff's other property, public records demonstrate that all permit applications submitted for that property since Plaintiff began filing its multiple lawsuits against the City have been *issued*.  [*Id.*]  Public records show no applications currently pending as to that property.  [*Id.*]

A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Nor should the Court should permit Plaintiff

---

[3] The one case that predates the City's denial of the permit is the subject of a pending motion to dismiss filed by Plaintiff.  [*Id.* at ¶¶ 7-10, Exhs. 7-10.]

1   to supplement the Complaint with the Third Count, but rather should dismiss it in the event it declines

2   to grant the City's motion to strike.

3

4                                      **CONCLUSION**

5           For the foregoing reasons, the allegations of the Complaint and those facts of which this Court

6   may take judicial notice demonstrate that the claims for relief set forth in the Complaint fail to state

7   facts sufficient to constitute a cause of action, that the Court lacks jurisdiction over such claims and

8   that the claims are untimely as a matter of law.  On these bases, the City respectfully submits that its

9   motion to dismiss or, in the alternative, for summary judgment, should be granted without leave to

10  amend as to all claims for relief set forth in the Complaint.  In addition, the Court should grant the

11  City's motion to strike the Third Count of the Complaint pursuant to Fed. Rules Civ. Proc. 12(f) and

12  15(d).

13

14  Dated:  December 14, 2007

15                                      DENNIS J. HERRERA
                                        City Attorney
16                                      KRISTEN A. JENSEN
                                        THOMAS S. LAKRITZ
17                                      CHRISTINE VAN AKEN
                                        Deputy City Attorneys
18

19

20                                  By: _____
                                        KRISTEN A. JENSEN
21
                                        ATTORNEYS FOR DEFENDANT
22                                      CITY AND COUNTY OF SAN FRANCISCO

23

24

25

26

27

28