# Exhibit 1

proposed designation to the Advisory Board. Failure to act within said time shall constitute approval. The Board of Supervisors may, by resolution, extend the time within which the Planning Commission is to render its decision.

(c)  **Notice of Action Taken.** The Planning Commission shall promptly notify the applicant of action taken. If the Planning Commission approves or modifies the proposed designation in whole or in part, it shall transmit the proposal together with a copy of the resolution of approval, to the Clerk of the Board of Supervisors.

(d)  In the event that a proposed designation has been initiated prior to July 18, 2006, and the Planning Commission has failed to act upon such proposed designation as of the effective date of this ordinance, the Board of Supervisors may act on the proposed designation notwithstanding the Planning Commission's failure to act on the proposed designation. (Added by Ord. 27-67, App. 1/26/67; Ord. 26-07, File No. 061068, App. 2/9/2007)

## SEC. 1004.4.  DESIGNATION BY BOARD OF SUPERVISORS.

The Board of Supervisors shall hold a public hearing on any proposal so transmitted to it, after due notice to the owners of the property included in the proposal, and such other notice as the said Board may deem necessary. The Board of Supervisors may approve, or modify and approve, the designation by a majority vote of all its members. (Added by Ord. 27-67, App. 1/26/67)

## SEC. 1004.5.  APPEAL TO BOARD OF SUPERVISORS.

If the Planning Commission disapproves the proposed designation, such action shall be final, except upon the filing of a valid appeal to the Board of Supervisors within 30 days by a protest subscribed by the owners of at least 20 percent of the property proposed to be designated, or by any governmental body or agency, or by an organization with a recognized interest in historical preservation; provided, however, that if the proposal was initiated by the Board of Supervisors, the

Clerk of the said Board shall be notified immediately of the disapproval without the necessity for an appeal.

(a)  **Hearing.** The Board of Supervisors shall hold a public hearing on any such proposal appealed to it or initiated by it, after due notice to the owners of the property included in the proposal, and such other notice as the said Board may deem necessary.

(b)  **Decision.** The Board of Supervisors may overrule the Planning Commission and approve, or modify and approve, the designation by a majority vote of all its members.

(c)  **Resubmission, Reconsideration.** If a proposal initiated by application has been disapproved by the Planning Commission or by the Board of Supervisors on appeal, no subsequent application that is the same or substantially the same may be submitted or reconsidered for at least one year from the effective date of final action of the original proposal. (Added by Ord. 27-67, App. 1/26/67)

## SEC. 1004.6.  NOTICE OF DESIGNATION BY BOARD OF SUPERVISORS.

When a landmark or historic district has been designated by the Board of Supervisors as provided above, the Department shall promptly notify the owners of the property included therein. The Department shall cause a copy of the designating ordinance, or notice thereof, to be recorded in the office of the County Recorder. (Added by Ord. 27-67, App. 1/26/67)

## SEC. 1004.7.  NOTICE OF AMENDMENT OR RESCISSION OF DESIGNATION.

When a landmark or historic district designation has been amended or rescinded, the Department shall promptly notify the owners of the property included therein, and shall cause a copy of the appropriate ordinance, or notice thereof, to be recorded in the office of the County Recorder. (Added by Ord. 112-71, App. 5/7/71)

## SEC. 1005.  CONFORMITY AND PERMITS.

(a)  No person shall carry out or cause to be carried out on a designated landmark site or in a designated historic district any construction, al-

teration, removal or demolition of a structure or any work involving a sign, awning, marquee, canopy, mural or other appendage, for which a City permit is required, except in conformity with the provisions of this Article 10. In addition, no such work shall take place unless all other applicable laws and regulations have been complied with, and any required permit has been issued for said work.

(b) (1) Installation of a new general advertising sign is prohibited in any Historic District or on any historic property regulated by this Article 10.

(2) The Central Permit Bureau shall not issue, and no other City department or agency shall issue, any permit for construction, alteration, removal or demolition of a structure or any permit for work involving a sign, awning, marquee, canopy, mural or other appendage on a landmark site or in an Historic District, except in conformity with the provisions of this Article 10. In addition, no such permit shall be issued unless all other applicable laws and regulations have been complied with.

(c) (1) Where so provided in the designating ordinance for a historic district, any or all exterior changes visible from a public street or other public place shall require approval in accordance with the provisions of this Article 10, regardless of whether or not a City permit is required for such exterior changes. Such exterior changes may include, but shall not be limited to, painting and repainting; landscaping; fencing; and installation of lighting fixtures and other building appendages.

(2) The addition of a mural to any landmark or contributory structure in a historic district shall require compliance with the provisions of this Article 10, regardless of whether or not a City permit is required for the mural.

(3) Alterations to City-owned parks, squares, plazas or gardens on a landmark site, where the designating ordinance identifies such alterations, shall require approval in accordance with the provisions of this Article 10, regardless of whether or not a City permit is required.

(d) The Department shall maintain with the Central Permit Bureau a current record of designated landmarks and historic districts. Upon receipt of any application for a permit to carry out any construction, alteration, removal or demolition of a structure or any work involving a sign, awning, marquee, canopy, mural or other appendage, on a landmark site or in a historic district, the Central Permit Bureau shall, unless the structure or feature concerned has been declared unsafe or dangerous pursuant to Section 1007 of this Article 10, promptly forward such permit application to the Department.

(e) After receiving a permit application from the Central Permit Bureau in accordance with the preceding subsection, the Department shall ascertain whether Section 1006 requires a Certificate of Appropriateness for the work proposed in such permit application. If such Certificate is required and has been issued, and if the permit application conforms to such Certificate, the permit application shall be processed without further reference to this Article 10. If such Certificate is required and has not been issued, or if in the sole judgment of the Department the permit application does not so conform, the permit application shall be disapproved or held by the Department until such time as conformity does exist; the decision and action of the Department shall be final. Notwithstanding the foregoing, in the following cases the Department shall process the permit application without further reference to this Article 10:

(1) When the application is for a permit to construct on a landmark site where the landmark has been lawfully demolished and the site is not within a designated historic district;

(2) When the application is for a permit to make interior alterations only on a privately-owned structure or on a publicly-owned structure, unless the designating ordinance requires review of such alterations to the privately- or publicly-owned structure pursuant to Section 1004(c) hereof;

(3) When the application is for a permit to do ordinary maintenance and repairs only. For the purpose of this Article 10, "ordinary mainte-

nance and repairs" shall mean any work, the sole purpose and effect of which is to correct deterioration, decay or damage, including repair of damage caused by fire or other disaster;

(4)   When the application is for a permit to comply with the UMB Seismic Retrofit Ordinances and the Zoning Administrator determines that the proposed work complies with the UMB Retrofit Architectural Design Guidelines, which guidelines shall be adopted by the Planning Commission.

(f)   For purposes of this Article 10, demolition shall be defined as any one of the following:

(1)   Removal of more than 25 percent of the surface of all external walls facing a public street(s); or

(2)   Removal of more than 50 percent of all external walls from their function as all external walls; or

(3)   Removal of more than 25 percent of external walls from function as either external or internal walls; or

(4)   Removal of more than 75 percent of the building's existing internal structural framework or floor plates unless the City determines that such removal is the only feasible means to meet the standards for seismic load and forces of the latest adopted version of the San Francisco Building Code and the State Historical Building Code.

(g)   The following procedures shall govern review of the addition of murals to any landmark or contributory structure in a historic district:

(1)   Where the mural is proposed to be added to a landmark or contributory structure in a historic district, located on property owned by the City, no Certificate of Appropriateness shall be required. On such structures, the Art Commission shall not approve the mural until the Advisory Board has provided advice to the Art Commission on the impact of the mural on the historical structure. The Advisory Board shall provide advice to the Art Commission within 50 days of receipt of a written request for advice and information regarding the placement, size and location of the proposed mural;

(2)   Where the mural is proposed to be added to a landmark or contributory structure in a historic district, located on property that is not owned by the City, a Certificate of Appropriateness shall be required. The Advisory Board shall not act on the Certificate of Appropriateness until the Art Commission has provided advice to the Advisory Board on the mural. The Art Commission shall provide advice to the Advisory Board within 50 days of receipt of a' written request for advice and information regarding the proposed mural. (Amended by Ord. 222-72, App. 8/9/72; Ord. 227-92, App. 7/14/92; Ord. 97-96, App. 3/6/96; Ord. 249-96, App. 6/19/96; Ord. 327-99, File No. 991871, App. 12/23/99; Ord. 140-06, File 052921, App. 6/22/2006; Ord. 82-07, File No. 070021, App. 4/20/2007)

**SEC. 1006.   CERTIFICATE OF APPROPRIATENESS REQUIRED.**

In the case of:

(1)   Any construction, alteration, removal or demolition of a structure or any work involving a sign, awning, marquee, canopy, mural' (as set forth in Planning Code Section 1005(g), or other appendage, for which a City permit is required, on a landmark site or in a historic district;

(2)   Exterior changes in a historic district visible from a public street or other public place, where the designating ordinance requires approval of such changes pursuant to the provisions of this Article 10; and

(3)   The addition of a mural to any landmark or contributory structure in a historic district, which is not owned by the City or located on property owned by the City, as set forth in Planning Code Section 1005(g), regardless of whether or not a City permit is required for the mural; and

(4)   Alterations to City-owned parks, squares, plazas or gardens on a landmark site, where the designating ordinance identifies the alterations that require approval under this Article 10.

