1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  KRISTEN A. JENSEN, State Bar #130196
   THOMAS S. LAKRITZ, State Bar #161234
3  Deputy City Attorneys
   City Hall, Room 234
4  1 Dr. Carlton B. Goodlett Place
   San Francisco, California 94102
5  Telephone:      (415) 554-4615
   Facsimile:      (415) 554-4757
6  E-Mail:         kristen.jensen@sfgov.org

7

8  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO
9  (Including SAN FRANCISCO DEPARTMENT OF BUILDING
   INSPECTION, SAN FRANCISCO BUILDING
10 INSPECTION COMMISSION, and
   SAN FRANCISCO PLANNING DEPARTMENT)

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                         OAKLAND DIVISION

15 REGAN CARROLL TRUST, Regan          Case No. C-07-2577 SBA
   Carroll, Trustee,
16                                      **REPLY MEMORANDUM OF POINTS
                                        AND AUTHORITIES IN SUPPORT OF**
17            Plaintiff,                **MOTION TO DISMISS FIRST
                                        AMENDED COMPLAINT FOR LACK**
18      vs.                             **OF JURISDICTION AND FAILURE
                                        TO STATE A CLAIM, TO STRIKE**
19 CITY AND COUNTY OF SAN               **THIRD COUNT OR, IN THE
   FRANCISCO, SAN FRANCISCO             ALTERNATIVE, FOR SUMMARY**
20 DEPARTMENT OF BUILDING               **JUDGMENT**
   INSPECTION, SAN FRANCISCO            **[FRCP 12(B)(1); 12(B)(6); 12(F), 56]**
21 BUILDING INSPECTION
   COMMISSION, and SAN FRANCISCO        Hearing Date:   February 26, 2008
22 PLANNING DEPARTMENT,                 Time:           1:00 p.m.
                                        Place:          Courtroom 3, 3rd Floor
23            Defendant.
                                        Trial Date:     TBA
24

25

26

27

28

REPLY MPA ISO MOTN TO DISMISS AM. COMPL.                    n:\land\li2008\080285\00465890.doc
INSERT CASE NO.  C-07-2577 SBA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

SUPPLEMENTAL STATEMENT OF FACTS AND PROCEDURAL HISTORY .................... 1

ARGUMENT ................................................................................................................... 2

I.    THE COURT SHOULD DENY PLAINTIFF LEAVE TO AMEND. ................... 2

II.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. §1983. .... 5

    A.    PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM FAILS AS A MATTER OF LAW. ................................................................................ 5

        1.    Neither the Complaint, Nor Plaintiff's Proposed Amendments, Establish "Targeted Governmental Conduct." ................................ 5

        2.    Plaintiff is Collaterally Estopped from Asserting the Permit Streamlining Act and California Environmental Quality Act Arguments. ................................................................................ 8

    B.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR DENIAL OF EQUAL PROTECTION. ..................................................... 10

III.  PLAINTIFF'S §1983 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS. ...................................................................................... 12

IV.  RES JUDICATA AND COLLATERAL ESTOPPEL BAR PLAINTIFF'S CLAIMS. ................................................................................................ 13

V.   ANY CLAIMS BASED ON THE CITY'S REFUSAL TO ISSUE A PERMIT ARE UNRIPE FOR ADJUDICATION. .......................................................... 13

VI.  PLAINTIFF IS NOT ENTITLED TO LEAVE OF COURT TO SUPPLEMENT THE COMPLAINT. ............................................................ 14

CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Federal Cases**

*Adams v. Vidiera*
  2001 WL 277966 (N.D. Cal. 2001) .................................................................................5

*Albiero v. City of Kankakee*
  246 F.3d 927 (7th Cir. 2001) ....................................................................................6, 11

*Allen v. McCurry*
  449 U.S. 90 (1980)..........................................................................................................9

*Aulson v. Blanchard*
  83 F.3d 1 (1st Cir. 1996)..................................................................................................5

*Azadpour v. Sun Microsystems, Inc .*
  2007 WL 988185, * 3-4 (N.D. Cal. 2007)........................................................................9

*Bell v. Duperrault*
  367 F.3d 703 (7th Cir. 2004) ..........................................................................................6

*Chiplin Enterprises, Inc. v. City of Lebanon*
  712 F.2d 1524 (C.A. N. H. 1983) ..................................................................................8

*Collier v. Town of Harvard*
  1997 WL 33781338 (D. Mass. 1997) ..........................................................................6, 7

*Conley v. Gibson*
  355 U.S. 41 (1957)..........................................................................................................3

*Day v. Moscow*
  955 F.2d 807 (2d Cir. 1992) ..........................................................................................9

*Lance v. Dennis*
  546 U.S. 459 (2006)........................................................................................................9

*Manufactured Home Communities Inc. v. City of San Jose*
  420 F.3d 1022 (9th Cir. 2005) ......................................................................................3

*Martinez v. Goddard*
  521 F.Supp.2d 1002 (2007) ............................................................................................5

*Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Adding*
  2007 WL 127997 (N.D. Cal. 2007) ..............................................................................14

*Matsushita Elec. Indus. Co. v. Epstein*
  516 U.S. 367 (1996)........................................................................................................9

*Muhammad v. U.S. Dept. of Housing and Urban Dev.*
  2006 Westlaw 2598015 (N.D. Cal. 2006) ......................................................................5

*Northeastern Florida Chapter of Assoc. Gen. Contractors of America v. City of Jacksonville*
    508 U.S. 656 (1993)......................................................................................................11