A Certificate of Appropriateness shall be required and shall govern review of permit applications as provided in Sections 1005(e) and 1005(g), except in the specific cases set forth in

**Exhibit 2**

nance and repairs" shall mean any work, the sole purpose and effect of which is to correct deterioration, decay or damage, including repair of damage caused by fire or other disaster;

(4)   When the application is for a permit to comply with the UMB Seismic Retrofit Ordinances and the Zoning Administrator determines that the proposed work complies with the UMB Retrofit Architectural Design Guidelines, which guidelines shall be adopted by the Planning Commission.

(f)   For purposes of this Article 10, demolition shall be defined as any one of the following:

(1)   Removal of more than 25 percent of the surface of all external walls facing a public street(s); or

(2)   Removal of more than 50 percent of all external walls from their function as all external walls; or

(3)   Removal of more than 25 percent of external walls from function as either external or internal walls; or

(4)   Removal of more than 75 percent of the building's existing internal structural framework or floor plates unless the City determines that such removal is the only feasible means to meet the standards for seismic load and forces of the latest adopted version of the San Francisco Building Code and the State Historical Building Code.

(g)   The following procedures shall govern review of the addition of murals to any landmark or contributory structure in a historic district:

(1)   Where the mural is proposed to be added to a landmark or contributory structure in a historic district, located on property owned by the City, no Certificate of Appropriateness shall be required. On such structures, the Art Commission shall not approve the mural until the Advisory Board has provided advice to the Art Commission on the impact of the mural on the historical structure. The Advisory Board shall provide advice to the Art Commission within 50 days of receipt of a written request for advice and information regarding the placement, size and location of the proposed mural;

(2)   Where the mural is proposed to be added to a landmark or contributory structure in a historic district, located on property that is not owned by the City, a Certificate of Appropriateness shall be required. The Advisory Board shall not act on the Certificate of Appropriateness until the Art Commission has provided advice to the Advisory Board on the mural. The Art Commission shall provide advice to the Advisory Board within 50 days of receipt of a written request for advice and information regarding the proposed mural. (Amended by Ord. 222-72, App. 8/9/72; Ord. 227-92, App. 7/14/92; Ord. 97-96, App. 3/6/96; Ord. 249-96, App. 6/19/96; Ord. 327-99, File No. 991871, App. 12/23/99; Ord. 140-06, File 052921, App. 6/22/2006; Ord. 82-07, File No. 070021, App. 4/20/2007)

## SEC. 1006.   CERTIFICATE OF APPROPRIATENESS REQUIRED.

In the case of:

(1)   Any construction, alteration, removal or demolition of a structure or any work involving a sign, awning, marquee, canopy, mural (as set forth in Planning Code Section 1005(g), or other appendage, for which a City permit is required, on a landmark site or in a historic district;

(2)   Exterior changes in a historic district visible from a public street or other public place, where the designating ordinance requires approval of such changes pursuant to the provisions of this Article 10; and

(3)   The addition of a mural to any landmark or contributory structure in a historic district, which is not owned by the City or located on property owned by the City, as set forth in Planning Code Section 1005(g), regardless of whether or not a City permit is required for the mural; and

(4)   Alterations to City-owned parks, squares, plazas or gardens on a landmark site, where the designating ordinance identifies the alterations that require approval under this Article 10.

A Certificate of Appropriateness shall be required and shall govern review of permit applications as provided in Sections 1005(e) and 1005(g), except in the specific cases set forth in

Sec. 1006.

**San Francisco - Planning Code**

Section 1005(e). The procedures, requirements, controls and standards in Sections 1006 through 1006.8 shall apply to all applications for Certificates of Appropriateness; provided, however, that the designating ordinance for a historic district, or for a City-owned park, square, plaza or garden on a landmark site, may modify or add to these procedures, requirements, controls and standards. (Amended by Ord. 222-72, App. 8/9/72; Ord. 249-96, App. 6/19/96; Ord. 327-99, File No. 991871, App. 12/23/99)

### SEC. 1006.1. APPLICATIONS FOR CERTIFICATE OF APPROPRIATENESS.

(a) **Who May Apply.** An application for a Certificate of Appropriateness may be filed by the owner, or authorized agent for the owner, of the property for which the Certificate is sought.

(b) **Where to File.** Applications shall be filed in the office of the Department of City Planning.

(c) **Content of Applications.** The content of applications shall be in accordance with the policies, rules and regulations of the Department and the City Planning Commission. All applications shall be upon forms prescribed therefor, and shall contain or be accompanied by all information required to assure the presentation of pertinent facts for proper consideration of the case and for the permanent record. In general, the application shall be accompanied by plans and specifications showing the proposed exterior appearance, including but not limited to color, texture of materials, and architectural design and detail; drawings or photographs showing the property in the context of its surroundings may also be required. The applicant may be required to file with his application the information needed for the preparation and mailing of notices as specified in Section 1006.3.

(d) **Verification.** Each application filed by or on behalf of one or more property owners shall be verified by at least one such owner or his authorized agent attesting to the truth and correctness of all facts, statements and information presented.

(e) **Conditional Uses.** In the case of any proposal for which the City Planning Code requires a conditional use authorization in addition to a Certificate of Appropriateness, the Department may combine the required applications, notices and hearings for administrative convenience and in the interests of the applicant and the public, to the extent deemed feasible and desirable by the Department. (Amended by Ord. 223-72, App. 8/9/72)

### SEC. 1006.2. REVIEW BY DEPARTMENT OF CITY PLANNING AND CITY PLANNING COMMISSION.

(a) **Cases Other Than Construction, Removal or Demolition.**

(1) In the case of any alteration of a structure or any work involving a sign, awning, marquee, canopy or other appendage, or exterior changes in a historic district visible from a public street or other public place, or alterations to a City-owned park, square, plaza or garden on a landmark site, where a Certificate of Appropriateness is required, the application for said Certificate shall be reviewed by the Department with the advice of the Advisory Board. The Department, with the advice of the Advisory Board, shall determine within 20 days after the application is accepted for filing, whether or not the proposal would have a significant impact upon, or is potentially detrimental to, the landmark site or historic district; and the Department shall notify the applicant of the determination made. If it is determined that there would be no such significant impact or potential detriment, the Department shall issue a Certificate of Appropriateness to the applicant.

(2) If it is determined that the proposal would have a significant impact upon, or is potentially detrimental to, the landmark site or historic district, or upon request of the Planning Commission, the Planning Commission shall hold a public hearing on the application.

(b) **Construction, Removal or Demolition.** The Planning Commission shall hold a public hearing on the application for a Certificate of Appropriateness for any construction,

**Exhibit 3**

**San Francisco - Planning Code**

Section 1005(e). The procedures, requirements, controls and standards in Sections 1006 through 1006.8 shall apply to all applications for Certificates of Appropriateness; provided, however, that the designating ordinance for a historic district, or for a City-owned park, square, plaza or garden on a landmark site, may modify or add to these procedures, requirements, controls and standards. (Amended by Ord. 222-72, App. 8/9/72; Ord. 249-96, App. 6/19/96; Ord. 327-99, File No. 991871, App. 12/23/99)

## SEC. 1006.1.  APPLICATIONS FOR CERTIFICATE OF APPROPRIATENESS.

(a) **Who May Apply.** An application for a Certificate of Appropriateness may be filed by the owner, or authorized agent for the owner, of the property for which the Certificate is sought.

(b) **Where to File.** Applications shall be filed in the office of the Department of City Planning.

(c) **Content of Applications.** The content of applications shall be in accordance with the policies, rules and regulations of the Department and the City Planning Commission. All applications shall be upon forms prescribed therefor, and shall contain or be accompanied by all information required to assure the presentation of pertinent facts for proper consideration of the case and for the permanent record. In general, the application shall be accompanied by plans and specifications showing the proposed exterior appearance, including but not limited to color, texture of materials, and architectural design and detail; drawings or photographs showing the property in the context of its surroundings may also be required. The applicant may be required to file with his application the information needed for the preparation and mailing of notices as specified in Section 1006.3.

(d) **Verification.** Each application filed by or on behalf of one or more property owners shall be verified by at least one such owner or his authorized agent attesting to the truth and correctness of all facts, statements and information presented.

(e) **Conditional Uses.** In the case of any proposal for which the City Planning Code requires a conditional use authorization in addition to a Certificate of Appropriateness, the Department may combine the required applications, notices and hearings for administrative convenience and in the interests of the applicant and the public, to the extent deemed feasible and desirable by the Department. (Amended by Ord. 223-72, App. 8/9/72)

## SEC. 1006.2.  REVIEW BY DEPARTMENT OF CITY PLANNING AND CITY PLANNING COMMISSION.

(a) **Cases Other Than Construction, Removal or Demolition.**

(1) In the case of any alteration of a structure or any work involving a sign, awning, marquee, canopy or other appendage, or exterior changes in a historic district visible from a public street or other public place, or alterations to a City-owned park, square, plaza or garden on a landmark site, where a Certificate of Appropriateness is required, the application for said Certificate shall be reviewed by the Department with the advice of the Advisory Board. The Department, with the advice of the Advisory Board, shall determine within 20 days after the application is accepted for filing, whether or not the proposal would have a significant impact upon, or is potentially detrimental to, the landmark site or historic district; and the Department shall notify the applicant of the determination made. If it is determined that there would be no such significant impact or potential detriment, the Department shall issue a Certificate of Appropriateness to the applicant.

(2) If it is determined that the proposal would have a significant impact upon, or is potentially detrimental to, the landmark site or historic district, or upon request of the Planning Commission, the Planning Commission shall hold a public hearing on the application.