*PFZ Properties, Inc. v. Rodriguez*
    928 F.2d 28 (1st Cir. 1991)...........................................................................................7

*Planned Parenthood of Southern Arizona v. Neely*
    130 F.3d 400 (9th Cir. 1997) .......................................................................................14

*Schneider v. California Dept. of Corrections*
    151 F.3d 1194 (9th Cir. 1998) ................................................................................3, 10

*Thompson v. County of Franklin*
    15 F.3d 245 (2d Cir. 1994) ...........................................................................................9

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981) ........................................................................................3

**Federal Statutes**

28 U.S.C.
    § 1738 ............................................................................................................................9

42 U.S.C.
    §1983 ...........................................................................................................................13

Federal Rule of Civil Procedure
    § 12(b)(1)......................................................................................................................8
    § 12(b)(6)...............................................................................................................3, 8, 9
    § 15(d)..........................................................................................................................14
    § 56(e)(2) ...............................................................................................................12, 14

**State Cases**

*Briggs v. City of Rolling Hills* Estates
    40 Cal.App.4th 637 (1997) ..........................................................................................13

*Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.*
    113 Cal.App.4th 597 (2003) ........................................................................................11

*Hernandez v. City of Hanford*
    41 Cal.4th 279 (2007)..................................................................................................12

*Land Waste Management v. Contra Costa County Bd. of Supervisors*
    222 Cal. App. 3d 950 (1990) ........................................................................................2

*Metromedia, Inc. v. City of Pasadena*
    216 Cal.App.2d 270 (1963) .........................................................................................11

*Palmer v. Board of Supervisors*
    145 Cal. App. 3d 779 (1983) ........................................................................................2

*Russian Hill Imp. Ass'n v. Board of Permit Appeals of City and County of San Francisco*
    66 Cal.2d 34 (1967) ...................................................................................................2

*Selby Realty Co. v. City of San Buenaventua*
    10 Cal.3d 110 (1973) ...............................................................................................11

*Wells Fargo Bank v. Town of Woodside*
    33 Cal.3d 379 (1983) ...............................................................................................11

**State Statutes & Codes**

Public Resources Code
    § 21000 .....................................................................................................................9

Government Code
    § 65950 .....................................................................................................................2
    § 65920 *et seq* ........................................................................................................9

**San Francisco Statutes, Codes & Ordinances**

San Francisco Building Code
    § 106.4.3 ................................................................................................................2, 6

San Francisco Planning Code
    §1005 ...................................................................................................................6, 10
    § 1006 .......................................................................................................2, 6, 10, 11

**U.S. Constitution**

U.S. Constitution
    First Amendment ......................................................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant City and County of San Francisco (sued herein as the City and County of San Francisco, San Francisco Department of Building Inspection, San Francisco Building Inspection Commission, and San Francisco Planning Department; collectively "City") submits this reply memorandum of points and authorities in support of its motion to dismiss the First Amended Complaint for Injunctive Relief and Damages for Violation of Civil Rights filed herein on October 30, 2007 ("Amended Complaint") on the grounds that this Court lacks jurisdiction, the Amended Complaint fails to state a claim, and the Third Count was filed without prior leave of court in violation of the Federal Rules of Civil Procedure.

## INTRODUCTION

The opposition brief filed by Plaintiff substitutes rhetoric for citation to facts or legal authority in support of Plaintiff's claims. Many of the City's arguments supporting the motion are not addressed at all in the opposition, and are therefore conceded. While Plaintiff acknowledges that he must establish facts that "shock the conscience," neither the Amended Complaint, nor any of the proposed allegations in the opposition, do so. As a result, his allegations do not rise to the level of a Constitutional violation, and the City's motion should be granted without leave to amend.

## SUPPLEMENTAL STATEMENT OF FACTS AND PROCEDURAL HISTORY

Since the City filed its motion to dismiss, but before Plaintiff filed its opposition brief, one of Plaintiff's several related state cases has been resolved against Plaintiff. On December 5, 2007, the San Francisco Superior Court heard oral argument in Superior Court Case No. CPF-06-506816. [Supp. RJN at Exh. 1.] That case challenged the City's actions with respect to the project at issue in this case on the theory that the City had failed to issue Plaintiff a permit within the timelines prescribed by the Permit Streamlining Act, California Government Code § 65950. [*See* RJN at Exh. 5.] Following the hearing, the Superior Court issued an order deciding that case, on the merits, in favor of the City. [Supp. RJN at Exh. 1, p. 1.] In relevant part, the court's order held:

> Although the PSA was enacted to expedite permit applications and clarify application requirements, nothing in it suggests that it was intended to protect a developer who waits to invoke its protection until after a law is passed with which he does not want to comply. "[A] permit, license or other governmental entitlement must conform to the law in existence at the time of its issuance or recordation rather than that in effect at the time of application or denial."

REPLY MPA ISO MOTN TO DISMISS AM. COMPL.      1      n:\land\li2008\080285\00465890.doc
INSERT CASE NO.  C-07-2577 SBA

(*Palmer v. Board of Supervisors* (1983) 145 Cal. App. 3d 779, 781.) By waiting to invoke the notice provisions of the PSA until after the Planning Code amendments were adopted, Petitioner waived his right to obtain deemed approved status under the Act.