(b) **Construction, Removal or Demolition.** The Planning Commission shall hold a public hearing on the application for a Certificate of Appropriateness for any construction,

**Preservation of Historical
Architectural and Aesthetic Landmarks**

removal or demolition of a structure, except as may be otherwise provided in the designating ordinance for a historic district or for City-owned park, square, plaza or garden on a landmark site. (Amended by Ord. 222-72, App. 8/9/72; Ord. 327-99, File No. 991871, App. 12/23/99)

### SEC. 1006.3.   SCHEDULING AND NOTICE OF HEARING.

When an application for a Certificate of Appropriateness has been filed and Section 1006.2 provides that the Planning Commission shall hold a public hearing thereon, the Department shall set a time and place for said hearing within a reasonable period. Notice of the time, place and purpose of the hearing shall be given by the Department as follows:

(a)  By mail to the applicant;

(b)  By mail not less than 10 days prior to the date of the hearing to the owners of all real property that is the subject of the application and, if said property is in a historic district, to the owners of all real property within the historic district, using for this purpose the names and addresses of the owners as shown on the latest citywide assessment roll in the office of the Tax Collector. Failure to send notice by mail to any such property owner where the address of such owner is not shown on such assessment roll shall not invalidate any proceedings in connection with such action;

(c)  By publication at least once in a newspaper of general circulation in the City not less than 20 days prior to the date of the hearing;

(d)  Such other notice as the Department shall deem appropriate. (Amended by Ord. 222-72, App. 8/9/72)

### SEC. 1006.4.   REFERRAL TO ADVISORY BOARD PRIOR TO HEARING.

Where a public hearing before the Planning Commission has been scheduled thereon, the application for a Certificate of Appropriateness shall be promptly referred to the Advisory Board and shall be considered by the Advisory Board at its next regular meeting, or at a special meeting called for that specific purpose. The Advisory

Board shall render a report to the Planning Commission at or prior to the scheduled public hearing; failure of the Advisory Board to consider the application or to render a report shall not constitute grounds for continuation of the public hearing. (Amended by Ord. 222-72, App. 8/9/72)

### SEC. 1006.5.   CONDUCT OF HEARING; DECISION.

Where a public hearing before the Planning Commission has been scheduled:

(a)  **Report and Recommendation.** The Department shall make necessary investigations and studies prior to the hearing of the Planning Commission. The report and recommendation of the Director of Planning shall be submitted at the hearing.

(b)  **Record.** A record shall be kept of the pertinent information presented at the hearing, and such record shall be maintained as a part of the permanent public records of the Department. A verbatim record may be made if permitted or ordered by the Planning Commission.

(c)  **Continuations.** The Planning Commission shall determine the instances in which cases scheduled for hearing may be continued or taken under advisement. In such cases, new notice need not be given of the further hearing date, provided such date is announced at the scheduled hearing.

(d)  **Decision.** The decision of the Planning Commission shall be rendered within 30 days from the date of conclusion of the hearing; failure of the Commission to act within the prescribed time shall be deemed to constitute disapproval of the application. The decision of the Planning Commission in either approving or disapproving the application pursuant to Section 1006.6, shall be final except upon the filing of a valid appeal to the Board of Supervisors as provided in Section 1006.8. The decision of the Planning Commission, in suspending action on an application pursuant to Section 1006.6, shall be final. If the Planning Commission, or the Board of Supervisors on appeal, approves the application, or after the expiration of any suspension period imposed

# Exhibit 4

**SUMMONS** *ON AMENDED*
*RESPONDENT* **(CITACION JUDICIAL)** *PETITION*

SUM-100

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
City & County of San Francisco, Dept of Building Inspection; City and
County of SF Building Inspection Commission; City and County of SF
Planning Dept., City and County of SF Board of Appeals
*PETITIONER*
**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
Trust of Regan Carroll, Regan Carroll, Trustee

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

RECEIVED
MAYOR'S OFFICE
06 SEP 27 AM 10: 50

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS de CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court Unlimited Jurisdiction
400 McAllister Street
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):* CPF-06-506542

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

DATE:
*(Fecha)* **SEP 2 7 2006**    **GORDON PARK-LI**    Clerk, by    **M. SANCHEZ**    , Deputy
*(Secretario)*                                                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): City and County of San Francisco Department of Building Inspection

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☑ other (specify): 416.50 (public entity)

4. ☐ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

1   MARGARET A. SELTZER, ESQ. (SBN #87707)
    SELTZER LAW GROUP
2   425 California Street, Nineteenth Floor
    San Francisco, California 94104-2296
3   Telephone:  (415) 362-5495
    Facsimile:  (415) 362-5603
4
    Attorneys for Petitioner TRUST OF REGAN CARROLL,
5   REGAN CARROLL, TRUSTEE

ENDORSED
F I L E D
San Francisco County Superior Court

SEP 1 2 2006

GORDON PARK-LI, Clerk
BY_____ WESLEY RAMIREZ
                    Deputy Clerk

BOARD OF APPEALS

SEP 1 2 2006

6

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA   APPEAL # 06-041

8                    IN AND FOR THE COUNTY OF SAN FRANCISCO

9                            UNLIMITED JURISDICTION

10

11

12                                              )   Case No.  CPF-06-506542
    TRUST OF REGAN CARROLL, REGAN               )
13  CARROLL, TRUSTEE,                           )   Action's Filing Date: August 4, 2006
                                                )
14              Petitioner,                     )   AMENDED PETITION FOR WRIT OF
                                                )   MANDATE (C.C.P. § 1085) AND WRIT OF
15       v.                                     )   ADMINISTRATIVE MANDAMUS (C.C.P.
                                                )   § 1094.5)
16  CITY AND COUNTY OF SAN FRANCISCO )
    DEPARTMENT OF BUILDING                      )
17  INSPECTION, CITY AND COUNTY OF              )
    SAN FRANCISCO BUILDING INSPECTION )
18  COMMISSION, CITY AND COUNTY OF              )
    SAN FRANCISCO PLANNING                      )
19  DEPARTMENT, AND CITY AND COUNTY )
    OF SAN FRANCISCO BOARD OF                   )
20  APPEALS,                                    )
                                                )
21              Respondents.                    )
                                                )
22  _____ )

23          Petitioner Trust of Regan Carroll, Regan Carroll, Trustee ("Petitioner"), petitions this

24  court for a writ of mandate under Code of Civil Procedure ("C.C.P.") § 1085 directed to

25  respondents City and County of San Francisco Department of Building Inspection ("DBI") and

26  Planning Department ("Planning Department") and petitions this court for a writ of administrative

27  mandamus under C.C.P. § 1094.5 directed to respondents DBI, Planning Department, City and

28  County of San Francisco Building Inspection Commission ("BIC"), and City and County of San

                                         1

1  Francisco Board of Appeals ("BOA") and by this verified amended petition alleges as follows:

2  **FIRST CAUSE OF ACTION**

3  (For Writ or Mandate or Administrative

4  Mandamus against DBI and BIC)

5  1.    Petitioner is the owner of real property in the City and County of San Francisco

6  commonly known as 1179-1189 Tennessee Street ("Property").

7  2.    In or around 1999, Petitioner contracted to sell the Property to John Stricklin

8  ("Stricklin"). Stricklin applied for a building permit to the City of San Francisco ("City") for a

9  four story mixed use commercial/residential building ("Project") on the Property, BPA No.

10  9902819 ("Application"). Stricklin had been directed by the Planning Department to review the

11  project with the Dogpatch Neighborhood Association ("DNA") and he had obtained the review

12  and approval of DNA for the Project. Petitioner subsequently rescinded the contract, took title to

13  the Property on March 31, 2000 and was assigned the rights in the Application, permits and

14  approvals. Petitioner was also directed to DNA and met with DNA for the purpose of obtaining

15  their approval as directed by the Planning Department. The Application was determined to be

16  complete by the Planning Department in June 2001. After the Application was deemed complete,

17  the Planning Department caused a notice to be posted and mailed in accordance with Section 312

18  of the Planning Code commencing the 30 day appeal period. DNA made no objections during the

19  Planning Commission comment period that expired on July 26, 2001. The Planning Department

20  approved the Application on August 7, 2001. The Planning Department approved the site permit

21  on September 10, 2002.

22  3.    During the next three years the addenda drawings were routed to various

23  departments of the City for review and approval, revisions were made, and all necessary approvals

24  were given. Until as late as June 2003, DBI had a clerical error regarding the owner of the

25  Property with its records listing the former owner and causing confusion and delay. The final

26  plans addendum was approved by the Planning Department on June 30, 2005. The addenda

27  arrived at the One-Stop Section of DBI with all necessary approvals on July 1, 2005. The

28  approved site permit was routed to the Central Permit Bureau ("CPB") on July 5, 2005. The

2

1   permit was ready for issuance because it had received all necessary approvals from all City

2   departments.  The final plans addenda arrived at CPB on November 14, 2005 having received all

3   approvals, and CPB sent Petitioner a notice that the permit was ready to be picked up subject only

4   to the condition of payment of school facilities fees.

5       4.    On December 2, 2005, Petitioner presented the Certificate of Payment of School

6   Facility Fees ("Certificate") issued by the San Francisco Unified School District evidencing his

7   payment of school fees of $20,282.36 to the CPB, but was advised by the staff that the permit and

8   and addenda drawings had been removed from the CPB by Moses Corrette of the Planning

9   Department and he would have to speak with Corrette.  Petitioner was not told the circumstances

10  of or the authority under which Corrette allegedly removed the drawings, but believed it to be

11  under mysterious and aberrant circumstances.  Corrette was not the planner assigned to the

12  Project, had not been involved in the approval process, and removed the drawings from CPB after

13  being contacted by a member of DNA.  The Certificate was not accepted and the permit was not

14  delivered to Petitioner as promised and as required upon receipt of proof of payment of the school

15  facilities fees.  The action by Corrette was in excess of his own authority as a planner not involved

16  in the Project approval process and an abuse of the authority of the Planning Department.