The PSA cannot be interpreted to overcome the rule that "[l]ocal government agencies are *powerless* to issue land-use permits which are inconsistent with governing legislation." (*Land Waste Management v. Contra Costa County Bd. of Supervisors*(1990) 222 Cal. App. 3d 950, 959 (emphasis in original).) "'Government Code section 65950 …was not meant to impose a rigorous timetable on local government's exercise of its policy-making legislative function.'" (*Id.* at 957, fn. 2.) Moreover, "local government entities cannot issue land-use permits that are inconsistent with controlling land-use legislation." (*Id.*) Petitioner admits the Property is in an historic district, and that the Planning Code as it exists today requires that projects located in the district must obtain a COA. (Planning Code § 1006.) Any permit issued in violation of the Planning Code, including the provisions of Article 10 applicable to historic districts, is legally invalid. (S.F. Building Code § 106.4.3.) Because the permit in question requires a COA and updated CEQA review before it can be lawfully issued, deemed approval under the PSA would violate both local law and CEQA. The permit is therefore "inconsistent with governing legislation" and cannot be issued by operation of law pursuant to the PSA.

…

Petitioner in this case seeks a permit which is "inconsistent with controlling land-use legislation" and which therefore cannot be issued. The Dogpatch ordinance requires a COA before the permit can be issued, and the Building Code mandates that any permit issued in violation of the Planning Code is legally invalid. Therefore, in order for Petitioner's permit to be legally issued without first obtaining a COA, it would require a change in the controlling land-use legislation. Petitioner's claim thus fails.

…

Until a permit is finally granted, all reviewing administrative agencies and courts must apply the Planning Code in effect at the time of review. The California Supreme Court has long held that "one who is not yet armed with a presently effective municipal license to proceed with construction must assume the risk that, 'before final action [has] been taken on [his] application' [citation omitted], the law might be changed so as to require that his application be denied." (*Russian Hill Imp. Ass'n v. Board of Permit Appeals of City and County of San Francisco* (1967) 66 Cal.2d 34, 40.) Here, the City could not issue a permit until all addenda were approved, and Petitioner complied with the Planning Code provisions relating to construction in an historic district. As a consequence, Petitioner is not entitled to a "deemed approved" permit pursuant to the PSA.

[*Id.* at Exh. 1, pp. 5-9.]

## ARGUMENT

### I.    THE COURT SHOULD DENY PLAINTIFF LEAVE TO AMEND.

Plaintiff effectively concedes that his Amended Complaint fails to state a claim by

commencing his opposition with (and dedicating nearly 20% of its pages to) a request for leave to

amend. After offering proposed amendments, Plaintiff erroneously argues that this Court can only grant the City's motion on the substantive due process claim "if the proposed second amended complaint is conceded to be true but yet does not shock the conscience or single Carroll out for wrongful treatment without rational basis." [Opp. at 8:8-12.] In fact, however, the Court *cannot* consider "new" facts alleged in Plaintiff's opposition brief in determining whether to dismiss this action, and thus such allegations are irrelevant for purposes of deciding whether to grant or deny this motion. *Schneider v. California Dept. of Corrections,* 151 F.3d 1194, 1197 (9th Cir. 1998). In any event, as shown below, even accepting Plaintiff's proposed amendments as true (they are not), the conduct alleged does not meet the threshold requirements to support Plaintiff's §1983 claims.

As noted in Defendant's opening brief, Federal Rule of Civil Procedure 12(b)(6) provides that a motion to dismiss should be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Although the facts alleged by Plaintiff are assumed true under a motion to dismiss, the Court is *not* required to accept as true unwarranted deductions or unreasonable inferences, or conclusory legal allegations cast in the form of factual allegations. *See Manufactured Home Communities Inc. v. City of San Jose,* 420 F.3d 1022, 1035 (9th Cir. 2005); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). Plaintiff offers unsupported speculation and conjecture regarding the alleged motives of City personnel (none of whom he alleges participated in the decisions being challenged), and the arguments of counsel, in support of Plaintiff's request for leave to amend. In lieu of responding to Defendant's initial motion to dismiss, Plaintiff amended his complaint without adding any new allegations to cure the defects outlined in the City's motion. Rather, the allegations of the first complaint were left virtually intact, and no new facts were alleged in support of the original claims for relief.[1]   Instead, Plaintiff offered a supplemental claim for relief

---

[1] *See generally* Amended Complaint at 5 (correcting the year from 1999 to 2000 and changing the word "successor" to "predecessor"; 7 (correcting the code section referred to from 312 to 311); 10 (adding the words "after business hours"); 13 (adding the words "the" and "Planning"); 14 (adding "Plaintiff was never notified of Moses Corrette's action, although this occurred several weeks prior to the presentation of the Certificate by Plaintiff."), 17 (adding "As a result, DNA has acted under the color of state law and there is such a nexus between Defendants and DNA that the action of the DNA can be considered and treated as the actions of Defendants); 20 (correcting typographical errors); 21 (continued on next page)

1    asserting a *new legal theory* based in part on alleged facts, which, according to Plaintiff, have

2    occurred *since the initiation of this action.* In opposition to the instant motion, Plaintiff *now* claims

3    that he can state facts that would cure any defects in his claim.

4    Plaintiff assures the Court that "this is not a run-of the mill development dispute, an argument

5    over whether an interpretation was proper, or even whether the Planning Department followed the

6    law. Instead, it is about the abject abuse of government power to clamp down on a disfavored person

7    whom the local neighborhood governing group hates and wishes to injure." [Opp. at 2:22-27.] In

8    support of this thesis of persecution, Plaintiff offers allegations that designation of the Dogpatch

9    Historic District was "initiated by DNA" rather than the City. [Opp. at 3:13-15.] This "fact," even if

10   proved, would not support his claims. He similarly suggests that "DNA did not follow the U.S.