17      5.    Petitioner discovered that the mysterious and aberrant circumstances consisted of ex

18  parte contacts and undue influence by certain members of the DNA and/or another neighborhood

19  group on public officials, and more particularly on Corrette.  Unbeknownst to Petitioner, the

20  permit and addenda drawings were removed from CPB after hours and taken back to the Planning

21  Department.  CPB's refusal to deliver the permit to Petitioner upon proof of payment of the school

22  facilities fees was in excess of its jurisdiction as DBI had no discretion regarding the delivery of

23  the permit.

24      6.    On December 7, 2005 Petitioner requested that DBI deliver the permit as promised

25  and was his right.  On January 5, 2006, DBI informed Petitioner of its determination that the

26  Planning Department had not completed its review, contrary to the Planning Department's own

27  representations to Petitioner.  She stated that the Planning Department needed to review the permit

28  and addenda drawings for compliance with Appendix L to Article 10 of the Planning Code

1  pertaining to the Dogpatch Historic District, which Appendix L had been added to the Planning

2  Code effective April 18. 2003 ("Appendix L"). She further stated that the Planning Department's

3  reversal of position was caused by a "public complaint" ("Determination"). A true and correct

4  copy of the letter constituting the Determination is attached hereto as Exhibit A and is incorporated

5  herein by this reference.

6          7.      The Determination did not identify any substantive requirement of the applicable

7  Building and Planning Codes or of Appendix L with which the permit and addenda drawings did

8  not comply. Petitioner had a vested right to delivery of the permit upon compliance with the

9  applicable codes and substantive requirements thereof as determined by the approvals of all

10 necessary departments. DBI and the Planning Department had confirmed that Petitioner's permit

11 and addenda drawings complied with the substantive requirements of the applicable Planning and

12 Building Codes. Further, they did not identify any specific land use, nonconforming construction,

13 improper use, or change in lot size in the permit and addenda drawings that violated the Planning

14 Code including Appendix L. The Application was deemed complete and approved prior to the

15 enactment of Appendix L and not subject to any procedural requirements of Article 10.

16         8.      On January 19, 2006, Petitioner advised the Board of Appeals ("BOA") that

17 Petitioner desired to file an appeal from the Determination to BOA and attempted to file an appeal.

18 BOA refused to accept the appeal.

19         9.      Having no other alternative, on January 20, 2006, Petitioner submitted an

20 application for appeal to BIC. BIC conducted a hearing and denied the appeal. Petitioner made a

21 request for rehearing which was denied. On May 1, 2006 BIC adopted findings. On May 8,

22 2006, BIC served its written findings and decision on Petitioner by mail ("Decision"). A true and

23 correct copy of the letter serving the written decision and findings on petitioner by and through

24 service on his attorney is attached hereto as Exhibit B and is incorporated herein by this reference.

25         10.     A central finding on which BIC upheld denial of issuance of the permit was the

26 finding DBI had not issued the permit prior to the addition of Appendix L to Title 10 of the

27 Planning Code and as a result that the permit and addenda drawings were subject to the procedural

28 requirements of Article 10. The effect of this finding was to hold that DBI and the Planning

4

1    Department could issue instructions, requests, approvals and other decisions on the substantive

2    requirements of Building and Planning Codes during the six year processing of the Application

3    from 1999 through 2005, including review and approval of the requirements of the Dogpatch

4    Historic District informally by the DNA and formally by the Planning Department after Appendix

5    L was enacted in 2003, and then arbitrarily renege on its promise to deliver the permit upon

6    receipt of proof of payment of the school facilities fees.  Further, that DBI could do so based on

7    back door political pressure to stop the Project and undue influence on the Planning Department,

8    without identifying any substantive provision of the Planning Code with which the permit and

9    addenda drawings did not comply.  The result would be to require Petitioner to go through further

10   procedural hoops such as submitting a further application for substantive reviews that had already

11   been performed or were unnecessary, exalting form over substance.  Such an interpretation of the

12   Planning Code is contrary to its own terms as provided in section 175 and would require Petitioner

13   to start from the beginning to obtain review and approvals for the Project based on all newly

14   enacted ordinances and requirements in the interim and in the future until the permit is issued.

15   Such a policy would permit third party political organizations to keep permit applications in limbo

16   in perpetuity and allow them to exercise decisional control over the permit process resulting in the

17   loss of needed improvements such as the Project and the resulting loss of new facilities for the

18   City.  BIC found thorough circular reasoning that the permit should not be issued because the

19   permit was not issued when promised which is a meaningless play on words.  After all approvals

20   had been obtained, the act of "issuance" was the mere act of delivering the permit to Petitioner.

21   BIC impliedly found that all of the applications, revisions, compliance efforts, reviews, approvals

22   and promises between Petitioner, DNA, and the Planning Department meant nothing, and that DBI

23   could unreasonably, arbitrarily and capriciously renege on that promise because of back door

24   contacts of DNA after promising to deliver the permit to Petitioner upon proof of payment of the

25   school facilities fees.

26        11.    The process of reaching the Determination and the Decision was fundamentally

27   unfair because of the political pressure and undue influence imposed by DNA on Corrette and the

28   Planning Department.  Petitioner alleges on information and belief that Dennis Herrerra, the City

1   Attorney, resides in the Dogpatch Historic District at 1116 Tennessee across the street from the
2   Property, is either a member or supporter of DNA which seeks to delay and obstruct the progress
3   of needed projects such as the Project that would add residential and commercial facilities to the
4   City, and that the City Attorney's office had a conflict of interest in this matter because it also
5   counseled and advised the City, DBI, Planning Department, BIC and BOA.  The City Attorney's
6   office advised DBI in connection with the Determination, advised BIC in connection with the
7   appeal, and drafted the findings.  The City Attorney's office drafted the findings stating that
8   Petitioner "has no vested right to undertake the Project" and "DBI has no further jurisdiction
9   pending Planning Department action on the matter" all contrary to the representations, statements
10  and promises made by the Planning Department and DBI during the foregoing activities and
11  contrary to the evidence and the law.

12          12.     The result of the conduct of DBI, DNA, Corrette, the Planning Department, the
13  Determination by DBI, and the Decision by BIC is to nullify all of the actions of Petitioner, DBI
14  and the Planning Department that assured compliance with all applicable substantive requirements
15  of the Building and Planning Codes for the Project.  It serves to hijack the permit process, to force
16  Petitioner to start the application process begun in 1999 anew, and to require compliance with later
17  enacted procedural requirements, with the result that Petitioner will loose his investment of time
18  and money in the Project, and that CCSF will lose the residential units and commercial spaces that
19  are needed and have been approved for the Project.

20          13.     The issue of BIC's jurisdiction was raised at the main hearing and the rehearing.
21  Petitioner asserted that BIC should determine whether the permit should have been delivered by
22  DBI on grounds of estoppel, vested rights, or estoppel by discrimination.  The Deputy City
23  Attorney represented that BIC needed a theory that made the permit "issued de facto" before the
24  enactment of the Dogpatch Historic District, Appendix L to Article 10 of the Planning Code on
25  April 18, 2003.  The implication of this position is that if such a theory could not be accepted and
26  applied by BIC, all of petitioner's, DNA's, DBI's, and the Planning Department's agreements,
27  efforts, approvals, reviews, revisions, and compliance activities, and Petitioner's expenditures in
28  reliance thereon, were of no force and effect and were nullified.  The Deputy City Attorney

6

1  implied that BIC had jurisdiction over the appeal from the Determination when she stated "the

2  Commission [BIC] would have to determine that it has been issued or that there is something so

3  fundamentally flawed that it should have been issued." If BIC lacked jurisdiction over the appeal

4  and BOA wrongfully refused to take the appeal in January 2006, the Decision should be vacated

5  for lack of jurisdiction, and a writ of mandate should issue directing DBI to issue the permit

6  forthwith without conditions retroactively to the date the permit and addenda drawings were

7  approved.

8    14.    If BIC did have jurisdiction to determine the appeal, BIC abused its discretion to the

9  material prejudice of Petitioner because its Decision is not supported by the findings and/or the

10  findings are not supported by the evidence.

11    15.    The permit and addenda drawings for the Project met all of the applicable codes and

12  substantive criteria in effect as of the date issuance was promised and delivery should have

13  occurred, and such delivery was therefore a ministerial act of DBI. Respondent DBI has not

14  identified any substantive requirement of the Planning Code with which Petitioner's application

15  has not complied. Specifically, Respondents have not identified one land use within the meaning

16  of subsection (a) of section 175 with which the site and addenda drawings do not comply, or any

17  nonconforming construction etc. within the meaning of subsection (b) with which the site and

18  addenda drawings do not comply, or any lot changes within the meaning of subsection (c) of

19  section 175 with which the site and addenda drawings do not comply. Rather, Respondent DBI

20  has engaged in a procedural shell game with Petitioner to delay and deny its duty to either identify

21  a substantive requirement that has not been met but is required to be met, or to deliver the permit

22  to Petitioner forthwith.

23    16.    The delivery of the permit after it was approved as complying with the substantive

24  requirements of the Building and Planning Codes is a ministerial act. Petitioner has no plain,

25  speedy and adequate remedy at law. Respondent DBI has a clear, present and ministerial duty to

26  deliver the permit to Petitioner forthwith. Petitioner has a clear, present and beneficial right to

27  DBI's performance.

28    17.    By the foregoing, DBI is equitably estopped from refusing to deliver to Petitioner

7

1 the site permit with addenda.

2   18. Petitioner has exhausted the available administrative remedies required by law.