11   Secretary of Interior's standards in the creation of the district."[2] He then complains generally that his

12   property was included within the historic district [Opp. at 3:19-22], recites an alleged confrontation

13   with his neighbors (not the City) in 1999 six years before the City's conduct alleged in the Complaint

14   in which his neighbors argued that they would "force the [then-existing on-site] structure to be

15   preserved" (which it was not) [Opp. at 4:5-16], and recounts yet another conflict between Plaintiff

16   and his neighbors (again, not the City) over the destruction of a neighborhood dog. [*Id.* at 4:17-5:3.]

17   In connection with this last alleged conflict with his neighbors, Plaintiff offers the spurious and

18   irrelevant allegation that the City Attorney—who he has not and does not now allege participated in

19   any way in the decisions being challenged—confronted Plaintiff over his behavior. [*Ibid.*] Plaintiff

20   then speculates that the DNA "has become even more politically connected" (offering no facts to

21   support this or examples of the effect of this "connection"), and that the City "wrongfully" issued a

22   stop-work order for his Project that, interestingly, Plaintiff has not challenged in this action. [*Id.* at

23

24   _____

(footnote continued from previous page)

25   (adding "and plainly" "and capricious"); and 22 (adding "Any Proffered rational basis by Defendants for their conduct is a pretext").

26   [2] This allegation is nonsensical on several levels, including the fact that the District was designated by the City's Board of Supervisors, not the DNA, pursuant to Planning Code §1004 (delegating authority to designate historic districts to Board of Supervisors).

27

28

1   5:4-12.] As demonstrated below, none of these allegations, even if the Court were permitted to

2   consider them in deciding the instant motion, would support the claims asserted in this case.

3       Plaintiff has not alleged facts sufficient to support his claims in this matter despite *two*

4   attempts, and has not demonstrated with his proposed amendments that he could ever do so. As a

5   result, Plaintiff is not entitled to leave to amend. In short, the Court need not "swallow the plaintiff's

6   invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic

7   circumlocutions, and the like need not be credited." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996);

8   *Martinez v. Goddard,* 521 F.Supp.2d 1002, 1011 (2007); *Muhammad v. U.S. Dept. of Housing and*

9   *Urban Dev.,* 2006 Westlaw 2598015 (2006); *Adams v. Vidiera,* 2001 WL 277966 (N.D. Cal. 2001).

10  **II.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. §1983.**

11      **A.   PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM FAILS AS A MATTER**

12          **OF LAW.**

13      Perhaps in recognition of the admitted "uphill battle" Plaintiff faces as a matter of law in

14  opposing this motion, the opposition brief repeatedly conflates the legal standards adopted for

15  evaluating due process and equal protection claims. The attempt to elide passages from equal

16  protection case law in support of his due process claim muddies the waters, but does not bolster the

17  claim in any respect. As set forth below and in the City's moving papers, Plaintiff has not – and

18  cannot – state a claim for violation of his substantive due process rights on the facts alleged.

19          **1.   Neither the Complaint, Nor Plaintiff's Proposed Amendments,**

20              **Establish "Targeted Governmental Conduct."**

21      The rhetoric of counsel notwithstanding, neither the Complaint, nor Plaintiff's opposition,

22  establishes facts supporting their theory that the City targeted Plaintiff for unfair treatment. Instead,

23  the Amended Complaint clearly establishes the following: Plaintiff's permit application remained

24  pending, as a result of a variety of factors, from 1999 through 2005. [Amended Complaint at ¶¶5-10.]

25  In 2003, the Planning Code was amended to reflect the designation of the Dogpatch Neighborhood as

26  an historic district subject to Department of the Interior design guidelines. [*See* City MPA at p. 5.] In

27  connection with this designation, § 1006 of the Planning Code requires that *all development* in the

28  district be reviewed for consistency with those guidelines by means of a Certificate of

REPLY MPA ISO MOTN TO DISMISS AM. COMPL.        5       n:\land\li2008\080285\00465890.doc
INSERT CASE NO. C-07-2577 SBA

1   Appropriateness (a "COA"). [*Ibid.*]   Plaintiff never applied for a COA. [*See generally* Amended

2   Complaint.]   After initial Planning and Building Department approval but before Plaintiff's permit

3   was issued, a member of the public (also allegedly a member of the DNA) inquired as to whether the

4   Project had received a COA. [*Id.* at ¶10.]   Following a review of the file, Planning staff determined

5   that the Project had not been reviewed through a COA as required by law and, as it was required to

6   do, the City therefore refused to issue the noncomplying permit. [Supp. RJN at Exh. 1.]   None of the

7   rhetoric offered to defeat this motion can create a civil rights violation out of a *legally mandated*

8   outcome.   Building Code § 106.4.3; Planning Code §§1005, 1006. [*See, also,* Supp. RJN at Exh. 1.]

9      Nor do the cases cited by Plaintiff hold otherwise.   Although Plaintiff cites the case of

10   *Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001) in support of his substantive due process

11   claim, that case was not a substantive due process case at all, but a case alleging the violation of

12   plaintiff's *equal protection* rights.   246 F.3d at 931.   As a result, it has no bearing on Plaintiff's first

13   count.   (*But see* Section II(B), below, for applicability to the equal protection claim.)   Plaintiff's

14   citation to *Bell v. Duperrault*, 367 F.3d 703 (7th Cir. 2004) – another equal protection case — in

15   support of his substantive due process claim is equally inapposite. [*See* Opp. at 7:19-24.]