3   19. If the Determination and Decision are permitted to be executed, Petitioner will be

4 irreparably injured in that the Project may remain in procedural limbo perpetually with additional

5 laws and ordinances being enacted triggering additional requirements for the Project that may

6 mean the demise of the Project and the Project and its benefits will be lost to Petitioner and the

7 City.

8   WHEREFORE, Petitioner prays for judgment as set forth below.

9         SECOND CAUSE OF ACTION

10        (For Writ or Mandate or Administrative

11      Mandamus against Planning Department and BOA)

12   20. Petitioner incorporates the allegations in paragraphs 1 through 19 as though they

13 were fully set forth herein.

14   21. On March 6, 2006, Lawrence Badiner ("Badiner"), the Zoning Administrator,

15 ordered that DBI route any and all building permit applications, renewals, extensions, addenda or

16 revisions pertaining to the Project to the Planning Department for review on the ground that they

17 are subject to review for consistency with Article 10, Appendix L and Section 312 of the Planning

18 Code ("Badiner Decision"). A true and correct copy of the Badiner Decision is attached hereto as

19 Exhibit C and is incorporated herein by this reference.

20   22. On March 21, 2006, Petitioner filed Preliminary Statement of Appeal, Appeal No.

21 06-041, to respondent BOA ("BOA Appeal"). The BOA Appeal sought review of the Badiner

22 Decision pursuant to Planning Code sections 101.1 and 301.

23   23. On March 20, 2006, Badiner demonstrated bias against Petitioner and the Project

24 during the proceedings before BIC on an appeal related to an adjacent property, 1169-79

25 Tennessee Street ("1169-77 Tennessee"). Badiner stated that Petitioner's project at 1169-79

26 Tennessee "is not consistent" with the historic preservation standards of Appendix 1 to Article 10

27 of the Planning Code before the project had been reviewed for such consistency. By letter of

28 March 23, 2006, Petitioner raised the issue of bias of Badiner with respect to the Badiner Decision

8

1  and requested that Badiner withdraw the Badiner Decision and recuse himself from making further

2  decisions on the Project based on a violation of San Francisco Planning Code section 307(e).

3  Petitioner raised the issue of bias in the BOA Appeal by incorporation of the letter of March 23,

4  2006.

5         24.    Petitioner submitted Brief in Support of Appeal on April 19, 2006, and Reply Brief

6  in Support of Appeal on May 5, 2006.  Respondent failed to file a brief.  The hearing on the BOA

7  Appeal occurred on May 17, 2006.  BOA denied the appeal and upheld the Badiner Decision.  On

8  May 30, 2006 Carroll filed Request for Rehearing of the May 17, 2006 decision.  The request for

9  hearing was heard and denied by BOA on June 14, 2006.  On June 16, 2006, BOA sent Notice of

10  Decision and Order and an affidavit of service ("BOA Decision").  A true and correct copy of the

11  BOA Decision is attached hereto as Exhibit D and is incorporated herein by this reference.

12         WHEREFORE, Petitioner prays for judgment as follows:

13         (1)    That the court issue a peremptory writ of mandate in the first instance commanding

14  Respondent DBI to set aside the Determination and to issue the site permit and addenda for the

15  Project;

16         (2)    That the court, alternatively, first issue an alternative writ commanding Respondent

17  DBI to set aside the Determination and to issue the site permit and addenda for the Project or, in

18  the alternative, show cause why it should not do so, and thereafter issue a peremptory writ

19  commanding Respondent to set aside the Determination and to issue the site permit and addenda

20  for the Project;

21         (3)    That the court issue a peremptory writ of administrative mandamus in the first

22  instance commanding Respondents DBI and BIC to set aside the Determination and Decision and

23  to issue the site permit and addenda for the Project;

24         (4)    That the court, alternatively, first issue an alternative writ commanding

25  Respondents DBI and BIC to set aside the Determination and Decision and to issue the site permit

26  and addenda for the Project or, in the alternative, show cause why they should not do so, and

27  thereafter issue a peremptory writ commanding Respondents DBI and BIC to set aside the

28  Determination and Decision and to issue the site permit and addenda for the Project;

9

1    (5)    That the court issue a peremptory writ of mandate in the first instance commanding

2  Respondent Planning Department to set aside the Badiner Decision and cease and desist from

3  instructing any persons to interfere with the issuance of the site permit and addenda for the

4  Project;

5    (6)    That the court, alternatively, first issue an alternative writ commanding Respondent

6  Planning Department to set aside the Badiner Decision and cease and desist from instructing any

7  persons to interfere with the issuance of the site permit and addenda for the Project or, in the

8  alternative, show cause why it should not do so, and thereafter issue a peremptory writ

9  commanding Respondent to set aside the  Badiner Decision and cease and desist from instructing

10  any persons to interfere with the issuance of the site permit and addenda for the Project;

11    (7)    That the court issue a peremptory writ of administrative mandamus in the first

12  instance commanding Respondents Planning Department and BOA to set aside the Badiner

13  Decision and cease and desist from instructing any persons to interfere with the issuance of the site

14  permit and addenda for the Project;

15    (8)    That the court, alternatively, first issue an alternative writ commanding

16  Respondents Planning Department and BOA to set aside the Badiner Decision and cease and desist

17  from instructing any persons to interfere with the issuance of the site permit and addenda for the

18  Project or, in the alternative, show cause why they should not do so, and thereafter issue a

19  peremptory writ commanding Respondents Planning Department and BOA to set aside the Badiner

20  Decision and cease and desist from instructing any persons to interfere with the issuance of the site

21  permit and addenda for the Project;

22    (9)    For costs of suit herein;

23    (10)    For such other and further relief as the court deems just and proper.

24  DATED: September 11, 2006            SELTZER LAW GROUP

25

26                          By: _____

27                                 Margaret A. Seltzer, Esq.
                              Attorneys for Petitioner TRUST OF REGAN
28                              CARROLL, REGAN CARROLL, TRUSTEE

---

10

# EXHIBIT A

CITY AND COUNTY OF SAN FRANCISCO
DEPARTMENT OF BUILDING INSPECTION



GAVIN NEWSOM, MAYOR
AMY LEE, ACTING DIRECTOR

January 5, 2006

Mr. Richard J. Stratton
Hanson Bridgett Marcus Vlahos Rudy LLP
425 Market Street, 26th Floor
San Francisco CA 94105

Dear Mr. Stratton:

I am writing to follow up on Mr. Carroll's December 7th letter to me as well as to address the issues raised at our December 30th meeting.

In an effort to bring these matters to a positive resolution, I had additional meetings with Planning and the City Attorney's Office. I was advised that under state law, the application of the Building Code and Planning Code are timed at different stages of the permit process. Specifically, the most recent Building Code will be applied at the time of filing; however, with the Planning Code, the version will be applied at time of issuance. Accordingly, since there have been several changes to the Planning Code as it relates to the Dogpatch Historic District, the most current version will be applied at the time of issuance. I have been informed by the Planning Department that they have not yet completed their formal review for 1179-89 Tennessee and therefore the permit is not yet ready to be issued. I encourage you to work with the Zoning Administrator and/or his designee on following the appropriate process for this project.

In regards to 1169-77 Tennessee, I have also had the opportunity to conduct a brief site inspection. Initially, during our December 30th meeting, I was under the belief that the foundation had been poured or at minimum, substantial work such as rebar installation has been completed. However, it appears that only some of the dirt has been excavated in preparation for a foundation. I understand that you obtained a foundation permit in January 2005 (extended twice to expire January 27, 2006) that was related to your site permit (issued July 2001). However, as stated earlier, that site permit expired in July 2003. At this time, the Building Department is prepared to renew your expired permit in an expeditious manner. Notwithstanding our efforts to expedite the process for you for 1169-77 Tennessee, the Zoning Administrator has requested that you submit your application to renew such permits directly with the Planning Department first prior to our role in renewing the permits.

I want to also clarify that the actions taken by our Building Inspection Division staff and Chief were done at the request from the Planning Department stemming from a public complaint. I encourage you to contact the Zoning Administrator or his staff person, Mark Luellen as soon as possible. Thank you.

Sincerely,

Amy Lee
Acting Director

cc:   Larry Badiner, DCP
       Mark Luellen, DCP
       Judy Boyajian, City Attorney
       Wing Lau, DBI
       Carla Johnson, DBI



# EXHIBIT B



# BUILDING INSPECTION COMMISSION (BIC)

**Department of Building Inspection**          Voice (415) 558-6164 – Fax (415) 558-6509
1660 Mission Street, San Francisco, California 94103-2414

Gavin Newsom
Mayor

COMMISSION

Debra Walker
President

Frank Lee
Vice-President

Joe Grubb
Mel Murphy
Criss Romero
Michael Theriault

Ann Aherne
Secretary

Sonya Harris
Asst. Secretary

Ay ee
A rector

May 8, 2006

Mr. Thomas N. Lippe, Esq.
Law Offices of Thomas N. Lippe
329 Bryant Street, Suite 3D
San Francisco, CA 94107

SUBJECT:    1179 – 1189 Tennessee Street
                     Appeal by Regan Carroll

Dear Mr. Lippe:

Attached are the findings adopted by the Building Inspection Commission regarding the above subject property.  These findings were adopted at the May 1, 2006 regular meeting of the Commission.

Should you have any further questions, please do not hesitate to call me at 558-6164.