16      Similarly, the case of *Collier v. Town of Harvard*, 1997 WL 33781338 (D. Mass. 1997), is

17   not helpful to Plaintiff's cause.   There, plaintiffs alleged a course of conduct in which numerous

18   public officials repeatedly denied their development permit applications.   In particular, one defendant

19   (DeBoalt) was alleged to have repeatedly attempted to either purchase plaintiffs' property, or acquire

20   an interest in that property, as a quid pro quo to voting in favor of the zoning relief plaintiffs sought.

21   *Id.* at *1-3.   Plaintiffs alleged that their substantive due process rights were violated "because the

22   zoning officials and defendant DeBoalt, in effect, used their official status to attempt to coerce them

23   into granting DeBoalt an easement." *Id.* at *5.   The court's discussion of the heavy burden borne by a

24   plaintiff alleging violation of substantive due process rights in the land use context is instructive.

25       The First Circuit has identified two alternative tests used by the Supreme Court
    to analyze substantive due process questions. "Under the first theory, it is not

26       required that the plaintiffs prove a violation of a specific liberty or property
    interest; however, the state's conduct must be such that it shocks the

27       conscience. To succeed under the second theory, a plaintiff must demonstrate a
    violation of an identified liberty or property interest protected by the due

28       process clause." [Citations.] To avoid summary judgment under the first

REPLY MPA ISO MOTN TO DISMISS AM. COMPL.   6
INSERT CASE NO.  C-07-2577 SBA

theory, a plaintiff must demonstrate that the defendant's "action was 'in and of itself' ... egregiously unacceptable [or] outrageous." [Citations.]

In the land-use context, I note that this threshold is demanding. Indeed, the First Circuit has long been reluctant to apply substantive due process analysis to alleged violations in the local planning and development process. [Citation.] "[R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process." *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31 (1st Cir. 1991), cert. dismissed, 503 U.S. 257 [] (1992). Instead, these matters are best resolved by state and local boards:

'To apply it to claims like the present [one for denial of permits for construction of waste disposal facilities and a residential facility,] would be to insinuate the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals. Clearly, it is no simple matter to decide what abuses to regard as abuses of 'substantive' due process. Every litigant is likely to regard his own case as involving such an injustice. Thus, we have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes.'

[Citation.] Because local and state boards are "closer to the situation," they-and not federal courts-are "better equipped to provide relief." [] Thus "the threshold for establishing the requisite 'abuse of government power' is a high one indeed." [Citation.]

*Id.* at *4-5. Nevertheless, the court noted that the First Circuit has "left the door slightly ajar for federal relief [based on substantive due process] in truly horrendous situations." *Ibid.* "The crucial question here, then, is whether the plaintiffs' claims can pass through this modest opening. To preclude summary judgment, the plaintiffs must demonstrate why a jury could find that the defendants' conduct was truly horrendous, and that it amounted to more than a state law violation.' [Citation.] Ultimately, the court concluded that substantive due process requires that permit applicants be free from the type of coercion alleged by plaintiffs under color of state law. [*Ibid.*]

Plaintiff in the present case has not alleged comparable facts. He does not accuse City officials of refusing to issue his permit as a pretext to acquire the property for themselves. Rather, the City enforced a law of general applicability in a manner that Plaintiff felt was detrimental to his project. [Amended Complaint at ¶15.] That the City allegedly did so following a phone call from a member of a neighborhood association inquiring as to whether Plaintiff had complied with the Planning Code (which he had not) does not create a violation of substantive due process. Plaintiff's discussion of the *Chiplin* and *Creative Environments* cases, discussed in the City's moving papers, also fall wide of the mark. In *Chiplin*, the court found that plaintiff had failed to state a claim for violation of substantive due process. *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524,

1   1527-29 (C.A. N. H. 1983). The language quoted by Plaintiff reflects the court's concern that the trial

2   court had dismissed the complaint not for failure to state a claim, but for lack of jurisdiction. *Id.* at

3   1528. However, based on the analysis cited in the City's brief, the court concluded that "the fact

4   remains that Chiplin has failed to state a claim on which relief can be granted. Dismissal was proper,

5   but it should have been pursuant to defendants' motion under Rule 12(b)(6) rather than 12(b)(1)." *Id.*

6   at 1529. Here, the City has cited the *Chiplin* case in support of its 12(b)(6) motion, not on the theory

7   that the Court lacks jurisdiction over this claim. [*See* City MPA at p. 10.]

8          The City has previously addressed the failings of Plaintiffs' allegations in the Amended

9   Complaint, and will not repeat those arguments here. However, Plaintiff draws the Court's attention

10  to several allegations, to no avail. Plaintiff points to his allegation that the City "refused to determine

11  whether his Application was complete unless DNA approved it," but the Amended Complaint alleges

12  that the Application was "determined to be complete" in 2001. [Amended Complaint at ¶7.] There is

13  no allegation that DNA ever "approved" the Application. The fact that a member of the public

14  contacted the Planning Department regarding the status of a permit, after which the Planning

15  Department determined –correctly according to the Superior Court – that the permit could not

16  lawfully be issued, does not create a violation of due process. Nor does the fact that a member of the

17  Planning Department allegedly "played an inside role in the designation of Dogpatch as historic."

18  [Opp. at 9:20-22.] Plaintiff does not explain why it is surprising or suspicious that a member of the

19  Planning Department, whose job it was to participate in such actions as the designation of an historic

20  district, in fact did so. Nor does that participation cast any doubt on his motives when he

21  subsequently performed his job duties by reviewing the building application and determining that it

22  did not, in fact, comply with the law.