Sincerely,

Ann Marie Aherne
Building Inspection Commission Secretary

Attachments

cc:    Acting Director Amy Lee
         Acting Deputy Director Carla Johnson
         Acting Deputy Director Wing Lau
         Deputy City Attorney Catharine Barnes
         Deputy City Attorney Judy Boyajian
         Mr. Regan Carroll, 1155 Tennessee Street, S.F., CA 94107
         Leo Trust, 159 Shooting Star Isle, Foster City, CA 94404
         Thomas Lundberg Etal, 237 Rose Avenue, Mill Valley, CA 94941
         2572-80 Third Street, LLC, 742 – 4th Avenue, S.F., CA 94118
         1169-1177 Tennessee Street, Inc., 1155 Tennessee Street, S.F., CA 94107
         Redland Group, Inc., 1155 Tennessee Street, S.F., CA 94107
         Regan Carroll Trust, 721 San Bruno Avenue, S.F., CA 94107

**Findings of the Building Inspection Commission**
**Regarding Appeal for 1179 – 1189 Tennessee Street**
**Adopted May 1, 2006**

On March 20, 2006, this appeal by Regan Carroll of the Department of Building Inspection's refusal to issue the Site Permit and Addendum (BPA No. 9902819) for the project at 1179 – 1189 Tennessee Street came before a duly noticed hearing of the Building Inspection Commission pursuant to Section D3.750-4 of the City Charter.

Having heard all of the public testimony and reviewed the record on this matter, the Building Inspection Commission hereby denies the appeal and upholds the Department of Building Inspection, based upon the following findings:

Findings

1. On or about March 31, 2000, Appellant Carroll obtained title to the property at 1179-1189 Tennessee Street ("Property") and rights to any building permit applications, approvals and/or permits that its former owner, John Stricklin, possessed for a project to erect a four story, eight unit residential building with commercial on the vacant lot.

2. Appellant Carroll pursued the project sporadically over the course of the next four years as his personal circumstances, including the illness and eventual death of his mother, permitted, consulting with the local neighborhood group, Dogpatch Neighborhood Association, and working on a series of revisions with necessary City departments. Although Appellant had an application pending during that time period, the City has not yet issued a building permit to Mr. Carroll.

3. City Planning commented upon and/or approved the Project at various times during the application process, including signing off on the Final Plans on or about June 30, 2005.

4. On or about November 14, 2005, DBI's Central Permit Bureau sent Appellant Carroll a Notice that his permit was ready for issuance upon proof of payment of applicable school fees.

5. Before Appellant Carroll picked up the permit, the Planning Department reasserted jurisdiction over the permit awaiting pickup for further analysis of its consistency with the City Planning Code, specifically the Dogpatch Historic District, which had been adopted during the project's lengthy design and permitting process.

6. The Planning Department acted properly in reasserting its jurisdiction over the permit because, under San Francisco Building Code Section 106.4.3, a building permit issued in violation of the Planning Code - or any City Ordinance- would not be valid. The Planning Department is the City agency charged with determining whether building permits comply with the Planning Code.

Now therefore, we hereby find, conclude and determine, that:

1. The Appeal is without merit because DBI's Central Permit Bureau never issued the site permit for the Project. No permit was delivered to the Appellant Carroll or his agent.

# EXHIBIT C



# PLANNING DEPARTMENT
City and County of San Francisco • 1660 Mission Street, Suite 500 • San Francisco, California • 94103-241

| MAIN NUMBER | DIRECTOR'S OFFICE | ZONING ADMINISTRATOR | PLANNING INFORMATION | COMMISSION CALENDAR |
|---|---|---|---|---|
| (415) 558-6378 | PHONE: 558-6411 | PHONE: 558-6350 | PHONE: 558-6377 | INFO: 558-6422 |
| | 4TH FLOOR | 5TH FLOOR | | INTERNET WEB SITE |
| | FAX: 558-6426 | FAX: 558-6409 | MAJOR ENVIRONMENTAL | WWW.SFGOV.ORG/PLANNING |
| | | | FAX: 558-5991 | |

March 06, 2006

Regan Carroll
1155 Tennessee St.
San Francisco, CA 94107

RE:    **Determination Pursuant to Planning Code Section 101.1 and 301**
**Property Address:**  1179-1189 Tennessee Street (aka 2580 3rd St)
**Assessor's Block/Lot:**    4172/053
**Zoning District:**    NC-2 (Small-Scale Neighborhood Commercial) District

Dear Mr. Carroll:

This serves to notify you that the Zoning Administrator is hereby formally requesting that the Department of Building Inspection route any and all building permit applications, renewals, extensions addendums, or revisions for the subject property to the Planning Department for review. Since these permits were originally reviewed by the Planning Department, under BPA 199902819S, the Planning Code has been significantly amended; processes were changed, and the Dogpatch Historic District was adopted. The Planning Department will review all such applications for consistency with the Planning Code (Code), including the adequacy of past environmental reviews, notification requirements per Section 312 of the Code and regulations of the Dogpatch Historic District within Article 10 of the Code.

Any aggrieved person may appeal this decision to the Board of Appeals within 15 days of the date hereof. For further information, please contact the Board of Appeals in person at 1660 Mission Street, Room 3036, or by telephone at 415.575.6880.

Sincerely,

Lawrence B. Badiner
Zoning Administrator

Cc:    Law Office of Thomas N. Lippe, 329 Bryant St., Suite 3D, S.F. CA 94107
      Amy Lee, Acting Director, DBI
      Wing Lau, DBI
      Catherine Barnes – Deputy City Attorney
      Carla Johnson, DBI

RECEIVED JUN 0 7 2006

NMC: N:\ZA\DETERMIN\2006\1189 Tennessee Street.doc

EXHIBIT D

## BOARD OF APPEALS, CITY & COUNTY OF SAN FRANCISCO

Appeal No. 06-041

Appeal of
REGAN CARROLL TRUST.
                    Appellant(s)

vs.

ZONING ADMINISTRATOR.
                    Respondent

## NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN THAT** the above named appellant(s) appeals to the Board of Appeals of the City and County of San Francisco from the decision or order of the above named department(s), commission, or officer.

The substance or effect of the decision or order appealed from is a determination dated March 6, 2006, addressed to Regan Carroll, concerning the routing of all building permit applications, renewals, extensions, addendums, and revisions for 1179-1189 Tennessee Street.

| Address & Tel. of Appellant(s): | Address of Other Party: |
|---|---|
| Regan Carroll Trust, Appellant(s) c/o Thomas Lippe, Attorney for Appellant(s) 329 Bryant Street #3D SF, CA 94107 415.777.5600 (tel) 415.777.9809 (fax) | N/A |

I, _____Regan Carroll_____ declare under penalty of perjury that the foregoing is true and correct.

ed on _____March 21, 2006_____ at San Francisco, California.

FOR HEARING ON _____May 17, 2006_____

_____ TRUSTEE
Appellant or Agent
REGAN CARROLL TRUST

## NOTICE OF DECISION & ORDER

The aforementioned matter came on regularly for hearing before the Board of Appeals of the City & County of San Francisco on May 17, 2006, and the order was UPHELD by the Board of Appeals.

**PURSUANT TO** § 4.106 of the Charter of the City & County of San Francisco and Article 1, § 14 of the Business & Tax Regulations Code of the said City & County, and the action above stated, the Board of Appeals hereby orders that

the subject determination by the Zoning Administrator is UPHELD.

BOARD OF APPEALS
CITY & COUNTY OF SAN FRANCISCO

_____
Frank Fung, President

Last Day to Request Rehearing: May 30, 2006
Request for Rehearing: June 14, 2006 (denied)
Rehearing: None
Notice Released: June 16, 2006

_____
Robert H. Feldman, Executive Secretary

If this decision is subject to review under Code of Civil Procedure § 1094.5, then the time within which judicial review must be sought is governed by California Code of Civil Procedure, § 1094.6.

**City and County of San Francisco**                          **Board of Appeals**



# AFFIDAVIT OF SERVICE

**Regan Carroll Trust, Appellant(s)**
**c/o Thomas Lippe, Attorney for Appellant(s)**
**329 Bryant Street #3D**
**SF, CA 94107**

I, Victor F. Pacheco, Legal Assistant for the Board of Appeals, hereby certify that on this _16th_ day of June, 2006, I served the attached **Notice(s) of Decision & Order** for Appeal No(s). _06-041_ , _Carroll Trust_ vs. _ZA_ , subject property at _1179-1189 Tennessee Street_ , on the appellant(s) by mailing a copy via U.S. mail, first class, to the address above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed in San Francisco, California.

_6/16/2006_
_____
Date

_Victor_
_____
Victor F. Pacheco, Legal Assistant

cc:  DBI TSD (if applicable), DBI BID (if applicable), DBI CPB (if applicable), DBI HID (if applicable), DBI Records Management (if applicable), Planning Dept. (if applicable), & Redevelopment Agency (if applicable)

**OTHER PARTIES**
**OR CONCERNED CITIZENS:**

**Regan Carroll Trust, Appellant(s)**
**1155 Tennessee Street**
**SF, CA 94107**

1

## VERIFICATION

2

3

4          I, Regan Carroll, declare:

5          I am the trustee of Regan Carroll Trust, and am the petitioner in this proceeding.  The facts

6    alleged in the above amended petition are true of my own knowledge.

7          I declare under penalty of perjury under the laws of the State of California that the

8    foregoing is true and correct.

9    DATED:  September 12, 2006.

10

11

12                                                          Regan Carroll

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 5

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

RECEIVED
MAYOR'S OFFICE
06 NOV 30 PH 2:31

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
RESPONDENTS AND DEFENDANTS: "Additional Parties
Attachment form is attached."