23          **2.      Plaintiff is Collaterally Estopped from Asserting the Permit Streamlining
                      Act and California Environmental Quality Act Arguments.**

24

25          In opposition to the City's motion to dismiss Plaintiff's unlawful delegation claim, Plaintiff

26  offers the argument that government conduct that "[d]eprives Carroll of a [p]ermit to [w]hich he is

27  [e]ntitled" violates substantive due process." [Opp. at 10-14.] This argument has two prongs. First,

28  Plaintiff argues that the City violated California's Permit Streamlining Act ("PSA"), Government

REPLY MPA ISO MOTN TO DISMISS AM. COMPL.          8          n:\land\li2008\080285\00465890.doc
INSERT CASE NO.  C-07-2577 SBA

1    Code §§ 65920 *et seq.*, by failing to issue his permit within statutory timelines. [*Ibid.*] Next, Plaintiff

2    conflates various legal principles of the PSA and the California Environmental Quality Act

3    ("CEQA") to argue that the City is forbidden to require additional review of his project under CEQA

4    because the designation of an historic district is not, according to Plaintiff, "a new significant

5    environmental effect requiring an updated negative declaration." [*Id.* at 1212:27-28.] These

6    arguments were not raised in the Amended Complaint [Compare Amended Complaint at pp. 5-6], but

7    are raised for the first time in this action in opposition to the City's motion to dismiss. Fortunately,

8    the Court need not reach these issues, because Plaintiff has already had his day in court.

9          In Superior Court Case No. CPF-06-506816, Plaintiff asserted these precise arguments against

10   the very same defendant. [Supp. RJN at Exh. 1.] Plaintiff's arguments were resoundingly, and

11   correctly, rejected. This Court is bound by the doctrine of res judicata to reject these arguments in

12   support of Plaintiff's claims.   The doctrines of res judicata and collateral estoppel may properly be

13   raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Azadpour v. Sun*

14   *Microsystems, Inc .*, 2007 WL 988185, * 3-4 (N.D. Cal. 2007); *see also Thompson v. County of*

15   *Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) (res judicata challenges may properly be raised via a

16   motion to dismiss for failure to state a claim under Rule 12(b)(6)); *Day v. Moscow*, 955 F.2d 807, 811

17   (2d Cir. 1992) (res judicata, normally an affirmative defense, may be upheld on a Rule 12(b)(6)

18   motion "when all relevant facts are shown by the court's own records").

19         Federal courts are bound by 28 U.S.C. § 1738, to give "full faith and credit" to judgments and

20   orders of state courts. "Section 1738 does not allow federal courts to employ their own preclusion

21   rules in determining the preclusive effect of state judgments. 'Rather, it ... commands a federal court

22   to accept the rules chosen by the State from which the judgment is taken.'" *Matsushita Elec. Indus.*

23   *Co. v. Epstein*, 516 U.S. 367, 373 (1996). The doctrines of collateral estoppel and res judicata apply

24   in a §1983 case, so long as the party against whom an earlier court decision is asserted had a full and

25   fair opportunity to litigate the issue decided by the first court. *Allen v. McCurry*, 449 U.S. 90, 101

26   (1980). Federal courts "give the same preclusive effect to state court judgments that those judgments

27   would be given in the courts of the State from which the judgments emerged." *Lance v. Dennis*, 546

28   U.S. 459, 466.

1  In this case, Plaintiff attempted to rely on the PSA and CEQA to assert that the City's refusal

2  to issue a permit was unlawful.  Those arguments were fully briefed and argued by the parties, and

3  the issues were decided against Plaintiff by the state court.  [*See* Supp. RJN at Exh. 1.]  As a

4  consequence, Plaintiff may not rely on those arguments to defeat the City's motion to dismiss.

5
6  **B.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR DENIAL OF EQUAL PROTECTION.**

7  In response to the City's motion to dismiss the equal protection count of the Amended

8  Complaint for failure to state a claim, Plaintiff once again misstates the legal standards governing this

9  Court's review, and suggests that the Court can deny the City's motion on the basis of the "new facts"

10  offered in the brief.  [Opp. at 14:3-5.]  The Court is, in fact, precluded from considering such facts in

11  making its determination on the merits of the City's motion.  *Schneider v. California Dept. of*

12  *Corrections, supra,* 151 F.3d at 1197.  Plaintiff then argues that "[n]o other Dogpatch-area applicant

13  has had its permit pulled back after hours," and that "Planning treated him differently from other

14  people who's [sic] permits required only pickup because he had displeased DNA. There certainly was

15  no rational basis for Corette's conduct."  [Opp. at 14:6-11.]  It is telling that Plaintiff has offered no

16  new allegations to support these conclusory statements.  [*See id.* at 3-5 ("Proposed Amendment").]  In

17  fact, Plaintiff has not offered a single new allegation establishing that the City applied this law of

18  general applicability inconsistently to any other developer in the neighborhood.  That is, he has not

19  alleged, for good reason, that other parties wishing to construct buildings in the Dogpatch Historic

20  Neighborhood have been exempted from the requirements of Planning Code §§ 1005 and 1006.

21  The conduct complained of here was the Planning Department determination to reassert

22  jurisdiction over a permit upon learning that it had not been reviewed for compliance with the historic

23  district requirements by submission of a COA.  [Amended Complaint at ¶15; RJN at Exh. 4.]  The

24  City explained the rational basis for that decision in its moving papers.  [City MPA at pp. 14-16.]

25  That analysis has been adopted by the Superior Court following full briefing and argument of the

26  parties, and cannot be revisited by Plaintiffs here.  Nor does Plaintiff's citation to *Northeastern*

27  *Florida Chapter of Assoc. Gen. Contractors of America v. City of Jacksonville,* 508 U.S. 656, 666

28

REPLY MPA ISO MOTN TO DISMISS AM. COMPL.        10        n:\land\li2008\080285\00465890.doc
INSERT CASE NO.  C-07-2577 SBA

1    (1993) rescue their claim from the fatal flaw that the challenged conduct had a rational basis—the

2    permit, if issued, would have been invalid as of the date of issuance.  [*See* Supp. RJN at Exh. 1.]