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
PETITIONERS AND PLAINTIFFS: TRUST OF REGAN CARROLL,
REGAN CARROLL, TRUSTEE

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of San Francisco
400 McAllister Street
San Francisco, CA 94102-4514

CASE NUMBER:
(Número del Caso): CPF-06-506816

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Thomas N. Lippe, SBN 104640
Law Offices of Thomas N. Lippe; 329 Bryant St., #3D, San Francisco, CA  94107; tel (415) 777-5600

DATE: NOV 2 7 2006        Gordon Park-Li        Clerk, by _____ Jun Panelo _____, Deputy
(Fecha)                                          (Secretario)                                (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): CITY AND COUNTY OF SAN FRANCISCO
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☒ other (specify): CCP 416.50 public entity
4. ☐ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.  www.USCourtForms.com

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Thomas N. Lippe, SBN #104640
LAW OFFICES OF THOMAS N. LIPPE
329 Bryant Street, Suite 3D, San Francisco, CA 94107

TELEPHONE NO.: 415-777-5600    FAX NO.: 415-777-9809
ATTORNEY FOR *(Name):* Petitioners and Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: same
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME:

CASE NAME:
Trust of Regan Carroll v City and County of San Francisco, et al

**FOR COURT USE ONLY**

ENDORSED
F I L E D
San Francisco County Superior Court

NOV 2 7 2006

GORDON PARK-LI, Clerk
BY: _____
JUN P. PANELO
Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | CPF-06-506816 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☑ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. ☐ monetary    b. ☑ nonmonetary; declaratory or injunctive relief    c. ☐ punitive

4. Number of causes of action *(specify):* one (1)

5. This case ☐ is ☑ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 27, 2006

Thomas N. Lippe
(TYPE OR PRINT NAME)

*(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

American LegalNet, Inc.

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Thomas N. Lippe, SBN 104640<br>Law Offices of Thomas N. Lippe<br>329 Bryant Street, Suite #3D<br>San Francisco, CA 94107<br>TELEPHONE NO.: 415-777-5600    FAX NO. *(Optional)*: 415-777-9809<br>E-MAIL ADDRESS *(Optional)*: lippelaw@sonic.net<br>ATTORNEY FOR *(Name)*: Petitioners and Plaintiffs | FOR COURT USE ONLY<br><br>ENDORSED<br>F I L E D<br>San Francisco County Superior Court<br><br>NOV 2 7 2006<br><br>GORDON PARK-LI, Clerk<br>BY ___CAROLYN BALISTRERI___ |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: same
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME:

| PLAINTIFF/PETITIONER: Trust of Regan Carroll, et al<br><br>DEFENDANT/RESPONDENT: City and County of San Francisco, et al | CASE NUMBER:<br>CPF-06-506816 |
|---|---|
| **NOTICE OF RELATED CASE** | JUDICIAL OFFICER:<br><br>DEPT.: |

The following case or cases are related to the above-captioned case:

1.  a. Title: Trust of Regan Carroll v City and County of San Francisco Department of Building Inspection, et al
    b. Court: [✓] same as above  [ ] other *(name and address)*:

    c. Case number: CPF-06-506542
    d. Filing date: August 4, 2006
    e. Relationship to this case: see Attachment 1

    f. If the related case is pending in the same court as this case, explain why the assignment of the cases to a single judge is likely to result in efficiencies:

       [✓] Additional explanation is attached in Attachment 1.

2.  a. Title:
    b. Court: [ ] same as above  [ ] other *(name and address)*:

    c. Case number:
    d. Filing date:
    e. Relationship to this case:

    f. If the related case is pending in the same court as this case, explain why the assignment of the cases to a single judge is likely to result in efficiencies:

       [ ] Additional explanation is attached in Attachment 2.

3.  [ ]  Additional related cases are described in Attachment 3.

Date: November 27, 2006

Thomas N. Lippe                                          *(signature)*
_____                         ▶ _____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)                  (SIGNATURE OF PARTY OR ATTORNEY)

RECEIVED
MAYOR'S OFFICE
06 NOV 30 PM 2: 31

Page 1 of 2

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [New January 1, 2006] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 804<br>www.courtinfo.ca.gov<br><br>American LegalNet, Inc.<br>www.USCourtForms.com |
|---|---|---|

NOTICE OF RELATED CASE
ATTACHMENT 1

| PLAINTIFF:    Trust of Regan Carroll, et al | CASE NUMBER: |
|---|---|
| DEFENDANT: City and County of San Francisco, et al | |

The following case or cases are related to the above-caption case:

1. e. Relationship to this case:

Case No CPF-06-506542 involves the same parties and relates to Respondent City of San Francisco's procedures for reviewing the same building permit application that is the subject of this action.

1. f. If the related case is pending in the same court as this case, explain why the assignment of the cases to a single judge is likely to result in efficiencies:

Respondent City of San Francisco's has been processing Petitioner's Building Permit Application No. 9902819 since 1999. Since December of 2005, the City has refused to issue the permit despite fully approving the application. Case No CPF-06-506542 challenges the Building Inspection Commission's and Board of Appeal's denial of Petitioners administrative appeals, which sought to overturn the Department of Building Inspection's and Department of Planning's eleventh hour imposition of new permit approval requirement on Petitioner. The instant case seeks a judicial declaration that Building Permit Application No. 9902819 is deemed approved by operation of law under the Permit Streamlining Act; and a peremptory writ of mandate ordering the City to issue the building permit forthwith. Most of the underlying facts of the two cases, especially the factual history of the permit application from 1999 through December of 2005, is the same for both cases.

p033Aa NOTICE OF RELATED CASEATTACHMENT 1.wpd

1  Thomas N. Lippe, Esq. SB #104640
   Andrea Rosenthal, Esq. SB#154769
2  LAW OFFICES OF THOMAS N. LIPPE
   329 Bryant Street, Suite 3D
3  San Francisco, California 94107
   Tel: (415) 777-5600
4  Fax: (415) 777-9809

5
   Attorneys for Petitioners and Plaintiffs:
6  Trust of Regan Carroll, Regan Carroll, Trustee

7

8

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  CITY AND COUNTY OF SAN FRANCISCO

11

12
   TRUST   OF   REGAN   CARROLL,   REGAN )      Case No. **CPF-06-506816**
13 CARROLL, TRUSTEE,                      )
                                          )      PETITION FOR WRIT OF MANDATE
14             Petitioners and Plaintiffs, )     AND   COMPLAINT   FOR
                                          )      DECLARATORY RELIEF
15 v.                                     )
                                          )
16 CITY AND COUNTY OF SAN FRANCISCO;)
   CITY AND COUNTY OF SAN FRANCISCO)
17 DEPARTMENT OF BUILDING INSPECTION,)
   AND CITY OF COUNTY OF SAN FRANCISCO)
18 PLANNING DEPARTMENT,               )
                                      )
19             Respondents and Defendants. )

20

21

22

23

24

25

26

27

28

ENDORSED
F I L E D
San Francisco County Superior Court

NOV 2 7 2006

GORDON PARK-LI, Clerk
BY: _____ JUN P. PANELO
                    Deputy Clerk

RECEIVED
MAYOR'S OFFICE
06 NOV 30  PM 2: 32

FICES OF
N. LIPPE
nt Street
3D
CO, CA 94107
777-5600

1   Petitioners and Plaintiffs TRUST OF REGAN CARROLL and REGAN CARROLL,

2   TRUSTEE (hereinafter collectively referred to as "Mr. Carroll") allege as follows:

3   1.    This case arise from the failure by Respondent and Defendant CITY AND COUNTY OF

4   SAN FRANCISCO (hereinafter the "City") to timely approve Building Permit Application No.

5   9902819 and issue a building permit to Mr. Carroll in violation of the Permit Streamlining Act at

6   Government Code § 65920 *et seq.* Mr. Carroll seeks a judicial declaration that the City's refusal to

7   issue said permit is unlawful and that Building Permit Application No. 9902819 is deemed approved

8   by operation of law; and a peremptory writ of mandamus ordering the City to issue to Mr. Carroll the

9   building permit for Building Permit Application No. 9902819 forthwith.

## I. THE PARTIES

11  2.    Petitioners and Plaintiffs TRUST OF REGAN CARROLL and REGAN CARROLL,

12  TRUSTEE (hereinafter collectively referred to as "Mr. Carroll") are the owners of real property

13  located in the City and County of San Francisco commonly known as 1179-1189 Tennessee Street,

14  which is located in the Dogpatch neighborhood of San Francisco.  The real property commonly

15  known as 1179-1189 Tennessee Street is hereinafter referred to as the "Property."

16  3.    Respondent and Defendant CITY AND COUNTY OF SAN FRANCISCO is a municipal

17  organization organized and existing under the Constitution and laws of the State of California.

18  Respondent and Defendant CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF

19  BUILDING INSPECTION ("DBI") is an agency of the City established by City Charter § D3.750

20  having "responsibility for the enforcement, administration, and interpretation of the City's Housing,

21  Building, Mechanical, Electrical, and Plumbing Codes...." Respondent and Defendant CITY OF

22  COUNTY OF SAN FRANCISCO PLANNING DEPARTMENT ("Planning Department") is an

23  agency of the City created by San Francisco City Charter § 101 "to administer and enforce the City

24  Planning Code."  City, DBI, and the Planning Department are collectively referred to herein as

25  "City."

## II. FACTUAL BACKGROUND

27  4.    On or about February 11, 1999, Mr. John Stricklin, the then current owner of the Property,

28  submitted Building Permit Application No. 9902819 to the City for a permit to construct a four (4)

FFICES OF
S N. LIPPE
ryant Street
ite 30
ISCO, CA 94103
5] 777-5600

- 1 -

1    story, eight (8) unit residential building on the Property. Mr. Stricklin's application included a

2    request for a variance because the proposed building would encroach on the rear yard setback

3    required by the San Francisco Planning Code.