3          In order to state a claim for violation of equal protection rights,

4                the plaintiff must demonstrate that the government is treating unequally those
                individuals who are prima facie identical in all relevant respects … and that the
5                cause of the differential treatment is a "totally illegitimate animus toward the
                plaintiff by the defendant." [Citation.] If the "defendant would have taken the
6                complained-of action anyway, even if it didn't have the animus, the animus
                would not condemn the action." [] Ill will must be the sole cause of the
7                complained-of action. [] A showing of "uneven law enforcement," standing
                alone, will not suffice. []
8

9    *Albiero, supra*, 246 F.3d at 932.  Plaintiff has not offered *any* allegations establishing that the City

10   differentiated in its enforcement of Planning Code §1006.  He cannot allege that the City has failed to

11   enforce the law as against other project applicants (that is, that the City would not have enforced the

12   law but for the alleged animus against him), and thus his claim fails.

13         Plaintiff's reliance on the *Genesis* case is also unpersuasive because of Plaintiff's failure to

14   offer any facts establishing even the first prong. of the test stated in that case for establishing an equal

15   protection claim: differential treatment as compared to similarly situated project applicants.  *Genesis*

16   *Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.*, 113 Cal.App.4th

17   597, 606  (2003).

18         Plaintiff's arguments, appearing at pages 15-16 of the opposition and citing and attempting to

19   distinguish *Wells Fargo Bank v. Town of Woodside*, 33 Cal.3d 379 (1983) and *Selby Realty Co. v.*

20   *City of San Buenaventua*, 10 Cal.3d 110, 125 (1973), were raised and expressly rejected by the

21   Superior Court, and Plaintiff is collaterally estopped from raising them again here.  [*See* Supp. RJN at

22   Exh. 1.]

23         Attempting to salvage the equal protection claim, Plaintiff then argues that Planning Code

24   §1006 "is not a zoning ordinance" because "simply regulates aesthetics."   [Opp. at 16:25-17:2.]  This

25   unsupported rhetoric does not appear to be tied to any particular legal argument relevant to the equal

26   protection analysis.  In any event, it is wrong.  As the California Supreme Court recently reiterated:

27                "Although cities may not use zoning powers to regulate economic competition
                [], it is also recognized that land use and planning decisions cannot be made in
28                any community without some impact on the economy of the community. As
                stated in *Metromedia, Inc. v. City of Pasadena* [ (1963) ] 216 Cal.App.2d 270

[], 'Today, economic and aesthetic considerations together constitute the nearly inseparable warp and woof of the fabric upon which the modern city must design its future.' Taking cognizance of this concept we perceive that planning and zoning ordinances traditionally seek to maintain property values, protect tax revenues, provide neighborhood social and economic stability, attract business and industry and encourage conditions which make a community a pleasant place to live and work. Whether these be classified as 'planning considerations' or 'economic considerations,' we hold that so long as the primary purpose of the zoning ordinance is not to regulate economic competition, but to subserve a valid objective pursuant to a city's police powers, such ordinance is not invalid even though it might have an indirect impact on economic competition.

*Hernandez v. City of Hanford*, 41 Cal.4th 279 (2007).

Plaintiff's final argument, that Planning Code §1006 does not, in fact, require project applicants to apply for a COA, is based on a blatant misreading of the code section. "Conformity" with the COA requirements is, in fact, required before a building permit can be issued for a project governed by the section. *See* Planning Code §1006 ["A Certificate of Appropriateness shall be required and shall govern review of permit applications...."]. It is astonishing that Plaintiff then points to *his own inaction* (refusal to submit an application for a COA) as evidence of the City's lack of a rational basis to support its enforcement of §1006. Plaintiff's amended complaint does not allege that he had filed the requisite application but that the City refused to act upon it and thus the point of this argument is somewhat of a mystery.

## III.   PLAINTIFF'S §1983 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiff provides no legal argument at all in response to the City's motion on the grounds of the statute of limitations. As set forth in the City's moving papers, to the extent that the Amended Complaint relies on the alleged refusal of the City to deem the Application complete until the DNA "approved it," that claim accrued no later than 2001. [City MPA at pp. 16-17.] The only subsequent act by the City that was allegedly informed in any way by DNA was its legitimate enforcement of the Planning Code in response to an inquiry as to whether the Code had been complied with. Since Plaintiff cites no authority for the proposition that this enforcement of applicable law rises to the level of a civil rights violation, he should be deemed to have conceded this ground of the City's motion. *Cf* Fed. Rule Civ. Proc. §56(e)(2).