4    5.        On or about July 28, 1999, the Planning Department issued for public review and comment

5    a Negative Declaration prepared pursuant to the California Environmental Quality Act (hereinafter

6    "CEQA") for Mr. Stricklin's application. The Negative Declaration evaluated potential effects on

7    historic resources and found them to be "not significant," stating: "[i]n the independent judgment of

8    the Department of City Planning, there is no substantial evidence that the project could have a

9    significant effect on the environment."

10    6.        On or about August 10, 1999, the Planning Department adopted the Negative Declaration and

11    approved the variance request.

12    7.        On March 31, 2000, Mr. Carroll acquired title to the Property.

13    8.        On or about March 31, 2000, Mr. Carroll acquired pending Building Permit Application No.

14    9902819 by assignment from Mr. Stricklin. Mr. Carroll re-designed the proposed building to

15    eliminate the need for a rear yard variance by removing a portion of rear of the building and reducing

16    the overall building envelope.

17    9.        The Permit Streamlining Act ("PSA"), at Government Code § 65943, requires the permit

18    issuing agency to notify the applicant when and why an application is "incomplete" and also when

19    it is "complete." On or about June 26, 2001, the City approved the Site Permit plans for Building

20    Permit Application No. 9902819 and provided notice to Mr. Carroll that the Building Permit

21    Application No. 9902819 was complete for purposes of the PSA.

22    10.       Under the PSA at Government Code § 65944, once the permit issuing agency accepts the

23    application as complete, it cannot require that the applicant submit any new categories of information

24    not previously identified, though the agency may "in the course of processing the application, request

25    the applicant to clarify, amplify, correct, or otherwise supplement the information required for the

26    application."

27    11.       Between June 26, 2001 and November of 2005, the City requested and Mr. Carroll provided

28    additional supplemental information for purposes of the City's review and approval of various

- 2 -

IFFICES OF
IS N. LIPPE
ryard Street
uite 30
ISCO, CA 84107
5) 777-5600

Petition for Writ of Mandate and Complaint for Declaratory Relief; Case No. (To be assigned)

1    "Technical Addenda" to the Site Permit plans for Building Permit Application No. 9902819 relating

2    to mechanical, structural and other matters specified by the San Francisco Building Code.

3        12.    On or about June of 2005 and again on or about November 14, 2005 the City approved all of

4    the required Technical Addenda for Building Permit Application No. 9902819.

5        13.    On or about November 14, 2005 the City notified Mr. Carroll that his permit was ready for

6    issuance upon proof of payment to the San Francisco Unified School District of school facilities fee.

7        14.    On December 2, 2005, Mr. Carroll paid the school facilities fee, appeared at the City's Central

8    Permit Bureau, presented his receipt for payment of the school facilities fee and requested that his

9    building permit be issued. The City refused to issue the requested building permit to Mr. Carroll.

10        15.    Since its refusal to issue the requested building permit to Mr. Carroll December 2, 2005, the

11    City has informed Mr. Carroll that it will not issue the requested building permit and will deny

12    Building Permit Application No. 9902819 unless and until he submits to the City for its discretionary

13    approval an application for a Certificate of Appropriateness pursuant to Article 10 of the San

14    Francisco Planning Code.

15        16.    Article 10 of the San Francisco Planning Code is the City's historic preservation ordinance,

16    adopted in 1967. Article 10 requires the submission and approval of an application for a Certificate

17    of Appropriateness for certain development projects located in areas of the City that have been

18    designated as "historic districts." On April 18, 2003, almost two years after the City found the

19    application and approved the Site Permit, the City designated the Dogpatch neighborhood in which

20    Mr. Carroll's property is located as a "historic district" by adopting Appendix L to Article 10.

21        17.    At no time before December 2, 2005 did the City ever inform Mr. Carroll that he would be

22    required to submit to the City for its discretionary approval an application for a Certificate of

23    Appropriateness pursuant to Article 10 of the San Francisco Planning Code.

24    ### III. FIRST CAUSE OF ACTION

25        18.    Petitioner hereby realleges and incorporates the preceding paragraphs of this Petition as

26    though set forth herein in full.

27        19.    The Permit Streamlining Act was enacted in 1977, when the California Legislature added

28    chapter 4.5, entitled "Review and Approval of Development Projects," to the Government Code,

OFFICES OF
AS N. LIPPE
Bryant Street
uite 3D
SCD, CA 94107
15) 777-5600

1    commencing with section 65920. The Act's purpose, as stated in Government Code §65921, is to

2    "ensure clear understanding of the specific requirements which must be met in connection with the

3    approval of development projects and to expedite decisions on such projects." The Act was adopted

4    to relieve permit applicants from protracted and unjustified governmental delays in processing their

5    applications for development projects. *Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1049.

6    20.    Mr. Carroll's Building Permit Application No. 9902819 is a development project subject to

7    the PSA.

8    21.    Under the PSA at Government Code § 65940, the City is required to compile one or more lists

9    specifying in detail the information required for review and approval of an application for a

10   development project, and to make such lists available to all applicants and to anyone else who

11   requests them.  The lists must indicate the criteria that will be applied in determining whether an

12   application is complete, and the time limits for the review and approval of the applications.

13   (Government Code §§ 65941, 65941.5; *Beck Dev. Co. v. Southern Pac. Transp. Co.* (1996) 44

14   Cal.App.4th 1160, 1198.)

15   22.    The City's insistence that Mr. Carroll submit to the City for its discretionary approval an

16   application for a Certificate of Appropriateness pursuant to Article 10 of the San Francisco Planning

17   Code violates the PSA at Government Code § 65944 because it requires information that was not

18   specified in any list compiled by the City pursuant to the PSA at Government Code § 65940 before

19   the City found Building Permit Application No. 9902819 complete.

20   23.    Under the PSA at Government Code §§ 65941 and 69550(a)(3), the permit issuing agency

21   may take steps to comply with CEQA.  Here, as noted above, the City complied with CEQA for

22   Building Permit Application No. 9902819 by adopting a Negative Declaration on or about July 28,

23   1999.

24   24.    Under the PSA at Government Code § 65950(a)(3), once the permit issuing agency accepts

25   the application as complete and adopts a Negative Declaration pursuant to CEQA, the agency must

26   approve or disapprove the development application within sixty days thereafter. Here, the City failed

27   to approve or disapprove Building Permit Application No. 9902819 within this time limit.

28   25.    On or about July 18, 2006, Mr. Carroll notified the City that it was in violation of the PSA.

FFICES OF
S N. LIPPE
yant Street
te 30
SCD, CA 94107
1) 777-5600

26.     Under the PSA at Government Code § 65956, where the permit issuing agency violates the time limits required by the PSA by failing to approve or disapprove the development application within sixty days after accepting the application as complete and adopting a Negative Declaration pursuant to CEQA, the applicant may give notice to the agency and the affected members of the public that unless the agency approves or disapprove the development application within sixty days of the notice, the application will be deemed approved by operation of law.

27.     On or about August 9, 2006, Petitioner complied with the PSA at Government Code § 65956(b) by providing the City with seven days advance notice that Petitioner intended to provide public notice that the Project would be deemed approved by operation of law if the City did not approve or disapprove Building Permit Application No. 9902819 within sixty days of said public notice.

28.     On August 30, 2006, pursuant to the PSA at Government Code § 65956(b), Petitioner provided the City and the public with notice that the Project would be deemed approved by operation of law if the City did not approve or disapprove Building Permit Application No. 9902819 within sixty days of said public notice.

29.     Under the PSA at Government Code § 65956(b), where the permit issuing agency fails to approve or disapprove the development application within sixty days after the notice specified in Government Code § 65956(b) is given, the application is deemed approved by operation of law.

30.     The City failed to approve or disapprove Building Permit Application No. 9902819 within sixty days of said public notice.

31.     Mr. Carroll has attempted on several occasions to informally resolve these issues with the City, to no avail.

## IV. PRAYER FOR RELIEF

WHEREFORE, Mr. Carroll prays for relief as follows:

1.     For judicial determinations and declarations that:

    a.     the City's refusal to approve Building Permit Application No. 9902819 and issue said permit is unlawful and in violation of the PSA; and

    b.     Building Permit Application No. 9902819 is deemed approved by operation of law.

OFFICES OF
AS N. LIPPE
Bryant Street
Suite 30
CISCO, CA 94707
(5) 771-5800

2.    For a peremptory writ of mandate ordering the City to issue to Mr. Carroll the building permit for Building Permit Application No. 9902819 forthwith.

3.    For reasonable attorney's fees under Government Code § 800;

4.    For costs of suit; and

5.    For such other and further relief as the court deems proper.

DATED: November 27, 2006                    LAW OFFICES OF THOMAS N. LIPPE

By: _____
Thomas N. Lippe
Attorney for Petitioners and Plaintiffs
Trust of Regan Carroll and Regan Carroll, Trustee

P030b Petition for Writ.wpd

ICES OF
N. LIPPE
Street
ID
, CA 94107
7-5600

## VERIFICATION

*Trust of Regan Carroll v. City and County of San Francisco, et. al.*, San Francisco County Superior Court, Case No. [Unassigned]

I, Regan Carroll, declare:

I am a Petitioner/Plaintiff in this action. I have read the foregoing Petition for Writ of Mandate and Complaint for Declaratory Relief and know the contents thereof; the factual allegations therein are true of my own knowledge.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on the 27TH th day of November, 2006 at Smith River, California.

Regan Carroll, TRUSTEE
TRUST OF Regan Carroll

LAW OFFICES OF
THOMAS R. LIPPE
329 Bryant Street
Suite 3D
SAN FRANCISCO, CA 94107
TEL: (415) 777-5606