**IV.   RES JUDICATA AND COLLATERAL ESTOPPEL BAR PLAINTIFF'S CLAIMS.**

Plaintiff's arguments in response to the City's invocation of res judicata and collateral estoppel are belied by his own actions. The opposition brief claims that "Carroll is not challenging a City administrative decision." [Opp. at 18:23-25.] If he were, the argument goes, "he would simply file a state court writ of administrative mandate." [*Id.* at 19:1-3.] In fact, *that is exactly what Plaintiff did.* [*See* RJN at ¶¶ 4-10, Exhs. 4-10.] There lies his problem. The first state court action, which challenged precisely the conduct that is at the center of the instant case, was filed on September 12, 2006, and Plaintiff filed a request for dismissal of that action on July 5, 2007. [*Id.* at ¶¶ 4, 10 and Exhs. 4, 10.] The statute of limitations governing such an action has run, and thus Plaintiff cannot cure his failure to exhaust state judicial remedies.[3] In an attempt to distinguish the case of *Briggs v. City of Rolling Hills* Estates, 40 Cal.App.4th 637 (1997), Plaintiff asks the Court "[w]hat factfinding has there been?" [Opp. at 19:13.] The simple answer is that both of the administrative proceedings *initiated by Plaintiff* in connection with the City's refusal to issue an unlawful permit [*see* City's MPA at pp. 7-8] resulted in findings of fact. [RJN at Exh. 4.] Plaintiff is bound by those findings.

Plaintiff further attempts to defeat the City's argument by arguing that "[a] civil rights plaintiff has no obligation to exhaust *administrative remedies.*" [Opp. at 17-19.] This argument once again misses the point, argued at length in the City's moving papers, that Plaintiff's failure to exhaust state *judicial remedies* collaterally estops the §1983 claims he now asserts.

**V.   ANY CLAIMS BASED ON THE CITY'S REFUSAL TO ISSUE A PERMIT ARE UNRIPE FOR ADJUDICATION.**

Plaintiff's response to the City's argument that some or all of his claims are unripe is to essentially deny them without authority. Instead, the opposition insinuates that the DNA does not like Plaintiff because he is a "different type of person," and suggests that this is not "an abstract

---

[3] Plaintiff's argument at page 19 of the opposition that the City asserts the 90-day statute of limitations as a bar to the instant action is pure obfuscation. The City's argument, set forth at pages 19-20 of the moving papers (in the context of its position that res judicata and collateral estoppel bar Plaintiff's claims), is simply that Plaintiff has failed to exhaust judicial remedies as required by *Briggs, supra,* 40 Cal.App.4th at 640, and is prohibited by the applicable state statute[s] of limitations from doing so now.

1  disagreement over administrative policy[.[]" [Opp. at 20:18-24.]  It is telling that counsel carefully

2  avoids asserting that the City's refusal to issue an invalid permit was motivated by any racial animus

3  (against a Caucasian developer), or by any other animus related to Plaintiff's membership in a

4  cognizable class.  Because Plaintiff fails to respond meaningfully to the City's argument, it should be

5  deemed conceded.  *Cf* Fed. Rule Civ. Proc. §56(e)(2).

6
7  ## VI.   PLAINTIFF IS NOT ENTITLED TO LEAVE OF COURT TO SUPPLEMENT THE COMPLAINT.

8          Finally, the opposition brief fails to respond at all to the City's argument that the supplemental

9  allegations added to Plaintiff's Amended Complaint fail to state a claim for which relief can be

10  granted. [City MPA at p. 23.]   Once again, this failure to respond is a tacit concession of the

11  argument.  Moreover, Plaintiff ignores the case of *Matsushita Elec. Indus. Co. Ltd. v. CMC*

12  *Magnetics Adding,* 2007 WL 127997 (N.D. Cal. 2007), and thus fails to distinguish its holdings.

13  There, as here, a party sought leave to file a supplemental claim that did not arise from the same

14  conduct that formed the basis for the underlying suit.  Plaintiff notes that the case of *Planned*

15  *Parenthood of Southern Arizona v. Neely,* 130 F.3d 400 (9th Cir. 1997) was decided, in part, based on

16  the fact that the proposed new cause of action was "a challenge to an entirely different state statute"

17  [Opp. at 21:10-13], but fails to explain why Plaintiff's own claim arising under a separate legal theory

18  (violation of the First Amendment) survives this same analysis.  Here, as in *Matsushida,* 2007 WL

19  127997 at * 4, the proposed supplemental claim would not promote a quick or economical resolution

20  to this case.    Thus here, as there, Rule 15(d) bars the proposed amendment.  Plaintiff's request is

21  nothing more than a "litigation gimmick to invent an artificial [claim] for tactical advantage" (here, to

22  avoid dismissal of his case) *id.* at *6, and his request for leave to supplement the complaint should be

23  denied.

24  ## CONCLUSION

25          Plaintiff concedes that, in order to state a claim under §1983, he must establish that the City's

26  conduct—refusal to issue a permit that would have violated the Planning and Building Codes—

27  "shocks the conscience."  While there may be cases in the land use context where governmental

28  conduct is "so egregious" that it rises to a Constitutional level, this is surely not one of them.  For all

1   of the reasons set forth above and in the City's moving papers, the allegations of the Amended

2   Complaint and those facts of which this Court may take judicial notice demonstrate that the Amended

3   Complaint fails to state facts sufficient to constitute a cause of action, that the Court lacks jurisdiction

4   over such claims and that the claims are untimely as a matter of law.  As a result, this Court should

5   grant the motion to dismiss with prejudice, and deny Plaintiff leave to amend.

6   Dated:  February 12, 2008

7               DENNIS J. HERRERA
                City Attorney
8               KRISTEN A. JENSEN
                THOMAS S. LAKRITZ
9               Deputy City Attorneys

10

11          By:

12              KRISTEN A. JENSEN

13              ATTORNEYS FOR DEFENDANT
                CITY AND COUNTY OF SAN FRANCISCO